IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **Luis Antonio Aguilar Marquinez**, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 12-695-RGA (consolidated) |
| **Dole Food Company, Inc.**, *et al.*, | |
| Defendants. | |

MEMORANDUM

Presently before the Court are Defendants [Dole and Standard]'s Motion for Summary Judgment (D.I. 81) and related briefing (D.I. 82, 99, 103, 108) as well as Defendant [Chiquita's] Motion for Rehearing/Renewed Motion for Dismissal of Claims Pursuant to Rule 12(b)(6) Based on Statute of Limitations (D.I. 104) and related briefing (D.I. 105).[1] The two motions are premised on the same basic argument.[2]

This litigation stems from injuries allegedly caused by the misuse of dibromochloropropane ("DBCP") on banana plantations in Panama, Ecuador, Guatemala, and Costa Rica. The seven Plaintiffs in No. 12-695 describe themselves as four Panamanian citizens who were exposed to DBCP in 1972 (Aguilar Marquinez), 1973-75 (Serrano Chito), 1976 (Salinas Jiminez), various times from 1970-84 (Martinez Ibarra), and three Ecuadorian citizens who were exposed to DBCP in 1972-80 (Castro Epifano), 1978-82 (Pesantez Redrovan), and

---

[1] There are twelve defendants, some of which are obviously related to each other. There are seven different defendant groups – AMVAC Chemical, Chiquita, Del Monte, Dole (and Standard), Dow Chemical, Occidental Chemical, and Shell Oil. The only pending motions are those of Chiquita, Dole and Standard.

[2] The motion to dismiss has a stipulation permitting Plaintiffs to respond thirty days after this decision. Because the motion to dismiss is implicated in this decision, it will be dismissed with leave to refile in light of this memorandum.

1

1974-75 (Malla Lopez). (D.I. 1 ¶¶ 112-20). While the Complaint does not state when Plaintiffs became aware of their injuries, it does allege that, "None of the Plaintiffs discovered their injuries were due to their DBCP exposure prior to . . . August 31, 1993." (*Id.* ¶ 124).[3] The allegations of the 12-696 complaint, with its three thousand plaintiffs, are less specific, but do include the boilerplate assertion that no Plaintiff knew the cause of his injuries before August 31, 1993.

In August 1993, a putative DBCP class action was filed in Texas state court. The case was removed to federal court based on the Foreign Sovereign Immunities Act ("FSIA") because one of the defendants was largely owned by the State of Israel. In July 1995, the federal court dismissed the case based on *forum non conveniens* ("*f.n.c.*"). In the memorandum and order dismissing the case, the court denied as moot all pending motions, one of which was the motion for class certification. *Delgado v. Shell Oil Co.*, 890 F. Supp. 1324, 1375 (S.D. Tex. 1995). The dismissal was affirmed by the Fifth Circuit, *Delgado v. Shell Oil Co.*, 231 F.3d 165 (5th Cir. 2000), and the Supreme Court denied review, 532 U.S. 972 (2001).

Meanwhile, Plaintiffs' Counsel filed a putative DBCP class action in Hawaii, which was also removed to federal court based on the FSIA and dismissed for *f.n.c.* On appeal, the Ninth Circuit reversed the district court's decision permitting removal under the FSIA, *Patrickson v. Dole Food Co.*, 251 F.3d 795, 808 (9th Cir. 2001), and the Supreme Court affirmed, *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). Based on this ruling, the *Delgado* plaintiffs filed a motion to have the Texas federal case remanded to Texas state court and to reinstate the individual plaintiffs' claims pursuant to a "return jurisdiction" clause included in the 1995 *f.n.c.*

---

[3] There were originally eight actions filed in this District. There are seven plaintiffs in No. 12-695 and about three thousand named plaintiffs in No. 12-696. There were an additional three hundred or so plaintiffs in the other six actions (Nos. 12-697 to 12-702). The last six cases have been resolved in ways irrelevant to the issues at hand, and are currently on appeal.

dismissal order. *Delgado v. Shell Oil Co.*, 322 F. Supp. 2d 798, 803-04 (S.D. Tex. 2004). Because *Patrickson* divested the district court of subject matter jurisdiction, the Texas federal court remanded the case to Texas state court. *Id.* at 815, 817. The case was reinstated in Texas state court. Plaintiffs filed a motion for class certification in 2009, which the state court denied on June 3, 2010.

