IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LUIS ANTONIO AGUILAR MARQUINEZ, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DOLE FOOD COMPANY, INC., *et al.*,<br><br>Defendants. | Civil Action No. 12-695-RGA (consolidated) |
| TOBIAS BERMUDEZ CHAVEZ, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DOLE FOOD COMPANY, INC., *et al.*,<br><br>Defendants. | Civil Action No. 12-697-RGA |

MEMORANDUM ORDER

In these consolidated cases, the Ecuadorean Plaintiffs (who total no more than eighty-one individuals (D.I. 177) and who are distinguished from other Plaintiffs who worked in countries other than Ecuador) allege that the Defendant corporations exposed them to a toxic pesticide while they were working on banana plantations in Ecuador in the 1960s through 1980s. Before me is Defendants' "Motion for Application of Ecuador Law." (D.I. 233).[1] I have considered the

---

[1] All docket references are to Civil Action No. 12-695-RGA unless otherwise noted. On December 5, 2019, the dockets in the two cases were consolidated in the first-listed case.

1

briefing. (D.I. 234, 317, 320). Because Ecuador has the most significant relationship to these Plaintiffs' claims, Defendants' Motion is GRANTED. Ecuadorean law thus governs Plaintiffs' claims, other than their negligence claim, which is governed by Delaware law.

## I. BACKGROUND

Plaintiffs, who are citizens of Ecuador, allege Defendants used the pesticide dibromochloropropane (DBCP), which is now banned in the United States and other countries. (D.I. 1 ¶¶ 22, 104). According to the complaint, Defendants sprayed DBCP into the soil and over the fields in Ecuador where Plaintiffs were working, and Defendants did not provide protective clothing or equipment. (*Id.* ¶ 5). Plaintiffs allege that, as a result, they have suffered injuries including sterility, skin disorders, vision loss, and an increased risk of cancer. (*Id.* ¶ 105).

This litigation has a voluminous procedural history, which has been recounted elsewhere. (*See* 12-697-RGA, D.I. 225); *see also, Blanco v. AMVAC Chem. Corp.,* 2012 WL 3194412, at *1–5 (Del. Super. Ct. Aug. 8, 2012); *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 211–15 (3d Cir. 2016).

## II. LEGAL STANDARD

A party seeking the application of foreign law "has the burden of not only raising the issue that foreign law applies, but also the burden of adequately proving the substance of the foreign law." *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 765 (Del. Ch. 2014).

## III. DISCUSSION

### A. Defendants' Motion Is Not Defective

Plaintiffs argue Defendants' motion is procedurally defective because it relies on documents and deposition testimony that would be inadmissible at trial. Plaintiffs cite cases holding that a party moving for summary judgment must submit evidence that would be

admissible at trial. *See Agrizap, Inc. v. Woodstream Corp.*, 450 F. Supp. 2d 562, 567 (E.D. Pa. 2006) ("Evidence submitted with a motion for summary judgment must be reducible to admissible evidence at trial.").

Defendants' motion, however, is not for summary judgment under Federal Rule of Civil Procedure 56. It is a motion for the application of foreign law under Rule 44.1, which provides that a court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." In any event, Defendants provided a declaration to address Plaintiffs' objection about the authentication of the exhibits. (D.I. 320, Ex. 1). Accordingly, I conclude Defendants' motion is not defective.

### B. Choice of Law

Defendants argue that Ecuadorean law governs Plaintiffs' claims, other than their negligence claim. A federal court sitting in diversity applies the substantive law of the forum state in which it sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), and this includes the forum state's choice of law doctrine, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). If a forum state's choice of law doctrine requires the application of a foreign nation's laws, then a federal court must apply that foreign law. *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975).

Delaware's choice of law doctrine requires a two-part inquiry. *Vichi*, 85 A.3d at 772. First, the court compares the laws of the competing jurisdictions to determine "whether the laws actually conflict on a relevant point." *Id.* at 773. If the competing laws would yield the same result, then there is no genuine conflict, and no choice of law analysis is necessary. *Id.* Second, if there is an actual conflict, then the court applies the "most significant relationship" test to determine which jurisdiction's laws to apply. *Id.*

3

Both parties agree there is no conflict between the laws of Ecuador and Delaware on negligence. (D.I. 234 at 10, n.14; D.I. 316 at 5). Thus, Delaware law applies to Plaintiffs' negligence claim.

