## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LUIS ANTONIO AGUILAR MARQUINEZ, *et al*., | ) ) ) | C.A. No. 1:12-cv-00695-RGA (consolidated) |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| DOLE FOOD COMPANY, *et al*., | ) ) | |
| Defendants. | ) ) | |
| TOBIAS BERMUDEZ CHAVEZ, *et al*., | ) ) | C.A. No. 1:12-cv-00697-RGA (consolidated) |
| Plaintiffs, | ) ) | |
| v. | ) ) | **This document relates only to Civil Action Nos. 1:12-cv-00697-RGA, 1:12-cv-00698-RGA, 1:12-cv-00699-RGA, 1:12-cv-00700-RGA, 1:12-cv-00701-RGA, 1:12-cv-00702-RGA** |
| DOLE FOOD COMPANY, *et al*., | ) ) ) | |
| Defendants. | ) ) | |

## OPENING BRIEF IN SUPPORT OF
## DOLE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AS TO ECUADORIAN PLAINTIFFS

Dole Food Company, Inc., Dole Fresh Fruit Company, Standard Fruit Company, and Standard Fruit and Steamship Company (collectively, "Dole") submit the following Opening Brief in Support of their Motion for Summary Judgment.  This motion is filed only in the *Chavez* case (C.A. No. 12-697-RGA) and the cases consolidated under that case number on November 29, 2012 (D.I. 53), as Dole is not a party to the *Marquinez* action (C.A. No. 12-695-RGA), which was also filed by Plaintiffs' counsel.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. NATURE AND STAGE OF THE PROCEEDINGS ................................................. 3

III. SUMMARY OF ARGUMENT ............................................................................... 3

IV. FACTUAL AND PROCEDURAL BACKGROUND ............................................. 4

V. STANDARD OF REVIEW ...................................................................................... 8

VI. ARGUMENT ........................................................................................................... 9

    A.    Ecuadorian Law Imposes a "Shorter" Limitations Period Than Delaware ........ 10

        1.    The Borrowing Statute Compares Different Jurisdictions' Limitations Periods After Applying All Applicable Tolling and Accrual Rules ............ 10

        2.    Delaware's Statute of Limitations Includes a Discovery Rule and Can Be Extended by Class Action Tolling ........................................................... 12

        3.    Ecuadorian Law Imposes a Four-Year Statute of Repose That Does Not Include a Discovery Rule and Does Not Recognize Class Action Tolling12

            a.    Ecuador's Four-Year Time Bar Starts Running Upon Commission of the Allegedly Wrongful Act .................................................... 13

            b.    Plaintiffs' Theory of Class Action Tolling Fails Under Ecuadorian Law ........................................................................................... 15

    B.    Plaintiffs' Claims Fail as a Matter of Law Under Ecuador's Four-Year Statute of Repose ...................................................................................................... 18

VII. CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banco de Credito Indus., S.A. v. Tesoreria Gen.*,
  990 F.2d 827 (5th Cir. 1993) ...................................................9

*Betts v. New Castle Youth Dev. Ctr.*,
  621 F.3d 249 (3d Cir. 2010).....................................................8

*Brown v. E.I. duPont de Nemours & Co.*,
  820 A.2d 362 (Del. 2003) .......................................................12

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
  137 S. Ct. 2042 (2017)...........................................................17

*Calcaño Pallano v. AES Corp.*,
  2011 WL 2803365 (Del. Super. July 15, 2011)......................12

*Chavez v. Dole Food Co. Inc.*,
  2012 WL 3600307 (D. Del. Aug. 21, 2012) .............................4

*Cheswold Vol. Fire Co. v. Lambertson Const. Co.*,
  489 A.2d 413 (Del. 1984) ...................................................3, 15

*Clinton v. Enter. Rent-A-Car Co.*,
  977 A.2d 892 (Del. 2009) .........................................................9

*CTS Corp. v. Waldburger*,
  573 U.S. 1 (2014)........................................................13, 14, 17

*De Adler v. Upper New York Inv. Co. LLC*,
  2013 WL 5874645 (Del. Ch. Oct. 31, 2013) .................... *passim*

*El v. SEPTA*,
  479 F.3d 232 (3d Cir. 2007).....................................................8

*Frombach v. Gilbert Assocs., Inc.*,
  236 A.2d 363 (Del. 1967) .........................................10, 11, 17

*IMO Estate of Lambeth*,
  2018 WL 3239902 (Del. Ch. July 2, 2018)............................17

*JPMorgan Chase Bank, N.A. v. Ballard*,
  213 A.3d 1211 (Del. Ch. 2019).............................................17

*Marquinez v. Dow Chem. Co.*,
    183 A.3d 704 (Del. 2018) .......................................................................2, 12, 17

*May v. Remington Arms Co.*,
    2005 WL 2155229 (Del. Super. Ct. Aug. 31, 2005).............................11, 14, 15, 19

*Nat'l Grp. for Commc'ns & Comps., Ltd. v. Lucent Techs. Int'l, Inc.*,
    331 F. Supp. 2d 290 (D.N.J. 2004) ........................................................................9

*Osorio v. Dole Food Co.*,
    665 F. Supp. 2d 1307 (S.D. Fla. 2009) ................................................................19

*Osorio v. Dow Chem. Co.*,
    635 F.3d 1277 (11th Cir. 2011) ...........................................................................19

*Patrickson v. Dole Food Co., Inc.*,
    368 P.3d 959 (Haw. 2015) ...................................................................................18

*Plumb v. Cottle*,
    492 F. Supp. 1330 (D. Del. 1980) ..................................................................10, 17

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
    81 F.3d 355 (3d Cir. 1996)...................................................................................19

*Wheelings v. Seatrade Groningen, BV*,
    516 F. Supp. 2d 488 (E.D. Pa. 2007) .....................................................................9

*Witco Corp. v. Beekhuis*,
    38 F.3d 682 (3d Cir. 1994)......................................................................................8

