# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LUIS ANTONIO AGUILAR MARQUINEZ, *et al.*,

        Plaintiffs,

    v.

DOLE FOOD COMPANY, INC., *et al.*,

        Defendants.

Civil Action No. 1:12-cv-00695-RGA

(Consolidated with 00696, 00697, 00698, 00699, 00700, 00701, 00702)

**PLAINTIFFS' OPPOSITION TO DOLE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO ECUADORIAN PLAINTIFFS**
**AND**
**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

## Table of Contents

Table of Contents..................................................................................................................ii

Table of Authorities...........................................................................................................iii

Cases..................................................................................................................................iii

Statutes..............................................................................................................................iii

9...........................................................................................................................................iv

Introduction........................................................................................................................1

Nature and Stage of the Proceeding....................................................................................1

Summary of the Argument...................................................................................................2

Statement of Facts...............................................................................................................3

Argument.............................................................................................................................4

    I.    Ecuador law does not impose any time limitation on Plaintiffs' claims..........................5

    II.   Even under Dole's approach, the Delaware limitations period applies. ..........................8

        A.    The Borrowing Statute is applied by comparing the time periods specified by the Delaware and foreign statutes. .....................................................................................8

        B.    Plaintiffs' interpretation is consistent with Delaware principles of statutory interpretation. ....................................................................................................11

        C.    Dole's authority does not support its position. .................................................13

        D.    Dole's attempt to rely on *May v. Remington Arms* also fails. ...............................16

    III.   Plaintiffs' cross-motion for summary judgment should be granted..............................19

Conclusion.........................................................................................................................20

## Table of Authorities

### Cases

*American Sur. Co. of New York v. Gainfort*, 219 F.2d 111, 112 (2d Cir. 1955) .......................... 16

Articles 2271 and 2272 of the Dominican Civil Code .................................................................. 9

*Blanco v. AMVAC Chemical Corp.*, 2012 WL 3194412 (Del. Super. Aug. 12, 2012) ................ 13

*Brown v. E.I. duPont de Nemours & Co.*, 820 A.2d 362, 366 (Del. 2003) ........................... 18, 19

*Burpulis v. Director of Revenue*, 5498 A.2d 1082, 1087 (1985) ................................................ 11

*Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 234 (3d Cir. 2016) .............................. 3, 12, 13, 19

*CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) ...................................................................... 18

*DaBaldo v. URS Energy & Const.*, 485 A.3d 73, 79 (Del. 2014) ............................................... 19

*De Adler v. Upper New York Inv. Co.* LLC, 2013 WL 5874645, *13 & n.149 (Del. Ch. Oct. 31, 2013) ...................................................................................................................... 14, 15

*Delgado v. Shell Oil Co.*, no. H-94-1337 (SDTX) ...................................................................... 3

*Dow Chem. Corp. v. Blanco*, 67 A.3d 392 (Del. 2013) ..................................................... 1, 3, 19

*Dow Chemical Corp. v. Blanco*, 67 A.3d 392, 394 (Del. 2013) ................................................ 13

*Frombach v. Gilbert Assocs., Inc.*, 236 A.2d 363, 366 (Del. 1967) ............................................ 15

*Furnari v. Wallpang, Inc.*, 2014 WL 1678419 (Del. Super. April 16, 2014) .............................. 12

*ISN Software Corporation v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 733 (Del. 2020) 18

*Jorge Carcamo v. Shell Oil Co.*, no. 93-2290 (Brazoria Cty, Tex. Dist. Ct.) ................................ 3

*Marquinez v. Dow Chemical Co.*, 183 A.3d 704 (Del. 2018) ......................................... 1, 3, 4, 19

*May v. Remington Arms Co.*, 2005 WL 2155229 (Del. Super. Ct. Aug. 31, 2005) .......... 16, 17, 18

*Morton v. Sky Nails*, 884 A.2d 480, 482 (Del. 2005) ................................................................. 18

*Nationwide Mut. Ins. Co. v. Krongold*, 318 A.2d 606, 609 (1974) ...................................... 11, 12

*Pack v. Beech Aircraft Corp.*, 132 A.2d 54 (1957) .......................................................... 8, 9, 11

*Pallano v. AES Corp.*, 2011 WL 2803365 (Del. Super. July 15, 2011) .................................. 9, 10

*Plumb v. Cottle*, 492 F. Supp. 1330, 1336 (D. Del. 1980) ......................................................... 10

*TL of Florida, Inc. v. Terex Corp.*, 54 F. Supp.3d 320 (D. Del. 2014) ........................................ 10

*Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *15 (Del. Ch. Dec. 1, 2009) ..... 15

### Statutes

10 Del. C. § 81 ..................................................................................................................... 2, 4

Del. Code § 8119 ............................................................................................................... 17, 20

section 8134(a) ........................................................................................................................ 9

9

Article 2235 of the Ecuadorian Civil Code.................................................................. passim

article 88............................................................................................................................ 7

Article 88 of the Ecuador Constitution ........................................................................... 6

## Introduction

The Ecuadorian Plaintiffs ("Plaintiffs") in these consolidated cases respectfully file this Opposition To Dole Defendants' Motion For Summary Judgment As To Ecuadorian Plaintiffs (D.I. 334) and Memorandum in Support of Plaintiffs' Cross-Motion For Partial Summary Judgment on this issue of limitations. The Dole Defendants' motion should be denied and partial summary judgment entered in Plaintiffs' favor on the issue of limitations, because the undisputed facts demonstrate that the Ecuadorian Plaintiffs' claims are timely under Delaware law, pursuant to the Delaware Supreme Court decisions in *Dow Chem. Corp. v. Blanco*, 67 A.3d 392 (Del. 2013) and *Marquinez v. Dow Chemical Co.*, 183 A.3d 704 (Del. 2018).