Subsequently, Plaintiffs' Counsel filed DBCP suits in the Eastern District of Louisiana, Delaware Superior Court, and this Court. The Plaintiffs argue that the denial of class certification did not occur until June 3, 2010, that cross-jurisdictional tolling applied, and therefore the claims were within the applicable statutes of limitations.[4] In *Blanco v. AMVAC Chemical Corp.*, 2012 WL 3194412 (Del. Super. Aug. 8, 2012), the Delaware Superior Court held that Delaware recognizes this type of cross-jurisdictional tolling, and rejected Defendants' argument that such tolling ended in 1995 when the case was dismissed based on *f.n.c. Id.* at *12-13. The Delaware Supreme Court accepted an interlocutory appeal, and decided one question of law: "'Does Delaware recognize the concept of cross jurisdictional tolling?'" *Dow Chemical Corp. v. Blanco*, 67 A.3d 392, 394 (Del. 2013). The Delaware Supreme Court held that Delaware does. The Supreme Court noted that the issue decided did "not implicate the factual determination of from when the statute of limitations was tolled in this case." *Id.* Meanwhile, in *Chaverri v. Dole Food Co., Inc.*, 896 F. Supp. 2d 556 (E.D. La. 2012), the United States District Court for the Eastern District of Louisiana assumed that cross-jurisdictional tolling applied under Louisiana law, *see id.* at 567, but concluded that any tolling stopped in 1995, or, alternatively, in 2001. *See id.* at 571-72.

---

[4] One year for Louisiana and two years for Delaware.

3

It was based upon this state of affairs that I denied Defendants' earlier motion to dismiss and motion for summary judgment. I noted, however, that *Chaverri* was on appeal, and that the Fifth Circuit's ruling might be informative. (D.I. 96 ¶ 4, 98 ¶ 3). As it turns out, the Fifth Circuit's decision did not really shed any more light on the issue than was previously available. *See Chaverri v. Dole Food Co. Inc.*, 2013 WL 5274446, * 1 (5th Cir. Sept. 19, 2013) (per curiam) (unpublished) ("Largely for the reasons expressed in the district court's well-reasoned opinion, we agree that Chaverri presented no facts relevant to any statute or caselaw to support that [the statute of limitations] was interrupted for a sufficient period of time.").

I previously stated that I thought the Delaware Superior Court's opinion was more persuasive than the District Court's decision in *Chaverri*. (D.I. 98 ¶ 3). After further review, including consideration of the additional briefing in this case, the Fifth Circuit's stated rationale for affirmance of *Chaverri*, and a recent decision of the Hawaii Intermediate Court of Appeals,[5] I conclude that the Eastern District of Louisiana's opinion is indeed persuasive, and that tolling stopped in 1995. In the Eastern District of Louisiana, since the court assumed that Louisiana recognized cross jurisdictional tolling, there were only two questions before the court:

> (1) did the July 1995 denial of class certification as moot count as a denial for the purposes of restarting prescription; and/or, (2) was the October 1995 order dismissing *Delgado* on the grounds of f.n.c. a final judgment, such that the action was no longer pending for prescription purposes.

*Chaverri*, 896 F. Supp. 2d at 568.[6] The Delaware Superior Court's opinion dealt mainly with whether Delaware recognizes cross jurisdictional tolling, limiting its discussion of the *f.n.c.* dismissal to the issue of finality. *Blanco*, 2012 WL 3194412, at *12 ("[B]ut this decision, while

---

[5] *See* footnote 9 *infra*.

[6] Under Louisiana law, the concept of a statute of limitations is covered by the roughly equivalent concept of prescription.

4

final for purposes of appealability, was not on the merits, and therefore lacks the *res judicata* or *collateral estoppel* effect for which they try to invoke it."). Judge Herlihy equated the dismissal on *f.n.c.*, coupled with a return jurisdiction clause, as the "logical [] equivalent to a stay," which would toll the statute of limitations.[7] *Id.* Applying this logic to the questions before the Eastern District of Louisiana, Judge Herlihy implicitly answered the second question in the negative. Judge Herlihy did not reach the first question, which forms an alternative basis to end tolling. *See Chaverri*, 896 F. Supp. 2d at 568 ("An affirmative answer to either of these questions results in the prescription of the Plaintiffs' claims.").[8]

Extending tolling in the manner advocated for by Plaintiffs would go far beyond the policy based justifications set forth in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), as well as *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374 (11th Cir. 1998). In *American Pipe*, the Supreme Court found that tolling the statute of limitations for putative class members was appropriate because it

---

[7] Indeed the statute of limitations must have been tolled, at least for the named Plaintiff, as the case was reinstated in Texas state court.

[8] Plaintiffs make a number of arguments (D.I. 99 at 18-19) as to why this Court should be bound by the Superior Court's decision. First, Plaintiffs argue that the Superior Court's decision is preclusive because of collateral estoppel. Second, Plaintiffs argue that the *Rooker-Feldman* doctrine bars relitigation.

As for collateral estoppel, it only applies "where a question of fact essential to the judgment is litigated and determined by a valid and final judgment." *Brown v. State*, 721 A.2d 1263, 1265 (Del. 1998). As I have stated, Judge Herlihy did not decide whether the July 1995 denial of class certification as moot restarted the statute of limitations, so Defendants are not estopped. Additionally, the Superior Court decision was a denial of a motion for judgment on the pleadings, so this question was not even fully litigated. In any event, the Superior Court's decision is still subject to appeal to the Delaware Supreme Court, and it is therefore not final. Finally, under Third Circuit law, I am not bound by it. *See, e.g., Safeco Ins. Co. v. Wetherill*, 622 F.2d 685, 688-89 (3d Cir. 1980) ("[T]he decisional law of lower state courts and other federal courts... should be accorded proper regard . . . but not conclusive effect."); *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661-63 (3d Cir. 1980) ("In determining state law, a federal tribunal should be careful to avoid the danger of giving a state court decision a more binding effect than would a court of that state under similar circumstances.") (internal citations omitted).