Defendants argue that Ecuador and Delaware differ in their approaches to strict products liability, while Plaintiffs argue the laws are the same. Both parties provide declarations from experts in Ecuadorean law, and the experts all agree that Ecuador recognizes strict liability ("*responsabilidad objective*") in certain products liability cases. (D.I. 234-1, Ex. 22 at 3-4; D.I. 318 at 4). "Delaware law, however, does not recognize strict products liability based on the rationale that such claims are preempted by the Uniform Commercial Code." *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996) (citing *Cline v. Prowler Indus. of Maryland, Inc.*, 418 A.2d 968 (Del.1980)). This rule extends to all "sales of goods," even when the plaintiff did not personally purchase the goods. *See Beattie v. Beattie*, 786 A.2d 549, 553–54 (Del. Super. Ct. 2001); *Cline*, 418 A.2d at 979-80. For example, in *Lejeune*, the plaintiff was a worker in a Delaware steel mill who was injured by his employer's machine. 85 F.3d at 1071. Applying Delaware law, the Third Circuit could "immediately dispose" of the plaintiff's product liability claim. *Id.* at 1072. Plaintiffs' complaint alleges the pesticide was "sold." (D.I. 1 ¶¶ 28, 31, 44, 61-63). Thus, under Delaware law, Plaintiffs cannot bring a strict products liability claim. I therefore conclude that Delaware law conflicts with Ecuadorean law on products liability.

Defendants argue there are conflicts of laws for Plaintiffs' conspiracy, concert of action, and participation and assistance claims. Plaintiffs respond that these claims are merely "ancillary" to their negligence claim (D.I. 317 at 6), and, for the conspiracy claim, they point to Ecuadorean law on vicarious liability (*id.* at 11). Vicarious liability, however, is not the same as civil conspiracy. Plaintiffs have advanced these theories as independent bases for liability, and

they do not appear to contest that Ecuadorean law differs from Delaware law on these theories of liability. Accordingly, I conclude there are conflicts of laws on these claims.

Plaintiffs argue that punitive damages are "incidental" to their negligence claim, and that, because Defendants concede Delaware law governs the negligence claim, Delaware law also governs Plaintiffs' ability to seek punitive damages. Plaintiffs are certainly correct that punitive damages are a type of relief, and not an independent cause of action. *Touch of Italy Salumeria & Pasticceria, LLC v. Bascio*, 2014 WL 108895, at *8 (Del. Ch. Jan. 13, 2014). Neither party, however, cites clear Delaware law on whether courts analyze issues of relief and liability separately for choice of law purposes. Courts in other states have explicitly held that the two issues are distinct and must be analyzed individually. *See Minebea Co. v. Papst*, 377 F. Supp. 2d 34, 40 (D.D.C. 2005); *In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, 2006 WL 1288298, at *23 (S.D.N.Y. May 9, 2006). Delaware courts have recognized that laws of different jurisdictions can apply to different issues within a single case, although the decisions have not explicitly addressed punitive damages. *Naghiu v. Inter-Cont'l Hotels Grp., Inc.*, 165 F.R.D. 413, 422 (D. Del. 1996); *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 41, 47 (Del. 1991). Because punitive damages serve a different purpose than compensatory damages, and because Delaware courts have held that choice of law analysis is issue specific, I conclude that punitive damages in this case must be analyzed separately from the underlying negligence claim. There is apparently no dispute that there are no punitive damages under Ecuadorean law. (D.I. 234-1, Ex. 23 at 7; D.I. 318 at 9-10). Thus, there is a conflict of law for punitive damages.

According to Defendants' experts, Ecuadorean law differs from Delaware law on Plaintiffs' claims for breach of implied warranty and fraud. Plaintiffs do not contest this point. Similarly, Plaintiffs do not contest that Ecuadorean law differs from Delaware law on medical

5

monitoring damages and enhanced risk of injury damages. (D.I. 317). Like punitive damages, these relief issues must be analyzed separately from the underlying causes of action. Thus, I find conflicts of laws on these issues as well.

Next, I must apply the "most significant relationship" test to determine which jurisdiction's laws govern these claims (other than negligence). Delaware courts have adopted this test from the Restatement (Second) of Conflict of Laws, which provides that the "law of the state with the most significant relationship to the occurrence and the parties under the principles stated in § 6 is the governing law." *State Farm Mut. Auto. Ins. Co. v. Patterson*, 7 A.3d 454, 457 (Del. 2010) (quoting Restatement (Second) of Conflict of Laws § 145 (1971)). Section 6(2) provides that the following principles are relevant:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Section 145(2) also directs courts to consider these contacts:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Finally, Section 146 provides that, in a personal injury action, the law of the jurisdiction where the injury occurred should apply "unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties."