*Youell v. Maddox*,
    692 F. Supp. 343 (D. Del. 1988) ..........................................................................10

**Statutes**

10 Del. C. § 8119 .......................................................................................................12

10 Del. C. § 8121 ................................................................................................1, 3, 9, 19

Ecuador Civil Code § 18 ............................................................................................14

Ecuador Civil Code § 2235 ............................................................................... *passim*

**Rules**

Fed. R. Civ. P. 44.1 .................................................................................................8, 9

Fed. R. Civ. P. 56(a) ...................................................................................................8

**Treatises**

9 Wright & Miller, Federal Practice & Procedure § 2444 ............................................................9

## I.     INTRODUCTION

This Court has already ruled that Delaware's "Borrowing Statute applies to this case because Plaintiffs' 'cause of action arises outside of this State.'" D.I. 324 at 11.  As a consequence, only two questions remain in order to determine whether Plaintiffs' claims are time-barred: (1) whether the laws of Ecuador or Delaware provide the "shorter" time limit for Plaintiffs' claims, and (2) whether Plaintiffs' claims are untimely under the shorter time limit.  These questions are easily resolved, because both the material legal and factual issues are undisputed, and the Court should grant summary judgment.

The Ecuadorian Plaintiffs filed this action in June 2012, several decades after they were allegedly exposed to the pesticide ("DBCP") that they claim caused their injuries.  Delaware's borrowing statute provides that "[w]here a cause of action arises outside of" Delaware, "an action cannot be brought in a court of [Delaware] to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of [Delaware], or the time limited by the law of the state or country where the cause of action arose."  10 Del. C. § 8121.  The "comparison" the borrowing statute calls for "is of the limitations periods and their respective 'accoutrements,' such as claim accrual and tolling doctrines, and the shorter limitations period is accepted with its accoutrements."  *De Adler v. Upper New York Inv. Co. LLC*, 2013 WL 5874645, at *13 & n.149 (Del. Ch. Oct. 31, 2013).  Accordingly, under the borrowing statute, a plaintiff cannot "bring a foreign law claim in Delaware if it would be time-barred from bringing that claim in the foreign jurisdiction."  *Id*.

**1.  Ecuador's limitations period is shorter than Delaware's and therefore controls under the borrowing statute.**  The parties' foreign law experts agree that Ecuador's four-year statute of repose governs the Ecuadorian Plaintiffs' claims.  D.I. 234-1, Ex. 23 ("Velazquez

Decl.") at 7; D.I. 318 at 11–12.  Specifically, civil tort claims "lapse in four years, starting from the commission of the act"—regardless of when the plaintiff discovers the alleged injury.  Velazquez Decl. at 7 (citing Civil Code § 2235).  Unlike Delaware, in Ecuador claims must be filed within four years of the Defendant's allegedly wrongful act—there is no discovery rule and no tolling for unsuccessful class actions (class actions do not even exist).  Velazquez Decl. at 8.  Former Ecuadorian Supreme Court Justice Dr. Santiago Velazquez explained that Plaintiffs' theory that a 1993 Texas class action tolled the statute of limitations is thus "not valid" under Ecuadorian law.  *Id.*  Ecuador's four-year statute of repose is, therefore, "shorter" than Delaware's two-year statute of limitations and controls under the borrowing statute.  *De Adler*, 2013 WL 5874645, at *13 & n.149; *cf. Marquinez v. Dow Chem. Co.*, 183 A.3d 704, 711 (Del. 2018).

**2. The undisputed facts show that Plaintiffs filed their claims after the four-year Ecuadorian statute of repose had expired.**  The Ecuadorian Plaintiffs allege that they were exposed to DBCP while working on banana farms in Ecuador in the 1960's, 70's, and 80's.  Any allegedly wrongful "act" by Dole is thus alleged to have occurred no later than 1990—the last year in which any Plaintiff alleges exposure to DBCP.  *See infra* p. 5, Chart 1.  Thus, by the time the Ecuadorian Plaintiffs filed this suit in 2012, their claims had long since expired in their home country, being all time-barred by 1994 at the latest.  And even if Ecuador recognized a discovery rule (it does not), the undisputed facts show that each Ecuadorian Plaintiff had actual knowledge of his purported injuries more than four years before filing suit.  *See infra* p. 6, Chart 2.

*          *          *

The Ecuadorian Plaintiffs' claims expired under Ecuadorian law long before they filed this suit.  Because all of the Ecuadorian Plaintiffs' claims are time-barred under Ecuadorian law, they fail as a matter of law in this Court also under Delaware's borrowing statute.  This makes

2

substantive sense, because, in the decades since Plaintiffs claim they were injured, "evidence has been lost, memories have faded, and witnesses have disappeared," including at least five of the Ecuadorian Plaintiffs themselves, who are now deceased.  *Cheswold Vol. Fire Co. v. Lambertson Const. Co.*, 489 A.2d 413, 417 (Del. 1984).  Delaware's "well recognized and legitimate public purpose" to bar "ancient claims" (*id.*) justifies dismissing Plaintiffs' untimely foreign claims. Dole is, therefore, entitled to summary judgment as to all of the Ecuadorian Plaintiffs' claims.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs originally filed six different complaints in June 2012 that the Court consolidated in the present action.  D.I. 53.  The complaints assert claims on behalf of individuals from Ecuador, Costa Rica, and Panama, but this Court ordered the parties "to focus their initial discovery and trial preparation efforts on the claims of the approximately [55] Plaintiffs who allege they were exposed to DBCP in Ecuador" (the "Ecuadorian Plaintiffs").  D.I. 176 ¶ 1.  Dole hereby moves for summary judgment as to the Ecuadorian Plaintiffs' claims on the grounds that they are time-barred under Ecuadorian law.  Dole is not a defendant in the *Marquinez* action, and therefore is not moving as to the plaintiffs in Civil Action No. 12-695-RGA.