## Nature and Stage of the Proceeding

Plaintiffs worked on banana plantations in Ecuador, where they were exposed to a toxic pesticide called dibromochloropropane (DBCP), which causes sterility, cancer, and sexual reproductive abnormalities. DBCP was suspended for use in the United States in 1977 and banned for all purposes in 1985 because of the harms it causes. However, the Dole Defendants (and other Defendants) continued to expose Plaintiffs to DBCP without adequate protective equipment or precautions, which caused grievous injuries to their health. Plaintiffs sued in this Court on June 1, 2012.

On September 18, 2020, this Court granted Defendants' Motion for Application of Ecuador Law (D.I. 233) and ruled that Ecuador law governs Plaintiffs' claims, other than their negligence claim, which is governed by Delaware law.  (D.I. 324). In connection with that ruling, this Court held that Delaware's Borrowing Statute applies to this case because Plaintiffs' cause of action arises outside of this State.  The Borrowing Statute provides:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.  Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply.

10 Del. C. § 8121.

This Court expressly did not decide whether application of the Borrowing Statute "means that Plaintiffs' times are time-barred." (D.I. 324, at 11). Instead, this Court concluded that "further analysis of Delaware's Borrowing Statute would be more appropriate in the context of summary judgment." (*Id.*) This Court added that "calculating the relevant limitations period under the Borrowing Statute would benefit, at a minimum, from more detailed briefing on the content of Ecuadorian law and the factual situations of the individual Plaintiffs." (*Id.* at 11-12.)

### Summary of the Argument

Under the Borrowing Statute, Plaintiffs' claims are governed by the Delaware statute of limitations. The Borrowing Statute directs the Court to apply the shorter of the two relevant laws governing limitations, "the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose." 10 Del. C. § 8121.

I. The Delaware limitations period is the shorter period in this case, because under Ecuadorian law, Plaintiffs could bring a constitutional claim (or "acción de protección"), which would not be governed by any time limitation at all. Accordingly, the Ecuador limitations period is potentially infinite, while the relevant Delaware statute prescribes a two-year limitations period. Dole's argument regarding Ecuador law is fatally flawed because it is limited to Article 2235 of the Ecuadorian Civil Code. Dole's Motion fails to consider the possibility of a constitutional claim, even though this Court's Order of September 18, 2020 specifically requested "more detailed briefing on the content of Ecuadorian law."

II. Even under Dole's unfounded assumption that Plaintiffs' claims in Ecuador would be limited to claims governed by Article 2235 of the Ecuadorian Civil Code, the Delaware Borrowing Statute would still point to the Delaware limitations provision in this case. The two-year Delaware statute of limitations applies here because on its face it prescribes a shorter period of time than the four years prescribed by Article 2235. To be sure, the Delaware statute of limitations is subject to tolling principles. But Delaware courts consider any tolling doctrines

2

*only after* deciding which statute applies under the Borrowing Statute. Delaware rules of statutory interpretation confirm that the Borrowing Statute should be interpreted in that fashion. Accordingly, the Delaware borrowing statute points to the two-year Delaware limitations period, even under Dole's approach to Article 2235.

III. Plaintiffs are entitled to summary judgment on limitations, and their cross-motion should be granted. The Delaware Supreme Court has held that Delaware law recognizes cross-jurisdictional tolling, *Dow Chem. Corp. v. Blanco*, 67 A.3d 392 (Del. 2013), and further that the putative federal class action filed in 1993 in Texas tolled Plaintiffs' claims until 2010. *Marquinez v. Dow Chemical Co.*, 183 A.3d 704 (Del. 2018). The evidence presented by Dole in its motion shows that Plaintiffs did not discover their injuries until long after the federal class actions had already been filed in Texas in 1993. Thus, Plaintiffs' claims are timely under Delaware law, and there are no disputed material facts. The *en banc* Third Circuit has instructed (in an appeal of a related case) that DBCP litigation should proceed expeditiously. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 234 (3d Cir. 2016) (*en banc*) ("We revive this litigation now, more than two decades after it began, while expressing our sincerest hope that it proceeds with more alacrity than it has to the present date."). Plaintiffs are entitled to partial summary judgment on the issue of limitations.

### Statement of Facts

As the Third Circuit observed, DBCP plaintiffs have encountered "[a] series of byzantine procedural developments." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 209 (3d Cir. 2016) (*en banc*). For present purposes, however, the relevant facts and procedural history can be briefly summarized.

1. Plaintiffs were members of a putative class action filed in Texas state court in 1993. *Jorge Carcamo v. Shell Oil Co.*, No. 93-2290 (Brazoria Cty, Tex. Dist. Ct.). Upon removal, the federal Texas District Court consolidated *Carcamo* with other DBCP-related class actions under the case *Delgado v. Shell Oil Co.*, no. H-94-1337 (SDTX).

2. The Delaware Supreme Court decisions in *Dow Chem. Corp. v. Blanco*, 67 A.3d 392 (Del. 2013), and *Marquinez v. Dow Chemical Co.*, 183 A.3d 704 (Del. 2018), establish that the *Carcamo/Delgado* case had class action tolling effect for purposes of the Delaware limitations statute until June 3, 2010. *See Marquinez*, 183 A.3d at 714 ("The Texas District Court's *Delgado I* opinion and order and the *Delgado I* Final Judgment did not stop class action tolling. Class action tolling ended when the Texas state court denied class certification on June 3, 2010.").