As for the *Rooker-Feldman* argument, it does not apply here. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ("The *Rooker–Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.). Defendants did not bring this suit, and therefore the doctrine does not apply.

promoted judicial economy such that individual class members need not file individual suits. 414 U.S. at 551. In *Crown, Cork & Seal*, the Supreme Court further explained that, "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown, Cork & Seal*, 462 U.S. at 354. In *Armstrong*, the Eleventh Circuit expounded upon the Supreme Court's reasoning, finding that tolling lasted only until the denial of class certification, not until the termination of the appeals process. 138 F.3d at 1378. Because the policy justification for tolling is to "encourage class members reasonably to rely on the class action to protect their rights," tolling ends when "reliance on the named plaintiffs' prosecution of the matter ceases to be reasonable." *Id.* at 1380.

The Eastern District of Louisiana summarized the case law well, identifying three factors for "determining whether or not a [limitations] period has been [tolled]":

> (1) the actual pendency of the class action itself; (2) the objective reasonableness of an individual's reliance on the action to protect his or her rights; and, (3) the balance of prejudice to both the plaintiff and defendant based upon the principles underlying class actions and statutes of limitations.

*Chaverri*, 896 F. Supp. 2d at 571. The motion for class certification was no longer pending after the district court in 1995 denied it as moot. While the denial of the motion was not on the merits, any reliance would have been objectively unreasonable, as the case was dismissed. Because most of the plaintiffs' home countries did not have mechanisms for class actions, *see Delgado*, 890 F. Supp. at 1368, plaintiffs were put on notice in 1995 that they would need to file individual suits to preserve their rights.[9] Defendants allege that in fact many of the Plaintiffs did participate by name in earlier lawsuits.

---

[9] Indeed, suits were filed in Mississippi and Louisiana in 1996, Hawaii in 1997, and California in 2004, 2005, and 2008. (D.I. 82 at 10-11, 13). The Hawaii Intermediate Court of Appeals recently decided that class action tolling

6

Even assuming that tolling operated during the pendency of the appeals process, the Fifth Circuit affirmed the *f.n.c.* dismissal and the Supreme Court denied certiorari in 2001. While *Patrickson* set forth a basis for reinstating the case, that decision was not until 2003, two years after the appeals process had run.

The Plaintiffs have not been unfairly prejudiced. The case was reinstated in Texas state court. Plaintiffs have had their chance to be heard as a class. Class certification was finally denied on the merits in 2010. Plaintiffs had plenty of opportunity to pursue individual claims, but chose not to.[10]

There is a second basis on which summary judgment to Dole and Standard might be granted. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

Defendants point out that that there is no evidence at all that supports tolling from the dates of exposure (generally in the 1970's) to August 1993. Dole submitted an expert declaration stating, in essence, that exposure to DBCP does not cause the latent type of

---

ended in 1995 upon the *Delgado* denial of class certification. *See Patrickson v. Dole Food Co.*, 2014 WL 895186, *7-9 (Ha. Ct. App. Mar. 7, 2014).

[10] It is true that Defendants have vigorously opposed Plaintiffs' attempts to be heard on the merits. It is not clear to me that this is relevant to determining whether the statute of limitations has been tolled.

7

reproductive issues of which Plaintiffs complain. (D.I. 84-1 at 10-13). Additionally, Dole submitted a letter dated July 27, 1993 from Charles S. Siegel, addressed to defense counsel as well as Dole, indicating which clients were represented in the DBCP litigation. (D.I. 87 Ex. 9). Dole contends that this letter indicates that forty-seven of the plaintiffs, whose names appear on that list, must have been aware of their claims at the time the letter was sent. (D.I. 82 at 25).

While Plaintiffs state that this is insufficient to grant summary judgment, I think it is sufficient to put the burden on Plaintiffs to come forward with evidence supporting the proposition that each Plaintiff was unaware of his injuries, or was unaware of the cause of his injuries.[11] There is only the boilerplate statement in the complaints that the Plaintiffs did not know of the cause of their injuries. There seems to be agreement that it would be appropriate[12] to give the Plaintiffs a period of time to supply such evidence. (D.I. 99 at 26; D.I. 108 at 20). The Court would allow an appropriate amount of time for Plaintiffs to do so should that become necessary.

The Court will enter a separate order.[13]

Entered this 27th day of May, 2014.

_____
United States District Judge

---

[11] The Complaint alleges not only injuries that might not have been easily discovered such as infertility or increased cancer risk, but other injuries that would have been obvious, such as "vision loss, chronic urinary tract infections," "chronic skin conditions," and "gastro-intestinal problems, chronic headaches and body pain." (D.I. 1 ¶¶ 114, 116, 119).

[12] *See* Fed. R. Civ. P. 56(d).

[13] I do not understand Plaintiffs to be arguing that there is any basis to oppose Defendants' summary judgment motion if there has not been cross-jurisdictional tolling since 1995.