I will begin with the contacts listed in Section 145(2). Plaintiffs allege they were exposed to DBCP and injured while working in Ecuador. (D.I. 1 ¶¶ 68, 79, 117-120); (12-697-RGA, D.I. 1 ¶¶ 121-134). Thus, the first factor favors the application of Ecuadorean law. For the second factor, the "trend has been . . . to look to the place where the injury-causing product was used," *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1055 (Del. 2015), which, in this case, was Ecuador. To the extent that the location of product development, testing, and manufacture is relevant, none of those events occurred in Ecuador or Delaware. (D.I. 234 at 5-8). Thus, the second factor also favors Ecuador.

The third factor is mixed. Plaintiffs are citizens of Ecuador. (D.I. 1 ¶ 104). Defendants are mostly Delaware corporations: the Dow Chemical Company, the Standard Fruit & Steamship Company, Standard Fruit Company, Chiquita Fresh North America LLC, Chiquita Brands LLC, and the Shell Oil Company are all incorporated in Delaware, according to Defendants. (D.I. 234 at 3-5). The Dole Food Company was incorporated in Delaware from 2001 to 2016 (although neither party has identified where it was incorporated before 2001). (*Id.* at 3). According to Defendants, other Defendants are not Delaware corporations: the Dole Fresh Fruit Company is a Nevada corporation (formed in 1985 as a subsidiary of Dole Food); Chiquita Brands International, Inc. is a New Jersey corporation; the Occidental Chemical Corporation is a New York corporation; and AMVAC Chemical Corporation is a California corporation. (*Id.* at 3-5). No Defendant is headquartered in Delaware, and Plaintiffs have not pointed to any significant business that Defendants conduct in the state.

For the fourth factor, Delaware courts have concluded that the "relationship is centered" where the injury occurred, where the products were produced, or where the products were used. *Rahaman v. J.C. Penney Corp.*, 2016 WL 2616375, at *4 (Del. Super. Ct. May 4, 2016); *Turner*

7

*v. Lipschultz*, 619 A.2d 912, 915 (Del. 1992); *Bell Helicopter*, 113 A.3d at 1056. In this case, the products were used in Ecuador, and the injuries occurred in Ecuador. There is no evidence that any production, manufacture, or development occurred in Delaware. Thus, this factor also points to Ecuador.

I must also consider the principles listed in Section 6 of the Restatement. The first factor is the "needs of the interstate and international system," which the Restatement considers to be the "most important" factor. Restatement (Second) of Conflicts of Laws § 6 cmt. d. (1971). The Delaware Supreme Court's decision in *Bell Helicopter* is instructive here. In that case, Mexican citizens were killed in a helicopter crash in Mexico, and the families of the decedents sued Bell Helicopter Textron, Inc., a Delaware corporation, which was headquartered in Texas and which built the allegedly defective part in Texas. *Bell Helicopter*, 113 A.3d at 1048. The plaintiffs in that case argued Texas law should apply, while the defendant argued Mexican law should apply.

In considering the first Section 6 factor, the Delaware Supreme Court concluded that applying Texas law instead of Mexican law would "impugn[] Mexico's judicial system as inadequate to compensate its own citizens," and the court reasoned that "[t]he Mexican people, acting through their elected representatives, are entitled to determine for themselves the appropriate balance between the remedies available to victims and limiting liability to encourage companies to operate in Mexico." *Id.* The court held, "Providing incentives for Mexican citizens to evade the limits on remedies and damages imposed by their own legal system when the defendant fortuitously happens to be a U.S.-based company threatens to disturb international relations and to impede the willingness of companies to do business in Mexico." *Id.* Under that same reasoning, the needs of the international system favor the application of Ecuadorean law in this case.

For the second factor, the policies underlying Delaware's tort system carry little weight because Delaware's only connection (other than being the site of the litigation) is that some Defendants are incorporated here. "While it is assumed that Delaware has general concern that a Delaware corporation operates properly, Delaware typically does not tell its corporate citizens how to conduct their daily operations outside of Delaware." *Tumlinson v. Advanced Micro Devices, Inc.*, 2010 WL 8250792, at *3 (Del. Super. Ct. July 23, 2010).

For the third factor, Ecuador has an interest in applying its tort regime to its citizens who suffer injuries within its borders. As the Delaware Supreme Court held in *Bell Helicopter*, "It would be disrespectful to ignore the policy choices Mexico has made." 113 A.3d at 1058. Thus, the third factor favors Ecuadorean law.