## III.     SUMMARY OF ARGUMENT

1.     The Court has ruled that the borrowing statute applies to the Ecuadorian Plaintiffs' claims.  Delaware's borrowing statute provides that "[w]here a cause of action arises outside of" Delaware, "an action cannot be brought in a court of [Delaware] to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of [Delaware], or the time limited by the law of the state or country where the cause of action arose."  10 Del. C. § 8121.

2.     Under Ecuadorian law, Plaintiffs are subject to a four-year statute of repose that runs from the commission of the Defendant's "act."  This time period is shorter than Delaware's

3

two-year statute of limitations because it does not commence upon discovery of the injury, and because it is not tolled for unsuccessful class actions.

3.     Because Dole's last alleged "act" occurred in 1990, under Ecuadorian law, the Ecuadorian Plaintiffs' claims had all expired before they filed this suit in 2012.  The Ecuadorian Plaintiffs' claims are therefore barred under the borrowing statute.  *De Adler*, 2013 WL 5874645, at *13 & n.149.

## IV.     FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2012, 230 Central and South American banana farm workers filed six separate complaints that were consolidated into the present action.  *See* D.I. 53.[1]  The Ecuadorian Plaintiffs are 55 former banana farm workers who claim that they "sustained exposure to DBCP while present on or near" "banana plantations owned, operated, or otherwise controlled by the Dole Defendants."  D.I. 1 ¶ 88.  They allege that Dole "direct[ed] and/or require[ed] the use of DBCP without adequate safety precautions on the banana plantations they owned, operated or otherwise controlled."  D.I. 1 ¶ 121.  The Ecuadorian Plaintiffs claim that their exposure to DBCP caused a wide range of purported injuries, including "sterility, abnormally low sperm quantity and defective sperm quality."  D.I. 1 ¶ 105.  While there is substantial reason to doubt the validity of Plaintiffs' injuries (*see* D.I. 259), Plaintiffs' allegations may be accepted as true for purposes of this Motion.

---

[1]  This Court initially dismissed this case because Plaintiffs had previously filed suits that were "identical (in all material respects)" in the Eastern District of Louisiana, but the Third Circuit—after initially affirming—reversed that decision and remanded this case. *Chavez v. Dole Food Co. Inc.*, 2012 WL 3600307, at *1 (D. Del. Aug. 21, 2012), vacated and remanded, 836 F.3d 205 (3d Cir. 2016).  Dole is not a party to the *Marquinez* action (No. 1:12-cv-00695), which was also filed by Plaintiffs' counsel.  Declaration of Mary Beth Maloney ("Maloney Decl."), Ex. A (D.I. 137, C.A. No. 12-695-RGA (Notice of Appeal)) at 2 ("Plaintiffs are not appealing at this time as to Dole Food Company, Inc., Dole Fresh Fruit Company, Standard Fruit Company and Standard Fruit And Steamship Company.").

It is undisputed that none of the Ecuadorian Plaintiffs claim their exposure to DBCP occurred later than 1990.  In their various complaints and discovery responses, each Ecuadorian Plaintiff alleged a date range when he was allegedly exposed to DBCP.  These dates range from 1963 at the earliest, to 1990 at the latest.

## Chart 1: Alleged Exposure Dates[2]

| Plaintiff | Date | Plaintiff | Date |
|---|---|---|---|
| Agila Salinas, Angel Neptali | 1963-1984 | Nicanor Virgilio, Roasario Avelino | 1975-1985 |
| Alcibar Montesarrate, Florentino Gilberto | 1980-1985 | Noriega Moreira, Juan Bautista | 1963, 1969-1982 |
| Alvarado Vasquez, Nixon Modesto | 1979-1982 | Orbe Valencia, Galo Miguel | 1976-1980 |
| Alvarez Jovino, Julian | 1983-1986 | Orrala Ramirez, Ricardo Alberto | 1981-1985 |
| Asuncion Quimi, Tomas Gilberto | 1975-1985 | Pacheco Urgiles, Jose Nicanor | 1966-1980 |
| Barona Benites, Roberto William | 1981-1987 | Paladines Illescas, Luis Alfonso | 1970-1984 |
| Benigno Ortis, Manuel | 1973-1976 | Palomino Romero, Erick Franklin | 1979-1982 |
| Cacay Cordova, Nestor Evelino | 1972-1985 | Porras Alvarez, Manuel Jose | 1979-1986 |
| Campos Del Peso, Jose Vicente | 1975-1985 | Pucha Villamagua, Jose Leoncio | 1970-1980 |
| Campoverde Arce, Gabriel Rodolfo | 1980-1985 | Quezada Vitonera, Leopoldo Mauricio | 1981-1985 |
| Castro Lopez, Odilo | 1976-1982 | Quito Arevalo, Miguel Angel | 1978-1980 |
| Chacon Quichimbo, Lauro Olmedo | 1970-1975 | Ramirez Oyola, German Eleuterio | 1966-1968, 1972-1985 |
| Chica Romero, Jose Dario | 1973-1984 | Romero Castro, Angel Rafael | 1980-1986 |
| Contreras Espinoza, Francisco Domingo | 1971-1977 | Salvatierra Villa, Luis Vinicio | 1965-1981 |
| Cornejo Leon, Epifanio Archibaldo | 1965-1973 | Sanchez Sanchez, Douglas Rolando | 1985 |
| Espinoza Espinoza, Jose Antonio | 1978-1980 | Saraguro, Miguel Angel | 1969-1984 |
| Estrada Mosquera, Manuel Isaias | 1977-1982 | Sarmiento Cabrera, Jose Fernando | 1977-1980 |
| Garcia Villon, Pedro Ramon | 1983-1984 | Suarez Del Rosario, Julian Gonzalo | 1975-1978 |
| Guaicha Cardenas, Manuel | 1970-1972, 1980-1982 | Torres Farias, Sixto | 1970-1980 |
| Huertas Mosquera, Juan De Jesus | 1965-1970 | Torres Tenesaca, Gregorio Juan | 1978-1986 |
| Inga Dominguez, Manuel Jesus | 1966-1982 | Unamuno Coronel, Teodoro Fernando | 1969, 1974-1985 |
| Iniguez Ochoa, Miguel Angel | 1965-1983 | Vasquez Lopez, Luis Gilberto | 1970-1980 |
| Jimenez Guanoquiza, Mariano Cruz | 1965-1966 | Villacres Mendoza, Francisco Oswaldo | 1982-1985 |
| Leon Velez, Hugo Eberio | 1972-1976 | Villon Primitivo, Eugenio Apolinario | 1984-1986 |
| Loja Alvarado, Jose Santiago | 1971-1985 | Vivar Sanchez, Eugenio De Jesus | 1978-1985 |