3. All of the Ecuadorian Plaintiffs are fully protected by the class-action tolling principles recognized by the Delaware Supreme Court in *Blanco* and *Marquinez*. Chart 2 in Dole's Motion presents evidence that none of the Plaintiffs discovered their injuries until March 1, 1994 at the earliest. (D.I. 334 at 6-8). The bulk of the Plaintiffs did not discover their injuries until 1998, and some Plaintiffs did not discover their injuries until after 2000. *Id.* For present purposes, the key point is that, according to the evidence cited by Dole, *no Plaintiff discovered the relevant injury until after the putative class action had been filed in Texas.*

**Argument**

The Delaware Borrowing Statute directs the Court to apply the shorter of the two relevant "laws" governing limitations, "the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose":

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.

10 Del. C. § 8121.

Here, the Court's task is to determine whether the relevant Delaware statute of limitations is longer or shorter than its counterpart in Ecuador. Under this analysis, the Delaware statute of limitations applies for two reasons:

1. Ecuador law would not impose any time limitation on Plaintiffs' claims. Accordingly, the Ecuador limitations period is potentially infinite, while the relevant Delaware statute prescribes a two-year limitations period.

2. Even under Dole's argument that the relevant Ecuador statute prescribes a four-year period for personal injury claims, the two-year Delaware statute of limitations prescribes a shorter period. Two years is shorter than four years. The Delaware courts consider any tolling doctrines *only after* deciding which statute applies under the Borrowing Statute, as even the cases cited by Dole and the other Defendants demonstrate. Accordingly, the Delaware borrowing statute points to the Delaware limitations period, even under Dole's approach.

## I.   Ecuador law does not impose any time limitation on Plaintiffs' claims.

In its September 18, 2020 Order granting Defendants' Motion for Application of Ecuador Law (D.I. 233), this Court indicated that further briefing as to the nature of Plaintiffs' claims under Ecuador law would be appropriate. (*Id.* at 11-12: "Calculating the relevant limitations period under the Borrowing Statute would benefit, at a minimum, from more detailed briefing on the content of Ecuadorian law and the factual situations of the individual Plaintiffs.").

However, Dole fails to submit any new analysis or additional legal research on the content of Ecuadorian law. Instead, Dole relies solely on declarations submitted by Defendants in their previously filed Motion to Apply Ecuador Law (D.I. 234), which assume that any claim brought by Plaintiffs in Ecuador would be limited to a claim for compensation for personal injuries subject to Article 2235 of the Ecuadorian Civil Code. That assumption is incorrect.

As explained in the accompanying Declaration of Maria Dolores Mino ("Mino Decl.," attached as Exhibit 1), "the adequate remedy that the plaintiffs in this case could and most likely [would] pursue [in Ecuador] to obtain redress for their claim is the constitutional jurisdiction through 'acción de protección,'" which is a constitutional claim under Ecuador law that would be subject to *no statute of limitations at all*. Ex. 1, ¶ 16. Professor Mino is an expert on Ecuadorian

constitutional law, an alternate judge on the Constitutional Court in Ecuador, Professor of Law and Director of the Center for Transparency and Human Rights of Universidad Internacional del Ecuador, and the Executive Director of Observatorio de Derechos y Justicia, an Ecuadorian NGO that works on the promotion and protection of human rights. Ex. 1, ¶¶ 1-3.

The acción de protección is a constitutional remedy designed to protect all constitutional rights enshrined in the Ecuadorian Constitution and international human rights treaties to which the country is a party. Ex. 1, ¶ 7(a). Labor rights are included within the rights protected under Ecuador´s Constitution, and "therefore, plaintiffs could seek redress under an acción de protección." Ex. 1, ¶ 7(a).

Article 88 of the Ecuador Constitution provides that an acción de protección may be presented before any judge regarding acts or omissions from public or private actors. "Therefore, the company could be sued before a constitutional judge for the violations against labor rights (which include the right to healthy work environments and indemnification for occupational diseases), and get an adequate compensation for the damages suffered." Ex. 1, ¶ 7(b). Professor Mino explains that Article 88 of the Ecuador Constitution would allow an acción de protección "to be filed against private actors (companies) when the plaintiff, such as the ones in this case, have had a subordinate relationship with the defendant. In this case, the subordinate relationship comes from the fact that the plaintiffs were employed by the defendant. Also, under section (c) of article 88 of the [Ecuador Constitution], the fact that a private actor caused a serious harm may also entitle a plaintiff to present an [acción de protección]. Therefore, the fact that the negligent conduct of the defendant caused harm to the plaintiffs´ health, gives them grounds to present successfully an [acción de protección]." Ex. 1, ¶ 10.

Judicial precedent in Ecuador confirms Professor Mino's conclusions. "The Ecuadorean Constitutional Court (ECC) has recognized in several decisions that the constitutional jurisdiction is adequate to defend the rights of workers, while they are presented under human rights claims." Ex. 1, ¶ 7(d). In its jurisprudence, the ECC has recognized that employers that violate the rights of workers must pay for damages under the broader concept of 'full

6

reparations'. Also, the ECC has stated in one particular case, that workers that have suffered labor-related illnesses are to be recognized as victims, and therefore receive a just compensation for the violations of their constitutional rights." Ex. 1, ¶ 7(e). "The Constitutional Court of Ecuador has produced several decisions in which it effectively protected the rights of workers, as enshrined in the text of the Ecuadorean Constitution and the constitutionality block. . . . Therefore, the possibility that the claims of the plaintiffs in this case can be successfully granted before Ecuador´s constitutional jurisdiction is high." Ex. 1, ¶ 27. In short, "the claims presented by the plaintiffs in this case fall under constitutional and human rights law." Ex. 1, ¶ 17. "According to the facts alleged in the Complaint, the plaintiffs in this case can pursue redress under the [acción de protección] against the defendants under article 88 of the [Ecuador Constitution], at any time. The plaintiffs may argue that the defendant violated their constitutional right to health when (a) it did no take any measures to prevent labor-related illnesses among workers and, (b) Once those illnesses were reported, no measure was adopted to provide redress to the plaintiffs." Ex. 1, ¶ 7(g). An acción de protección "can provide the plaintiffs with the redress they are seeking before the U.S. Courts in monetary terms," as well as other remedies. Ex. 1, ¶ 16.