The fourth factor is the "protection of justified expectations." In *Bell Helicopter*, the court held, "[A]s Mexican citizens whose loved ones boarded a helicopter for a flight that was to start and end in Mexico, [the plaintiffs] should have expected to have their rights governed by relevant Mexican law." 113 A.3d at 1059. Similarly, Plaintiffs here should have assumed their rights were governed by Ecuador's tort law system while they were working on banana plantations in Ecuador. In *Bell Helicopter*, the court concluded the defendant company should have expected it could be liable for its products in either Texas or Mexico. Here, Delaware Defendants expected to be governed by Delaware corporate law, but they had little reason to expect to be governed by Delaware tort law. *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1113 & n. 14 (Del. 2005) ("[T]he law of the state of incorporation governs and determines issues relating to a corporation's internal affairs . . . [but] [t]he internal affairs doctrine does not apply where the rights of third parties external to the corporation are at issue, *e.g.*, contracts and torts."). Thus, I conclude this factor favors Ecuadorean law.

9

For the fifth factor, neither party has explained why "the basic policies underlying" tort law should favor either jurisdiction, so I consider this factor neutral. The sixth factor, the "certainty, predictability and uniformity of result," points to Ecuadorean law. In *Bell Helicopter*, the court explained, "Enabling foreign citizens to opt out of the remedial schemes created by their own laws only encourages forum shopping—or even defendant-shopping." 113 A.3d at 1059.

The final factor points to Delaware law because it would certainly be easier to determine and apply Delaware law than Ecuadorean law. The Delaware Supreme Court, however, cautioned that, although it would "undoubtedly place some strain" on a court to retain translators and hear from experts in foreign law, a "court must not let its own lack of facility in a foreign language or foreign law tilt the choice of law calculus. To do so is unfair to the parties and a signal that the case should perhaps instead be heard in a forum with relevance to the case, rather than Delaware." *Bell Helicopter*, 113 A.3d at 1059-60.

Considering all these factors, I conclude that Ecuador has the "most significant relationship" to the facts and parties of this case. The difficulty in applying foreign law and the fact that some Defendants are incorporated in Delaware are the only factors favoring Delaware, while the needs of the international system, the citizenship of Plaintiffs, the location of the injuries, the center of the relationship between the parties, and the protection of justified expectations all point to Ecuador. Thus, Ecuadorean law must govern Plaintiffs' claims.

**C. Borrowing Statute**

Even if a foreign jurisdiction's law governs a party's claims, the "general rule is that the forum state's statute of limitations applies." *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2015 WL 11120934, at *3 (Del. Super. Ct. Dec. 29, 2015); s*ee also Sun Oil Co. v.

*Wortman*, 486 U.S. 717, 722 (1988) ("[T]he Constitution does not bar application of the forum State's statute of limitations to claims that in their substance are and must be governed by the law of a different State.")

In the Revised Scheduling Order (D.I. 190, ¶1; No. 12-697, D.I. 271, ¶1), I ordered that Defendants' choice of law motion should also address "whether the Delaware borrowing statute applies." Delaware's Borrowing Statute provides:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply.

10 Del. C. § 8121.

Under this law, if a cause of action arises outside of Delaware, courts apply whichever is shorter: 1) the statute of limitations of the jurisdiction where the claim arose; or 2) Delaware's statute of limitations. To determine where the claim arose, courts use the same "most significant relationship" test they use in choice of law analysis. *TrustCo Bank v. Mathews*, 2015 WL 295373, at *9 (Del. Ch. Jan. 22, 2015). Thus, for the reasons already discussed, this action arose in Ecuador.

I conclude, however, that further analysis of Delaware's Borrowing Statute would be more appropriate in the context of summary judgment. I decide here that the Borrowing Statute applies to this case because Plaintiffs' "cause of action arises outside of this State." Whether that means Plaintiffs' claims are time-barred is not a question to decide on this motion, which is for the application of Ecuadorean law under Federal Rule of Civil Procedure 44.1. It seems to me that calculating the relevant limitations period under the Borrowing Statute would benefit, at a

11

minimum, from more detailed briefing on the content of Ecuadorean law and the factual situations of the individual Plaintiffs.

### IV. CONCLUSION

For these reasons, Defendants' "Motion for Application of Ecuador Law" (D.I. 233) is GRANTED.

IT IS SO ORDERED this 18th day of September 2020.

                                                                                     /s/ Richard G. Andrews
                                                                                    United States District Judge