[2]  *See* Maloney Decl., Ex. B.  In some cases, Plaintiffs gave differing exposure dates in their complaints and their discovery responses.  Chart 1 lists the *later* of the ranges where there was a discrepancy.

| Plaintiff | Date | Plaintiff | Date |
|---|---|---|---|
| Lopez Correa, Jose Virgilio | 1971-1974 | Zambrano Otero, Eulogio Apolonio | 1977-1985 |
| Lupu Reyes, Alcides Humberto | 1983-1990 | Zerda Guerra, Mauro Gregorio | 1974-1980 |
| Maza Vivanco, Milton Medardo | 1982-1985 | | |

While these alleged exposure dates are not supported by the evidence, they may be accepted as true for purposes of this motion.

Although there is no discovery rule under Ecuador's four-year statute of repose, it is also undisputed that each of the Ecuadorian Plaintiffs had actual knowledge of his alleged injuries by no later than 2005.  Of the 55 Ecuadorian Plaintiffs, 43 filed declarations in federal court in Louisiana showing that they had actual knowledge of their alleged injuries between 1995 and 2000. These declarations were all prepared using a common template, and state:  "I became aware of being sterile on [Date], when I submitted to a sperm test to determine my sperm count, after I found out about the relationship between DBCP contact and sterility, and I was informed that my sperm count test result was below the normal level."  Maloney Decl., Ex. G (English Declaration) ¶ 3.  The test results and verified questionnaire responses of each of the 12 remaining Ecuadorian Plaintiffs confirm that each of these Plaintiffs had knowledge of his alleged injuries by no later than 2005.  *Id.*, Ex. H (chart of verified English translations of questionnaire responses), Ex. I (Plaintiff Cacay Cordova's test results).

**Chart 2: Dates Plaintiffs Discovered Alleged Injuries[3]**

| Plaintiff | Date | Plaintiff | Date |
|---|---|---|---|
| Agila Salinas, Angel Neptali | May 30, 1998 | Nicanor Virgilio, Roasario Avelino | March 1, 1994 |
| Alcibar Montesarrate, Florentino Gilberto | April 28, 1998 | Noriega Moreira, Juan Bautista | February 25, 1998 |
| Alvarado Vasquez, Nixon Modesto | February 26, 1998 | Orbe Valencia, Galo Miguel | March 10, 1995 |
| Alvarez Jovino, Julian | April 28, 1998 | Orrala Ramirez, Ricardo Alberto | April 7, 1998 |

---

[3]  *See id.*, Ex. E.

| Plaintiff | Date | Plaintiff | Date |
|---|---|---|---|
| Asuncion Quimi, Tomas Gilberto | April 26, 1998 | Pacheco Urgiles, Jose Nicanor | January 14, 1995 |
| Barona Benites, Roberto William | May 5, 2000 | Paladines Illescas, Luis Alfonso | March 8, 1995 |
| Benigno Ortis, Manuel | February 27, 1998 | Palomino Romero, Erick Franklin | June 9, 2000 |
| Cacay Cordova, Nestor Evelino | March 15, 1998 | Porras Alvarez, Manuel Jose | April 1, 1998 |
| Campos Del Peso, Jose Vicente | June 17, 1998 | Pucha Villamagua, Jose Leoncio | July 1, 1998 |
| Campoverde Arce, Gabriel Rodolfo | June 8, 2000 | Quezada Vitonera, Leopoldo Mauricio | March 24, 1998 |
| Castro Lopez, Odilo | June 10, 1998 | Quito Arevalo, Miguel Angel | June 16, 1998 |
| Chacon Quichimbo, Lauro Olmedo | July 26, 1998 | Ramirez Oyola, German Eleuterio | July 26, 1998 |
| Chica Romero, Jose Dario | March 17, 1998 | Romero Castro, Angel Rafael | April 7, 1998 |
| Contreras Espinoza, Francisco Domingo | August 22, 1998 | Salvatierra Villa, Luis Vinicio | 1998 |
| Cornejo Leon, Epifanio Archibaldo | June 19, 1998 | Sanchez Sanchez, Douglas Rolando | March 29, 1996 |
| Espinoza Espinoza, Jose Antonio | April 15, 1998 | Saraguro, Miguel Angel | May 2, 1995 |
| Estrada Mosquera, Manuel Isaias | 1998 | Sarmiento Cabrera, Jose Fernando | June 19, 1998 |
| Garcia Villon, Pedro Ramon | June 22, 1998 | Suarez Del Rosario, Julian Gonzalo | July 20, 1998 |
| Guaicha Cardenas, Manuel | August 15, 1998 | Torres Farias, Sixto | May 12, 1998 |
| Huertas Mosquera, Juan De Jesus | August 22, 1998 | Torres Tenesaca, Gregorio Juan | July 26, 1998 |
| Inga Dominguez, Manuel Jesus | July 26, 1998 | Unamuno Coronel, Teodoro Fernando | May 13, 1995 |
| Iniguez Ochoa, Miguel Angel | November 11, 1998 | Vasquez Lopez, Luis Gilberto | March 17, 1998 |
| Jimenez Guanoquiza, Mariano Cruz | July 26, 1998 | Villacres Mendoza, Francisco Oswaldo | September 7, 2000 |
| Leon Velez, Hugo Eberio | July 26, 1998 | Villon Primitivo, Eugenio Apolinario | July 26, 1998 |
| Loja Alvarado, Jose Santiago | April 28, 2000 | Vivar Sanchez, Eugenio De Jesus | May 7, 2000 |
| Lopez Correa, Jose Virgilio | March 20, 1998 | Zambrano Otero, Eulogio Apolonio | April 26, 1998 |

| Plaintiff | Date | Plaintiff | Date |
|---|---|---|---|
| Lupu Reyes, Alcides Humberto | November 18, 2005 | Zerda Guerra, Mauro Gregorio | June 2000 |
| Maza Vivanco, Milton Medardo | April 30, 1995 | | |