For present purposes, the availability of an acción de protección in Ecuador means that, under the Delaware Borrowing Statute, the Delaware limitations period is the shorter period. "There are no statute of limitations regarding the 'acción de protección.'" Ex. 1, ¶ 13. The acción de protección "can be presented at any moment, since such action is not subject to any statute of limitations." Ex. 1, ¶ 7(c). Professor Mino points out that several acciós de protección regarding facts that occurred before the entry into force of the Ecuador Constitution in 2008 have been successfully litigated in the constitutional jurisdiction after the entry into force of the Ecuador Constitution in 2008. Ex. 1, ¶ 7(c). "The facts of the case in point could therefore be subject matter for an [acción de protección], regardless the moment of their occurrence." Ex. 1, ¶ 7(c).

Dole's argument regarding Ecuador law is fatally defective because it simply fails to consider the possibility of a constitutional claim. Dole inexplicably rests solely on the

declarations submitted by Defendants in their previously filed Motion to Apply Ecuador Law (D.I. 234), even though this Court's Order of September 18, 2020 specifically requested "more detailed briefing on the content of Ecuadorian law." Dole should not be permitted to "sand-bag" Plaintiffs by reserving its entire argument on Ecuador law to its reply brief. Dole deliberately limited its analysis of Ecuador to its statutes.

**II. Even under Dole's approach, the Delaware limitations period applies.**

**A. The Borrowing Statute is applied by comparing the time periods specified by the Delaware and foreign statutes.**

Even under Dole's unfounded assumption that Plaintiffs' claims in Ecuador would be limited to claims governed by Article 2235 of the Ecuadorian Civil Code, the Delaware Borrowing Statute would still point to the Delaware limitations provision in this case. Delaware courts apply the Borrowing Statute by comparing the statutorily-prescribed limitations period of Delaware law with the statutorily-prescribed period of the foreign forum. The courts consider any tolling doctrines *only after* deciding which statute applies under the Borrowing Statute. In this case, the two-year Delaware statute is applicable because it is shorter on its face than Article 2235 (four years).

In *Pack v. Beech Aircraft Corp.*, 132 A.2d 54, 57 (1957), for example, the Delaware Supreme Court held that the two-year limitation provision of the New Jersey wrongful death statute was applicable rather than the Delaware general three-year limitation statute without considering any tolling provisions. The Court explained that the Borrowing Statute should be applied by focusing on the limitations periods specified by the statutes being compared. *Pack* was decided only ten years after the Borrowing Statute's 1947 enactment, and the Delaware Supreme Court plainly interpreted the word "law" in the Borrowing Statute to refer to the relevant *statute* of limitations:

> If a non-resident chooses to bring a foreign cause of action into Delaware for enforcement, he must bring the foreign statute of limitations along with him *if the foreign statute prescribes a shorter time than the domestic statute*. . . . On its face, therefore, the general purpose of the statute is to shorten the period of limitation applicable to actions arising in foreign jurisdictions *if the foreign statute specifies*

*a shorter period*; with a proviso, however, that the rights of a certain class of residents shall be unaffected by the change. Such, we think, is the clear and obvious meaning of the statute.

*Id.*

     *Pack* is consistent with other provisions of the Delaware Code. The word "law" is used elsewhere in Title 10, Part V (Limitations of Actions), Chapter 81 to refer to *statutes*. *E.g.*, section 8134(a) ("The provisions of any law, rule or regulation to the contrary notwithstanding . . . ."). Indeed, the "Laws of Delaware" are the collection of legislative enactments prior to their codification in the Delaware Code. When the legislature used the term "law" in the Borrowing Statute, it meant to direct a comparison between the limitations period spelled out in the texts of the relevant *statutes* of limitations.

     The very cases cited by Defendants in their previously filed Motion to Apply Ecuador Law (D.I. 234) show that the Borrowing Statute is applied by comparing the limitations periods contained in the statutes under review. In *Pallano v. AES Corp.*, 2011 WL 2803365 (Del. Super. July 15, 2011), which involved unlawful dumping of toxic waste in the Dominican Republic, the Superior Court announced that it would "apply 'whichever is shorter, the time limited by the law of this State, or the time limited by the law of' the Dominican Republic." *Id.* at *3. The Court observed that in Delaware, the statute of limitations for personal injury and wrongful death actions is two years, and it looked to the provisions of the Civil Code of the Dominican Republic to determine that the applicable Dominican statute of limitations period was six months for negligence and one year for intentional wrongdoing. *Id.* at *5. On the basis of the comparison between the statutorily-prescribed limitations period of Delaware law and the statutorily-prescribed limitations period of foreign law, the Court concluded that the Dominican limitations statute applied. *Id.* ("Because the applicable limitations periods are shorter under the Dominican Civil Code than the Delaware Code, the Delaware 'borrowing' statute requires this Court to apply the statute of limitations found in Articles 2271 and 2272 of the Dominican Civil Code."). Only after making this determination did the Superior Court explain (in the next section of its

opinion) that "when Delaware's borrowing statute mandates the application of another jurisdiction's limitations period, 'the borrowed statute is accepted with all its accoutrements,' including the rules governing when a claim accrues and triggers the limitations period." *Id.*

In other words, courts first choose which limitations statute applies based on the plain language of the statutes as written and only *afterwards* consider any tolling or accrual principles that may apply to the applicable statute. That is precisely how Dole describes the proper approach in its Motion: "*When another jurisdiction's statute of limitations applies*, 'the borrowed statute is accepted with all its accoutrements,' including rules governing accrual and tolling." (D.I. 334 at 10 (quoting *Plumb v. Cottle*, 492 F. Supp. 1330, 1336 (D. Del. 1980) (emphasis altered))).