Pursuant to this Court's November 21, 2019 Order, Defendants moved to apply Ecuadorian law to the Ecuadorian Plaintiffs' claims, and also addressed "whether the Delaware borrowing statute applies." D.I. 190. The Court granted Defendants' motion and ruled that "Ecuador has the 'most significant relationship' to the facts and parties of this case." D.I. 324 at 10. The Court also "decide[d in its order] that the Borrowing Statute applies to this case because Plaintiffs' 'cause of action arises outside of this State.'" *Id*. at 11. But the Court held that "further analysis of Delaware's Borrowing Statute would be more appropriate in the context of summary judgment." *Id*. Dole now brings this motion for summary judgment based on the borrowing statute.

## V.  STANDARD OF REVIEW

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial responsibility of informing the district court of the basis for its motion." *El v. SEPTA*, 479 F.3d 232, 237 (3d Cir. 2007) (internal quotation marks omitted). If that standard is met, the non-moving party "must make a showing sufficient to establish the existence of a genuine issue for trial." *Witco Corp. v. Beekhuis*, 38 F.3d 682, 686 (3d Cir. 1994). The non-moving party must point to specific facts; "[u]nsupported assertions [or] conclusory allegations . . . are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

"In determining foreign law," such as another country's statute of limitations, "the court may consider any relevant material or source, including testimony, whether or not submitted by a

party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Rule 44.1 does not require "the court to take 'judicial notice' of foreign law," and instead "provides flexible procedures for presenting and utilizing material on issues of foreign law." Fed. R. Civ. P. 44.1 Advisory Committee's notes. "[E]xpert testimony is the most common method of determining foreign law." *Wheelings v. Seatrade Groningen, BV*, 516 F. Supp. 2d 488, 499 (E.D. Pa. 2007). However, "a litigant may [also] present any other information concerning foreign law that is believed to further his cause, including secondary sources such as texts and learned journals." 9 Wright & Miller, Federal Practice & Procedure § 2444; *see also* FED. R. CIV. P. 44.1 ("the court may consider any relevant material or source").

The court's determination of the applicability and content of foreign law is "treated as a ruling on a *question of law*." Fed. R. Civ. P. 44.1 (emphasis added). Accordingly, "[d]ifferences of opinion . . . on the content, applicability, or interpretation of foreign law *do not create a genuine issue as to any material fact*," and, as a result, do not preclude summary judgment. *Nat'l Grp. for Commc'ns & Comps., Ltd. v. Lucent Techs. Int'l, Inc.*, 331 F. Supp. 2d 290, 294 (D.N.J. 2004) (quoting *Banco de Credito Indus., S.A. v. Tesoreria Gen.*, 990 F.2d 827, 838 (5th Cir. 1993)) (emphasis added, internal quotation marks omitted).

## VI.    ARGUMENT

Delaware's borrowing statute bars an action "after the expiration of whichever is shorter, the time limited by the law of [Delaware], or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action." 10 Del. C. § 8121. The Court correctly ruled that "the Borrowing Statute applies to this case because Plaintiffs' 'cause of action arises outside of this State,'" in Ecuador. D.I. 324 at 11; *see also Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 896 (Del. 2009). Under Ecuadorian law, Plaintiffs are subject to a four-year statute of repose that runs from the commission of the Defendant's "act."

This time period is shorter than Delaware's two-year statute of limitations because it does not commence upon discovery of the injury, and because it is not tolled for unsuccessful class actions.  Because Dole's last alleged "act" occurred in 1990, under Ecuadorian law, the Ecuadorian Plaintiffs' claims had all expired long before Plaintiffs filed this suit in 2012.  The Ecuadorian Plaintiffs' claims are therefore barred under the borrowing statute.

**A.**  **Ecuadorian Law Imposes a "Shorter" Limitations Period Than Delaware**

**1.**  **The Borrowing Statute Compares Different Jurisdictions' Limitations Periods After Applying All Applicable Tolling and Accrual Rules**

"Delaware has adopted a borrowing statute in an effort to prevent nonresident plaintiffs from forum-shopping for a statute of limitations that is longer than the one imposed by the [jurisdiction] in which the action arose."  *Youell v. Maddox*, 692 F. Supp. 343, 355 (D. Del. 1988) (internal quotation marks omitted).  When another jurisdiction's statute of limitations applies, "the borrowed statute is accepted *with all its accoutrements*," including rules governing accrual and tolling.  *Plumb v. Cottle*, 492 F. Supp. 1330, 1336 (D. Del. 1980) (emphasis added); *see also Frombach v. Gilbert Assocs., Inc.*, 236 A.2d 363, 366 (Del. 1967) (considering Pennsylvania's tolling rules in applying the borrowing statute and stating, "we do not understand how we can determine the 'time limited by the law' of the foreign state without including any exception which exists to the limitation rule of that state").

In deciding which time limitation is "shorter" the Court does not simply compare the raw number of years in each jurisdiction's law, as Plaintiffs have argued.  *See* D.I. 317 at 14.  To the contrary, Delaware Courts consistently hold that the comparison is to be made based on when the plaintiff's claims would have been barred under each jurisdiction's laws, after applying all applicable tolling and accrual rules.