Another case cited by Defendants in their prior Motion, *TL of Florida, Inc. v. Terex Corp.*, 54 F. Supp.3d 320 (D. Del. 2014), is to the same effect. The court explained that "under the Delaware borrowing statute, the Court must apply the shorter of the Delaware statute of limitations and the statute of limitations of the place where Plaintiffs causes of action accrued." *Id.* at 327. "Delaware's statute of limitations is three years, while Florida's is four years, so the Court will apply Delaware's three-year statute of limitations." *Id.* at 328. Only after concluding the Delaware three-year statute applied did the court consider plaintiff's arguments under Delaware law as to the discovery rule and tolling under fraudulent concealment. *Id.* (Plaintiff "argues that while some of the conduct on which its claims are based occurred more than three years before the filing of its lawsuit, the statute of limitations was tolled for at least some of that time, due to Delaware's 'discovery rule' and doctrine of fraudulent concealment.").

Hence, this Court must first choose which limitations statute applies based on the plain language of the statutes as written (two years in Delaware versus four years under Article 2235 of the Ecuadorian Civil Code), and only *afterwards* consider any tolling or accrual principles that may apply to the applicable statute.

**B.  Plaintiffs' interpretation is consistent with Delaware principles of statutory interpretation.**

In Delaware, "the object of statutory construction is to give a sensible and practical meaning to the statute as a whole in order that it may be applied in future cases without difficulty." *Nationwide Mut. Ins. Co. v. Krongold*, 318 A.2d 606, 609 (1974). This principle is "axiomatic" in Delaware." *Burpulis v. Director of Revenue*, 5498 A.2d 1082, 1087 (1985).

Adopting the interpretation of *Pack* and subsequent cases, and comparing the limitations periods as specified in the statutes of Delaware and foreign jurisdictions, promotes this important Delaware principle. That approach has the salutary effect of allowing courts to apply the Borrowing Statute without making intensive inquiries into foreign judicial decisions and into how foreign courts might apply their statutes in practice. As this Court noted in its choice of law decision, foreign law is not always easily ascertainable. (D.I. 324, at 10 ("it would certainly be easier to determine and apply Delaware law than Ecuadorian law")).

The difficulty in ascertaining foreign law can be reduced by focusing on the text of foreign limitations statutes and on the limitations periods they prescribe on their face, rather than on judicial practice and judicial tolling doctrines. As Defendants' experts concede, the text of the four-year Ecuador limitations statute is "very clear." Report of Dr. Luis S. Parraguez Ruiz, ¶ 30 (D.I. 234-1, Ex. 22, at 488); *see also* Declaration of Dr. Santiago Velazquez Coello at 7 (D.I. 234-1, Ex. 23, at 514) (citing "clarity" of statute).  The text of the foreign limitations statute will readily enable the court to decide whether it is longer or shorter than its Delaware counterpart.

Focusing on the limitations periods prescribed on the face of the foreign statutes is a sensible rule that allows courts to make logical, objective decisions that will lead to predictable outcomes upon which litigants can rely. Under Dole's approach to the Borrowing Statute, courts would not be able to determine the applicable limitations statute until they considered judicially created tolling doctrines and related judicial practices that might extend the period prescribed on the face of the statute. This task would entail time-consuming, case-by-case basis inquiries that could well turn into satellite litigation on factual issues (since the application of a tolling doctrine

11

might depend on particular facts) and expert declarations debating nuanced distinctions of foreign law. A court could face significant burden in deciding what is merely a preliminary issue (the applicable limitations statute) rather than the merits of the case. The Borrowing Statute should not be read as imposing such a burden on the judiciary.

Moreover, under Defendants' approach, two different cases arising in the same foreign jurisdiction could be governed by different statutes of limitations, making the Delaware legal system less predictable and making it appear unfair. Tolling can be a fact-dependent issue, and if tolling applied in one case but not another, then under Defendants' view, the two cases might well be governed by different statutes of limitation. Such an approach could lead to inconsistent rulings making it impossible to predict the outcome in any given case.

In short, the Delaware principle of statutory interpretation counseling of favor "sensible and practical" statutory constructions, *Nationwide Mut. Ins. Co. v. Krongold*, 318 A.2d at 609, militates strongly in favor of Plaintiffs' position.

Applying the two-year Delaware limitations provision is also consistent with the statutory purpose of the Borrowing Statute. In *Furnari v. Wallpang, Inc.*, 2014 WL 1678419, *4 (Del. Super. April 16, 2014), the Superior Court held the Borrowing Statute inapplicable, "even considering Plaintiff's two previous filings in Florida, both of which were dismissed for lack of jurisdiction," because "Plaintiff is not attempting to circumvent the expiration of his claims by filing in Delaware, he only seeks jurisdiction over the parties." *Id.* at *4.