For example, in *May v. Remington Arms Co.*, the Superior Court considered whether Delaware's two-year statute of limitations or North Carolina's six year statute of repose was "shorter" under the borrowing statute in a product defect suit.  2005 WL 2155229, at *1 (Del. Super. Ct. Aug. 31, 2005).  In *May*, the Plaintiff alleged that he was injured in North Carolina by a defectively designed rifle.  *Id*.  In framing the question, the court stated that "if [North Carolina's] six-year-after manufacture limit expires before Delaware's two-year-after-injury time limit expires, then the court must apply North Carolina's statute and Plaintiff cannot bring suit here."  *Id*.  The court held that a "statute of repose is a time limit on suit" and "[f]or borrowing purposes, there is no helpful distinction between statutes of repose and limitation."  *Id*. at *2. The court also held that "it is not against Delaware's public policy to borrow North Carolina's statute of repose here," simply because "Delaware's General Assembly struck a different balance between injured people's and manufacturers' rights compared to North Carolina's legislature's approach."  *Id.*  Even though the Plaintiff's suit was timely under Delaware's statute of limitations, the court applied North Carolina's statute of repose and granted the defendant's motion for summary judgment because "[b]y the time the rifle injured Plaintiff, it was too late to sue" in North Carolina.  *Id*. at 3.

Similarly, the court in *De Adler* held that the comparison under the borrowing statute must be made *after* considering each jurisdiction's accrual and tolling doctrines:  "This comparison is of the limitations periods and their respective 'accoutrements,' such as claim accrual and tolling doctrines, and the shorter limitations period is accepted with its accoutrements."  2013 WL 5874645, at *13 & n.149 (citing *Frombach*, 236 A.2d at 366).  Considering tolling and accrual rules only after deciding which country's law to apply would defeat the entire purpose of

the borrowing statute—namely, a "party should not be able to bring a foreign law claim in Delaware if it would be time-barred from bringing that claim in the foreign jurisdiction." *Id.* (citing *Calcaño Pallano v. AES Corp.*, 2011 WL 2803365, at *3 (Del. Super. July 15, 2011).

Taking into consideration Delaware's and Ecuador's limitations periods along with their "accoutrements," it is clear that Ecuador's four-year statute of repose is shorter than Delaware's two-year statute of limitations.

### 2. Delaware's Statute of Limitations Includes a Discovery Rule and Can Be Extended by Class Action Tolling

It is undisputed that Delaware law imposes a two-year statute of limitations on personal injury actions. 10 Del. C. § 8119. The time to bring a claim begins running "when a legal injury is sustained," rather than from the date of the commission of harm, and thus Delaware law will not "time-bar[] the claims of the blamelessly ignorant plaintiffs." *Brown v. E.I. duPont de Nemours & Co.*, 820 A.2d 362, 368–70 (Del. 2003); D.I. 1 ¶ 149. Delaware's two-year statute of limitations may also be extended through cross-jurisdictional class action tolling. *Marquinez*, 183 A.3d at 711. Plaintiffs have relied on the filing of a 1993 Texas class action to toll their otherwise untimely claims under Delaware law, alleging that tolling ended in 2010 when the Texas court denied the motion for class certification. D.I. 1 ¶¶ 146–49; *Marquinez*, 183 A.3d at 711.

### 3. Ecuadorian Law Imposes a Four-Year Statute of Repose That Does Not Include a Discovery Rule and Does Not Recognize Class Action Tolling

Unlike Delaware, Ecuador's applicable statute of repose does not include a discovery rule and does not recognize class action tolling. Ecuador's four-year statute of repose is therefore "shorter" than Delaware's two-year statute of limitations.

a.     **Ecuador's Four-Year Time Bar Starts Running Upon Commission of the Allegedly Wrongful Act**

Ecuador's time limitation for civil tort claims is found in Ecuador Civil Code section 2235: "the actions allowed by this document for damages or wrongdoing lapse in four years, starting from the commission of the act."  Velazquez Decl. at 7; *see also* D.I. 234-1, Ex. 22 ("Parraguez Decl.") at 7.  Former Ecuadorian Supreme Court Justice Dr. Santiago Velazquez emphasized that the "specific rule for this case clearly states the statute of limitations begins at the time the harmful event took place."  Velazquez Decl. at 7.  That is, the four-year period begins at the time the allegedly tortious conduct occurred, *without* any discovery rule.  *Id.*  While this time bar is referred to simply as "prescription" under Ecuadorian law, the fact that it runs not from the date of injury, but the date of the defendant's "act" means that it functions as a statute of repose under U.S. legal principles.  *See CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) ("A statute of repose . . . is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant.").

Plaintiffs' purported foreign law expert, Professor Garro, is not an Ecuadorian lawyer but a U.S. law professor.  D.I. 318.  He was licensed to practice law in Argentina in 1975, but he appears to have no special knowledge of Ecuadorian law.  Setting aside his lack of qualifications, Professor Garro *agrees* that under "Article 2235 CC, the period to bring an action for tort is of four years, running from the '*perpetration of the act*.'"  *Id.* ¶ 22 (emphasis in original).  He further *agrees* that "Unlike other legal systems, Ecuadorean law does not provide for a 'rule of discovery.'"  *Id.* (emphasis omitted).  Professor Garro also admits that he searched for Ecuadorian authorities that started "the commencement of the prescription period with [the] date of the injury"—but he did not find any.  *Id.*

Yet these concessions do not stop Professor Garro from arguing that section 2235 should nevertheless be construed to include a discovery rule.  Without citing any authority in support, Professor Garro claims that "[a]s a matter of policy, however, this provision should be interpreted taking into account that the plaintiff should not be barred to bring an action before it had a genuine possibility to learn that he has suffered an injury and had therefore a real possibility to pursue its rights."  *Id*.

Professor Garro misstates the law and policy of both Ecuador and Delaware.