In this case, Plaintiffs similarly filed in Delaware merely to seek jurisdiction over the parties, as the *en banc* Third Circuit has recognized. The Court of Appeals explained that it was "skeptical of the defendants' . . . assertion that the plaintiffs engaged in impermissible forum-shopping." *Chavez*, 836 F.3d at 216. "While reasonable minds may differ about what constitutes forum shopping in any particular case, the term generally denotes some attempt to gain an unfair or unmerited advantage in the litigation process. But here, the plaintiffs were indifferent as to which court would hear their claims; they simply wanted a court to hear their claims. . . . The plaintiffs were not trying to game the system by filing duplicative lawsuits. They were trying to

12

find one court, and only one court, willing to hear the merits of their case." *Id*. "For over two decades, the plaintiffs have been knocking on courthouse doors all over the country and, indeed, the world, only for those doors to remain closed." *Id.* at 234. The Plaintiffs coming to a defendant's "home turf" in Delaware to secure personal jurisdiction is hardly a quintessential example of seeking "an unfair or unmerited advantage in the litigation process." *Id.* at 216.

The Superior Court in *Blanco v. AMVAC Chemical Corp.*, 2012 WL 3194412 (Del. Super. Aug. 12, 2012), also rejected the Defendants' claims of forum-shopping and opined that "a fairer reading of the procedural history here is that defendants have attempted to tranquilize these claims through repeated forum shopping removals and technical dismissals, playing for time and delay and striving to prevent, or arguably frustrate, the claims from ever being heard on the merits in any court." *Id*. at *12. The Delaware Supreme Court agreed: "Defendants have caused a lot of the delay—upon which they now seek to rely—through their own procedural maneuvering and they may not take refuge behind it. Plaintiff here has tried to act continuously since the filing of the original [ ] action, and has been procedurally thwarted at every turn by defendants . . . ." *Dow Chemical Corp. v. Blanco*, 67 A.3d 392, 394 (Del. 2013) (quoting the Delaware Superior Court).

Accordingly, the Delaware limitations provisions applies in this case.

**C. Dole's authority does not support its position.**

Dole is unable to cite a single Delaware case actually holding a foreign statute applicable under the Borrowing Statute because of tolling principles, where the foreign statute on its face prescribes a longer limitations period than its Delaware counterpart.

In fact, cases cited by Defendants in their initial Motion to Apply Ecuador Law (D.I. 324) and even by Dole itself in its current Motion (D.I. 334) agree with Plaintiffs' approach to applying the Borrowing Statute. The cases show that Delaware courts applying the Borrowing Statute look to the plain language of the limitations statute as written in deciding which

limitations period is longer, and *only after making that determination* do the courts considering tolling or accrual principles under the relevant limitations provision. *See* Part II-A, *supra.*

Dole cites *De Adler v. Upper New York Inv. Co*. LLC, 2013 WL 5874645, *13 & n.149 (Del. Ch. Oct. 31, 2013), which Dole contends supports a different approach from the authority on which the Defendants have previously relied. But the *De Adler* decision does not bear the weight Dole seeks to place on it.

First, if the *De Adler* case meant what Dole now claims, it would be inconsistent with how the Delaware Supreme Court has read the Borrowing Statute (Part II-A, *supra*), and with the important considerations of statutory interpretation discussed in Part II-B, *supra.*

Second, the Dole's reading of *De Adler* is not correct. The Court of Chancery in that case determined that the Delaware limitations statute of three years was shorter than the Ecuadorian statute of ten years by consulting the texts of the statutes on their face, *without considering tolling or accrual principles*. In the very footnote cited by Defendants, the Court of Chancery explained:

> Article 17 [of the Corporate Act of Ecuador law] does not include an express limitations period. At the Rule 44.1 hearing, Vivian's expert stated that for civil claims like the Article 17 Claim, the period is determined by reference to the default statute, which provides for a ten-year period. By contrast, the Moving Defendants' expert argued that since Vivian's expert had analogized Article 17 as an application of liability principles and claim accrual rules from Title XXIII of Ecuador's Civil Code, the Court should adopt Title XXIII's limitations period of four years. Because, by its very terms, the limitations provision of Article XXIII governs only "[t]he causes of action that this Title grants for damages or fraud," the Court is not persuaded that this statute should be read to apply to the Article 17 Claim. The Court instead accepts Vivian's expert's testimony that the limitations period is ten years; thus, the Complaint, *regardless of claim accrual or tolling* under Ecuadorian or Delaware law, would be timely if it were filed in Ecuador.

2013 WL 5874645 at *13 n.149 (emphasis added). The Court of Chancery therefore adopted the Delaware three-year statute, and *only then* did it ask whether the claim might be subject to tolling principles under Delaware law: "Under Delaware's borrowing statute, the applicable limitations period for these claims is three years, the shorter of Delaware's analogous statute of limitations

for fiduciary duty and unjust enrichment and the limitations period under Ecuadorian law. The presumptive three year period began when Vivian's claims accrued, *unless it should be tolled.*" *Id.* at *13 (emphasis added).

The Court of Chancery's decision in *De Adler* supports Plaintiffs' position for another reason. The *De Adler* Court cited *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *15 (Del. Ch. Dec. 1, 2009), which *De Adler* described as "applying Delaware's law of claim accrual and tolling to claims arising under Italian and Dutch law where the Court applied the borrowing statute and determined that the shorter of the limitations periods was Delaware's." 2013 WL 5874645 at *13, n.150. Indeed, *Vichi* followed precisely the approach Plaintiffs urge in this case. *Vichi* first selected the three-year Delaware statute of limitation, "because none of the parties suggested that Italian or Dutch law would have subjected either of those claims to a shorter time limit." 2009 WL 4345724, at *15. Only *afterwards* did *Vichi* analysis possible tolling principles under Delaware law, including "three doctrines that may toll the statute of limitations: (1) inherently unknowable injuries, (2) fraudulent concealment, and (3) equitable tolling following a breach of fiduciary duties." *Id.* at *17. The *De Adler* Court's reliance on *Vichi* thus supplies additional support for Plaintiffs' position.