As Dr. Velazquez explained, under Ecuadorian law, "'When the intent of the law is clear, its literal content shall not be disregarded under the guise of inquiring as to its spirit.'"  Velazquez Decl. at 8 (quoting Ecuadorian Civil Code § 18).  The plain text of section 2235 stating that the time begins to run "from the commission of the act" could not be clearer.  That language "leaves no room for doubt and is not subject to interpretations that would lead to a different conclusion."  *Id*. at 7; Parraguez Decl. at 7 ("The legal text is very clear, and allows no room for discussion.").  Professor Garro's contrary interpretation, based on nothing but his own "policy" beliefs, directly conflicts with the plain language of section 2235 and Ecuador's prohibition against disregarding that plain language "under the guise of inquiring as to its spirit."  Velazquez Decl. at 7–8 (quoting Ecuadorian Civil Code § 18).

To the extent that Plaintiffs argue that it is contrary to Delaware or U.S. policy for a limitation period to commence upon an action by the Defendant, rather than upon discovery of an injury, they are incorrect.  In *May*, the court held that "it is not against Delaware's public policy to borrow North Carolina's statute of repose here," simply because "Delaware's General Assembly struck a different balance between injured people's and manufacturers' rights compared to North

Carolina's legislature's approach."  2005 WL 2155229, at *1.  And indeed, the lack of a discovery rule is a defining feature of statutes of repose, which nearly all states, including Delaware, have enacted.  *See CTS Corp.*, 573 U.S. at 8; *Cheswold Vol. Fire Co.*, 489 A.2d at 417 (rejecting challenge to Delaware statute of repose and noting that such statutes have a legitimate purpose of barring "unasserted, ancient claims and decreas[ing] those instances in which a defendant must respond to assertions when evidence has been lost, memories have faded, and witnesses have disappeared").[4]

The plain text of Ecuador Civil Code section 2235 is clear that Ecuador's four-year time limit starts running upon commission of the defendant's "act" and not upon discovery of the injury.  Velazquez Decl. at 7; Parraguez Decl. at 7.

> **b.**   **Plaintiffs' Theory of Class Action Tolling Fails Under Ecuadorian Law**

Plaintiffs' theory that the 1993 putative class action in Texas tolled the statute of limitations for their claims is "not valid" under Ecuadorian law for numerous reasons.  Velazquez Decl. at 8.

First, a "class action" is not a valid type of claim in Ecuador—it "does not exist nor has it ever existed in Ecuadorian legislation"—so a putative class action could not toll the time limit for Plaintiffs' claims.  *Id.*  Thus, under Ecuadorian law, no class action could have been filed at all in 1993, much less extend Plaintiffs' four-year period to file suit.

Second, Dr. Velazquez explained that Plaintiffs' theory of class tolling fails under Ecuadorian law because Plaintiffs "do not certify having been parties to it, nor have they demonstrated that the class action would have been allowed in some court."  *Id.*  Plaintiffs were never

---

[4] Plaintiffs have argued that the delay in bringing their cases was somehow Defendants' fault, but that argument is irrelevant in the context of Ecuador's statute of repose for the reasons discussed above.  Plaintiffs are solely responsible for their decades-long delay in filing suit.

named parties in the Texas class action, and in fact, class certification was *denied*.  D.I. 1 ¶ 123

("the Texas Court denied Plaintiffs' motion for class certification"); D.I. 1-2 (June 3, 2010 Order

Denying Class Certification, *Carcamo v. Shell Oil Co.*).  No U.S. court has ever allowed the

class action that Plaintiffs allege salvaged their claims, which defeats Plaintiffs' theory under Ec-

uadorian law.

      Third, the Texas class action was "ineffective" and did not "interrupt[] the statute of limi-

tations" under Ecuadorian law because it was dismissed and never resolved on the merits.  D.I.

1-2; Velazquez Decl. at 8.  Dr. Velazquez explained that when a case is not resolved on the mer-

its, it could potentially be refiled again, but "[t]he summons issued in the first [case], because it

was part of a [case] that was ineffective in its aims, also becomes ineffective and does not have

the effect of interrupting the statute of limitations."  *Id*.

      Lastly, even if the 1993 action were capable of tolling the statute of limitations (it was

not), the statute of repose had already expired before any supposed class action tolling could

begin for 54 of the 55 Ecuadorian Plaintiffs.  Based on Plaintiffs' allegations (*see supra* p. 5,

Chart 1), Ecuador's four-year statute of repose started running in 1987 at the latest, for all but

one of the Plaintiffs.  The Ecuadorian statute of repose does not contain a discovery rule (*supra*

p. 13), so by the time the 1993 Texas class action was filed, Ecuador's four-year statute of repose

had already barred all but one of the Plaintiffs' claims[5]—there was no remaining time limit to

"toll" at that point.  *Cf.* D.I. 1 ¶ 124 (claiming that "[n]one of the Plaintiffs discovered that their

injuries were due to their DBCP exposure prior to the filing of the Texas class action August 31,

1993").

---

   [5]  Plaintiff Alcides Humberto Lupu Reyes alleges his exposure ended in 1990.

Professor Garro claims that "[a]s a matter of policy, it is my opinion that whether the defendant has been duly summoned by the proper plaintiff [for purposes of tolling] are questions to be determined by the law of procedure of the court where the proceedings have been instituted." D.I. 318 ¶ 24.  This is simply an argument that the Court should apply Delaware tolling rules instead of Ecuador's, and ignores precedent requiring that when "another jurisdiction's statute of limitations" applies, "the borrowed statute is accepted *with all its accoutrements*," including rules governing accrual and tolling.  *Plumb*, 492 F. Supp. at 1336 (emphasis added); *see also Frombach*, 236 A.2d at 366.

Moreover, it is black-letter Delaware law that unlike statutes of limitations, "statutes of repose are not subject to tolling doctrines sourced in equity."  *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1229 n.100 (Del. Ch.), cert. denied, 214 A.3d 449 (Del. Ch. 2019) (quoting *IMO Estate of Lambeth*, 2018 WL 3239902, at *3 (Del. Ch. July 2, 2018)).  "Statutes of limitations, but not statutes of repose, are subject to equitable tolling," and statutes of repose "generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control."  *CTS Corp.*, 573 U.S. at 9.  And while the Delaware Supreme Court adopted the U.S. Supreme Court's *American Pipe* class action tolling for statutes *of limitations* (*Marquinez*, 183 A.3d at 712) it has never extended that doctrine to statutes *of repose*.  Indeed, the U.S. Supreme Court has expressly held that *American Pipe* tolling does not apply to statutes of repose because "the object of a statute of repose, to grant complete peace to defendants, supersedes the application of a tolling rule based in equity."  *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2052 (2017).