In the *De Adler* case, the Court of Chancery also stated that "[t]his comparison is of the limitations periods and their respective 'accoutrements,' such as claim accrual and tolling doctrines, and the shorter limitations period is accepted with its accoutrements. *See Frombach v. Gilbert Assocs., Inc.*, 236 A.2d 363, 366 (Del. 1967)." 2013 WL 5874645 at *13 n,.149. But neither *De Adler* nor the *Frombach* case actually applied claim accrual or tolling doctrines in deciding which statute of limitations was shorter. *See Frombach*, 236 A.2d at 366 ("In the present case, concededly the Pennsylvania act would not toll its limitation under the circumstances here. We are, therefore, of the opinion that the suit is barred under our Borrowing statute since the time limit in that state is shorter than the Delaware limit.").

*Frombach* opined that "the theory is that the borrowed statute is accepted with all its accoutrements," *id.*, thus indicating that a court considers tolling principles accompanying the

15

borrowed statute *only after* it has already decided to apply the borrowed statute. The cases cited in *Frombach* confirm that interpretation. *E.g.*, *American Sur. Co. of New York v. Gainfort*, 219 F.2d 111, 112 (2d Cir. 1955) (where New York limitations statute was 20 years and California five years, New York court would borrow the California statute and then apply California tolling principles, because "no New York case suggests such an exception to the general principle that the borrowed statute of limitations is accepted with all its accouterments").

### D.  Dole's attempt to rely on *May v. Remington Arms* also fails.

Dole also relies on *May v. Remington Arms Co.*, 2005 WL 2155229 (Del. Super. Ct. Aug. 31, 2005), which ruled that North Carolina's six-year statute of repose triggered on the date of a rifle's manufacture in 1994 was "shorter" (for purposes of the Borrowing Statute) than Delaware's two-year limitations period triggered by the plaintiff's injury in 2002. *Remington Arm* did not involve the class-action tolling principles presented in this case. Rather, it involved a North Carolina repose statute that was triggered by date of manufacture rather than by anything about the plaintiff's injury or about the date of the injury-producing act.

*Remington Arms* is inapposite because Article 2235 of the Ecuadorian Civil Code does not operate like the North Carolina repose statute. Article 2235 provides: "The *statute of limitations* for actions under this Title for damages or malicious intent is four years, starting from perpetration of the act." D.I. 234, Exhibit at 22, at ¶ 29 n.9 (emphasis added) *Remington Arms* does not change the fact that the proper way to apply the Delaware Borrowing Statute (under Dole's approach) is to compare the four-year period for personal injury claims prescribed by Article 2235 with the two-year Delaware statute of limitations.

Dole seeks to repackage Article 2235 as a statute of "repose" in a vain effort to make this case appear similar to *Remington Arms.* But Dole's argument fails. Article 2235 is not like the North Carolina statute of repose. Its four-year period does not commence with the manufacture of DBCP (or other injurious product), as in *Remington Arms*. Rather, Defendants themselves

16

state that the four-year period under Article 2235 runs "from the date of the act that causes the injury." D.I. 234 at 19. Dole's current Motion similarly concedes that "the statute of limitations [in Ecuador] begins at the time the harmful event took place." D.I. 334 at 13 (internal quotation marks omitted). Thus, Article 2235 is comparable to the Delaware limitations provision, which runs "from the date upon which it is claimed that such alleged injuries were sustained," Del. Code § 8119, with the primary difference being the absence of any discovery rule in Ecuador.

Dole's effort to repackage Article 2235 as a statute of "repose" falls flat. Article 2235 does not extinguish the cause of action within a certain period of time after the product's manufacture. Indeed, it does not extinguish the claim at all; it simply establishes a time limit for the plaintiff to bring suit, just like the Delaware limitations statute. *See May v. Remington Arms*, 2005 WL 2155229, at *2 ("A statute of repose is a time limit on suit, and then some. It actually extinguishes the cause of action. Thus, Plaintiff not only is barred from filing suit, he has no claim in North Carolina, which is the place where he lives, where he bought the defective rifle and where he was hurt.").

The very declarations previously submitted by Defendants (on which Dole continues to rely) describe Article 2235 as a statute of *limitations* without a discovery rule, rather than a statute of repose. The Declaration of Dr. Luis Sergio Parraguez Ruiz describes the Ecuador provision as a statute of *limitations*: "In this case of an action for payment of damages, the statute of limitations is four years, 'starting from perpetration of the act' (Article 2235). . . . The legal text is very clear, and allows no room for discussion. Under Ecuadorian law, the period is counted from the time of the act that caused the damage, such that once the legal period has passed, no action for damages may be brought." D.I. 234, Exhibit at 22, at ¶¶ 29-30; *see also id.* at 8 ("The *statute of limitations* for an action to recover damages (4 years) starts from the occurrence of the act that caused the damage, and not from when the damage is discovered.") (emphasis added). The Declaration of Dr. Santiago Velázquez Coello explains that "in civil law the period for filing compensatory actions begins with the commission of the action generating

17

the damage. . . . This specific rule for this case clearly states the *statute of limitations* begins at the time the harmful event took place." D.I. 234, Exhibit at 23, at 7 (emphasis added).[1]

Conceptually, it is clear that Defendants' experts are correct and that Dole is wrong in trying to recharacterize Article 2235 as a statute of repose. The North Carolina statute of repose in *Remington Arms* extinguished any possible claims within four years of manufacture, regardless of whether the rifles had produced any injuries (and regardless of whether they had even been sold). "A statute of repose 'bar[s] any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury.' The statute of repose limit is 'not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered.'" *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014).