Plaintiffs' theory of class action tolling is not valid under Ecuadorian law and cannot salvage their time-barred claims.  Velazquez Decl. at 8.

\*          \*          \*

Because the Ecuadorian time limit for filing these claims is "shorter" than Delaware's, under the borrowing statute, the Court must apply Ecuador's statute of limitations, along with all tolling and accrual rules.[6]  *De Adler*, 2013 WL 5874645, at \*13 & n.149.

**B.    Plaintiffs' Claims Fail as a Matter of Law Under Ecuador's Four-Year Statute of Repose**

Ecuador's statute of repose runs from the date of the defendant's "act."  Plaintiffs allege that Dole's wrongful "act" consisted of "purchasing, distributing, and otherwise placing into the stream of commerce DBCP for use on banana plantations owned, operated, or otherwise controlled by the Dole Defendants," as well as failing "to provide adequate warnings to the Plaintiffs about the dangers to human health and well-being from exposure to DBCP and failure to provide adequate safe use guidelines for handling DBCP."  D.I. 1 ¶¶ 88, 92.  While Dole disputes Plaintiffs' allegations, what is undisputed is that if these actions occurred, they must have occurred no later than 1990—the last date when any of the Ecuadorian Plaintiffs allege they were exposed to DBCP.  *See* Maloney Decl., Ex. B; *supra* p. 5, Chart 1 (Exposure Chart).  Plaintiffs did not file this action until 2012, almost 20 years after the last of their claims had expired under Ecuadorian law.  Their claims are therefore clearly barred under governing Ecuadorian law and must be dismissed.

---

[6]  After the Court ruled that Ecuadorian law governs their claims, Plaintiffs filed a belated motion asking the Court to apply Hawaiian law.  D.I. 329.  Even if Plaintiffs' claims arose in Hawaii (they did not), Hawaii law provides a shorter time limit than Delaware, and their claims would be barred under the borrowing statute.  While Delaware held that tolling from the 1993 Texas class action ended in 2010, the Hawaii Supreme Court held that tolling from that case ended in 1995, making Hawaii's time limit up to *fifteen years* shorter than Delaware's.  *Patrickson v. Dole Food Co., Inc.*, 368 P.3d 959, 971 (Haw. 2015), as corrected (Nov. 18, 2015).  Each and every one of the Ecuadorian Plaintiffs had actual knowledge of his alleged injuries by 2005 at the latest—seven years before they filed suit (Ex. E; *supra* p. 6, Chart 2)—and their claims would be barred under Hawaii's two-year statute of limitations. *Patrickson*, 368 P.3d at 971.

Dole need not prove the accrual date of each Plaintiff's injuries to prevail on this motion, because Ecuador's time bar runs from the date of the defendant's "act," not from the date of injury or discovery thereof. *Supra* pp. 12–13. But even if Ecuador did recognize a discovery rule, the undisputed evidence establishes that each and every one of the Ecuadorian Plaintiffs had actual knowledge of his alleged injuries by 2005 at the latest—seven years before they filed suit. *See* Maloney Decl., Ex. E; *supra* p. 6, Chart 2.

Having submitted declarations, interrogatory responses, and sperm test results showing their alleged injuries occurred long before they filed suit, Plaintiffs are estopped from now contradicting those prior assertions and claiming they became aware of their alleged injuries at some later time. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) ("a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").[7]

Because Plaintiffs did not file their Complaint within four years of Defendants' last alleged wrongful "act," the Ecuadorian Plaintiffs' claims are barred by Ecuador's four-year statute of repose. Velazquez Decl. at 7. When they filed suit, the Ecuadorian Plaintiffs' claims were already barred by Ecuadorian law—where their claims arose—and the "action cannot be brought in a court of [Delaware] to enforce such cause of action." 10 Del. C. § 8121. Dole is therefore entitled to summary judgment as to each of the Ecuadorian Plaintiffs' claims. *See May*, 2005 WL 2155229, at *3.

---

[7] Moreover, "[a]ccording to unrefuted medical testimony, the effects of DBCP on sperm quality are proximate to exposure, which means that they are greatest immediately following exposure and decrease over time," which further forecloses any attempt to claim delayed onset of injuries. *Osorio v. Dole Food Co.*, 665 F. Supp. 2d 1307, 1331 (S.D. Fla. 2009), aff'd sub nom. *Osorio v. Dow Chem. Co.*, 635 F.3d 1277 (11th Cir. 2011).

## VII.    CONCLUSION

The Ecuadorian Plaintiffs' claims are untimely under Ecuadorian law, which does not recognize a discovery rule, does not recognize class action tolling, and which applies in this case under Delaware's borrowing statute.  Dole is therefore entitled to summary judgment as to all Ecuadorian Plaintiffs.

POTTER ANDERSON & CORROON LLP

By: */s/ Jennifer C. Wasson*
　　Jennifer C. Wasson (No. 4933)

OF COUNSEL:

Andrea E. Neuman
Mary Beth Maloney
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone: (212) 351-3883

William E. Thomson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000

Dated:  December 23, 2020
6979868/39209

　　Stephanie E. O'Byrne (No. 4446)
　　Hercules Plaza, Sixth Floor
　　1313 North Market Street
　　Wilmington, DE 19801
　　Telephone: (302) 984-6000
　　jwasson@potteranderson.com
　　sobyrne@potteranderson.com

*Attorneys for Defendants Dole Food Company, Inc.,*
*Dole Fresh Fruit Company, Standard Fruit Company*
*and Standard Fruit & Steamship Company*