But by Dole's own admission, the four-year period under Article 2235 does not even begin until the time "the harmful event took place," D.I. 334 at 13 (internal quotation marks omitted), and "the date of the act that causes the injury." D.I. 234 at 19. Article 2235, because it is linked to Plaintiffs' injury, is fundamentally different from the statute of repose in *Remington Arms*.[2]

---

[1] Dole's instant Motion conflicts with the prior argument of all Defendants to this Court that the relevant Ecuadorian statute was a statute of *limitations*. D.I. 234 at 2 (referring to Ecuador "statute of limitations"); *id.* 3 ("Because the *Ecuador statute of limitations* is shorter than the Delaware statute of limitations, the Delaware Borrowing Statute requires that the *Ecuador statute of limitations* apply in this case.") (emphases added); *id.* at 19 ("Because this action arose in Ecuador, the Borrowing Statute operates to apply the shorter *Ecuador statute of limitations*. . . . Under Ecuador law, *the statute of limitations* is four years from the date of the act that causes the injury, but there is no discovery rule, which makes the *Ecuador statute of limitations* shorter in this case.") (emphases added).

[2] The Delaware discovery rule does not help Dole. The discovery rule does not change the principle that "normally, an 'injury' is 'sustained' [for purposes of Del. Code § 8119] when a wrongful act or omission occurs." *Brown v. E.I. duPont de Nemours & Co.*, 820 A.2d 362, 366 (Del. 2003). The discovery rule is simply an "equitable" principle that "tolls the applicable statute of limitations," *Morton v. Sky Nails*, 884 A.2d 480, 482 (Del. 2005), until the plaintiff reasonably should have discovered the injury. *See also ISN Software Corporation v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 733 (Del. 2020) ("Under the 'discovery rule' the statute is tolled when the injury is 'inherently unknowable and the

Hence, *Remington Arms* is inapposite and does not affect the proper analysis in this case.

**III.   Plaintiffs' cross-motion for summary judgment should be granted.**

Plaintiffs are entitled to summary judgment on limitations, and their cross-motion should be granted. The Delaware Supreme Court has held that Delaware law recognizes cross-jurisdictional tolling, *Dow Chem. Corp. v. Blanco*, 67 A.3d 392 (Del. 2013), and further that the putative federal class action filed in 1993 in Texas tolled Plaintiffs' claims until 2010. *Marquinez v. Dow Chemical Co.*, 183 A.3d 704 (Del. 2018).

The evidence presented by Dole in its motion shows that Plaintiffs did not discover their injuries until long after the federal class actions had already been filed in Texas in 1993. Chart 2 in Dole's Motion presents evidence that none of the Plaintiffs discovered their injuries until March 1, 1994 at the earliest. D.I. 334 at 6-8. The bulk of the Plaintiffs did not discover their injuries until 1998, and some Plaintiffs did not discover their injuries until after 2000. *Id.* According to the evidence cited by Dole, *no Plaintiff discovered the relevant injury until after the putative class action had been filed in Texas.*

Dole acknowledges that Delaware follows the discovery rule. D.I. 334 at 12 (quoting *Brown v. E.I. duPont de Nemours & Co.*, 820 A.2d 362, 368–70 (Del. 2003)). Thus, Plaintiffs' claims are timely under Delaware law, and there are no disputed material facts. The *en banc* Third Circuit has instructed (in an appeal of a related case) that DBCP litigation should proceed expeditiously. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 234 (3d Cir. 2016) (en banc) ("We revive this litigation now, more than two decades after it began, while expressing our sincerest

---

claimant is blamelessly ignorant of the wrongful act and the injury complained of.'") (citations omitted); *DaBaldo v. URS Energy & Const.*, 485 A.3d 73, 79 (Del. 2014) ("In latent disease cases, the plaintiff may toll the commencement of the statute of limitations under the discovery rule if he 'acted reasonably and promptly in seeking a diagnosis and in pursuing the cause of action.'") (citation omitted).

hope that it proceeds with more alacrity than it has to the present date."). Plaintiffs are entitled to

partial summary judgment on the issue of limitations.[3]

**Conclusion**

The Dole Defendants' motion should be denied and partial summary judgment entered

in Plaintiffs' favor on the issue of limitations.

**Dated: January 7, 2021**

                                                      Respectfully submitted,

                                                      */s/ Drew C. Dalton*
Scott M. Hendler (Texas Bar No. 09445500)             Andrew C. Dalton (ID No. 5878)
*Admitted Pro Hac Vice*                                 Cool Springs Meeting House
1301 West 25th Street, Suite 400                      1106 West 10th Street
Austin, Texas 78705                                   Wilmington, Delaware 19806
Telephone: 512.439.3200                               Telephone: 302.652.2050
shendler@hendlerlaw.com                               adalton@bdaltonlaw.com
                                                      *Counsel for Ecuadorian Plaintiffs*

---

[3] Dole argues that, if Hawaii law applies to this case pursuant to Plaintiffs' choice of law motion (D.I. 329), then the Hawaii statute of limitations would govern Plaintiffs' claims under the Delaware Borrowing Statute. D.I. 334 at 18 n.6. That is incorrect. Dole concedes that the relevant Hawaii statute of limitations is two years, *id.*, which is not shorter than Del. Code § 8119. Accordingly, under the Delaware Borrowing Statute, the Delaware limitations period would apply to Plaintiffs' claims, even if Plaintiffs' Hawaii choice-of-law motion were granted.