**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LUIS ANTONIO AGUILAR MARQUINEZ, et al. | ) ) ) | C.A No. 12-695-RGA (Consolidated) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| DOLE FOOD COMPANY, INC., et al. | ) ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS SHELL OIL COMPANY, THE
DOW CHEMICAL COMPANY, OCCIDENTAL CHEMICAL CORPORATION, AND
AMVAC'S MOTION FOR SUMMARY JUDGMENT AS TO ECUADORIAN
PLAINTIFFS AND RESPONSE TO PLAINTIFF'S
<u>CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**Table of Contents**

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................... 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ......................................... 2

III.    FACTUAL AND PROCEDURAL BACKGROUND.......................................... 3

IV.     STANDARD OF REVIEW ................................................................... 6

V.      ARGUMENT ............................................................................. 7

   A.   Ecuador's Time Limit is "Shorter" Than Delaware's ................................ 8

      1.   Delaware Compares its Limitation Period to a Foreign Jurisdiction's After Applying
           all Applicable Variables Including Tolling, Accrual, and Discovery............................ 8

      2.   Delaware's Statute of Limitations Includes a Discovery Rule and Can Be Extended
           by Class Action Tolling ............................................................. 11

      3.   Ecuadorian Law Imposes a Four-Year Prescriptive Period That Does Not
           Include a Discovery Rule and Does Not Recognize Class Action Tolling.................... 12

      4.   Plaintiffs' Theory of Class Action Tolling Fails Under Ecuadorian Law..................... 13

   B.   Plaintiffs' Claims Fail as a Matter of Law Under Ecuador's Four-Year Prescriptive
        Period ................................................................................. 14

   C.   Plaintiffs' Ecuadorian Constitutional Law Theory Should be Rejected ....................... 16

   D.   Plaintiff's Cross-Motion for Summary Judgment Should be Denied ........................... 19

VI.     CONCLUSION.......................................................................... 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989).................................................................................18

*Betts v. New Castle Youth Dev. Ctr.*,
    621 F.3d 249 (3d Cir. 2010)........................................................................7

*State ex rel. Brady v. Pettinaro Enters.*,
    870 A.2d 513 (Del. Ch. 2005).....................................................................17

*Brown v. E.I. duPont de Nemours & Co.*,
    820 A.2d 362 (Del. 2003) ..........................................................................11

*Cheswold Vol. Fire Co. v. Lambertson Const. Co.*,
    489 A.2d 413 (Del. 1984) ......................................................................2, 17

*Clinton v. Enter. Rent-A-Car Co.*,
    977 A.2d 892 (Del. 2009) ..........................................................................8

*De Adler v. Upper New York Inv. Co.*
    LLC, 2013 WL 5874645 (Del. Ch. Oct. 31, 2013).....................................9, 10, 14

*El v. SEPTA*,
    479 F.3d 232 (3d Cir. 2007).........................................................................6

*Frombach v. Gilbert Assocs., Inc.*,
    236 A.2d 363 (Del. 1967) .....................................................................10, 14

*Handel v. Artukovic*,
    601 F. Supp. 1421 (C.D. Cal. 1985) .............................................................18

*Husband B. v. Wife B.*,
    396 A.2d 169 (Del. Super. Ct. 1978) ...........................................................17

*Nat'l Grp. for Commc'ns & Comps., Ltd. v. Lucent Techs. Int'l, Inc.*,
    331 F. Supp. 2d 290 (D.N.J. 2004) ...............................................................7

*Pallano v. AES Corp.*,
    No. CIV.A.N09C-11-021JRJ, 2011 WL 2803365 (Del. Super. Ct. 2011) ...................2, 10, 18

*Plumb v. Cottle*,
    492 F. Supp. 1330 (D. Del. 1980).............................................................9, 14

*Smith v. Socialist People's Libyan Arab Jamahiriya,*
    886 F. Supp. 306 (E.D.N.Y. 1995), aff'd, 101 F.3d 239 (2d Cir. 1996)................................18

*Tel-Oren v. Libyan Arab Republic,*
    726 F.2d 774 (D.C. Cir. 1984) (Bork, J., concurring) ............................................................18

*United States v. Fort,*
    921 F. Supp. 523 (N.D. Ill. 1996) ........................................................................................18

*Wheelings v. Seatrade Groningen, BV,*
    516 F. Supp. 2d 488 (E.D. Pa. 2007) ....................................................................................7

*Witco Corp. v. Beekhuis,*
    38 F.3d 682 (3d Cir. 1994)....................................................................................................6

*Youell v. Maddox,*
    692 F. Supp. 343 (D. Del. 1988)...........................................................................................8

**Statutes**

10 Del. C. § 8119 .............................................................................................................................11

10 Del. C. § 8121 ....................................................................................................................1, 8, 15

Civil Code § 2235 .....................................................................................................................12, 13

**Other Authorities**

Fed. R. Civ. P. 44.1 ...........................................................................................................................7

Fed. R. Civ. P. 56(a) ........................................................................................................................6

Order Denying Class Certification, *Carcamo v. Shell Oil Co* ......................................................13

Restatement (SECOND) Conflict of Laws §90 ............................................................................17

9 Wright & Miller, Federal Practice & Procedure § 2444 ............................................................7

## I.        INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiffs would be time barred from bringing their pleaded claims in Ecuador, and so they seek to apply the longer limitations period of Delaware law.  But as this Court has determined, Delaware's borrowing statute applies to this case because Plaintiffs' cause of action arose outside of Delaware.  D.I. 324 at 11.  In Ecuador, the four-year statute begins to run (and does not stop for any reason) at the last "act" that gives rise to a plaintiff's claim.  Here, the relevant acts for the Defendants occurred mostly in the 1960s and 1970s.  Although Plaintiffs allege that the acts may extend as late as 1990, in the end it does not matter for purposes of this motion as the statute ran no later than 1994.

The only two determinations this Court must make now are:

*First*, do the laws of Ecuador or Delaware provide the "shorter" time limit for Plaintiffs' claims; and

*Second*, are Plaintiffs' claims untimely under the shorter time limit?

The answer to both questions is straightforward and not dependent on any disputed material facts. Ecuador's time limitation is shorter, and Plaintiffs' claims are untimely under it.  Plaintiffs' attempted reliance on an unlimited, retroactive statute of limitations for a constitutional claim they never raised is incorrect and fails for several reasons.

Delaware's borrowing statute provides that "[w]here a cause of action arises outside of" Delaware, "an action cannot be brought in a court of [Delaware] to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of [Delaware], or the time limited by the law of the state or country where the cause of action arose."  10 Del. C. § 8121. This aspect of Delaware law ensures that a party cannot sidestep another jurisdiction's time limits and its principles are well established:

1

"Delaware's borrowing statute is designed to prevent plaintiffs from forum shopping. The statute's purpose is to prevent a non-resident from bringing a foreign cause of action, which is precluded by that jurisdiction's statute of limitations, in Delaware where the statute of limitations period is longer. In essence, one who brings a cause of action that occurred in a foreign jurisdiction must also bring the foreign statute of limitations period if it is shorter than Delaware's."

*Pallano v. AES Corp.*, No. CIV.A.N09C-11-021JRJ, 2011 WL 2803365, at \*3 (Del. Super. Ct. July 15, 2011); *See also*, *Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co., Inc.*, 866 A.2d 1, 16 (Del. 2005).

Importantly, Ecuador's statute is shorter because it runs without any breaks, whereas in Delaware, the discovery rule or cross jurisdictional class action tolling can pause the running of the statute for potentially long periods of time. Plaintiffs are attempting to rely on these tolling principles because they know their claims are otherwise time barred.

Indeed, all of the Ecuadorian Plaintiffs' claims were time barred under Ecuador's four-year prescriptive period[1] long before they filed this lawsuit in 2012. As such, they fail as a matter of law under Delaware's borrowing statute. Granting this motion fulfills Delaware's "well recognized and legitimate public purpose" to bar "ancient claims." *Cheswold Vol. Fire Co. v. Lambertson Const. Co.*, 489 A.2d 413, 417 (Del. 1984). Defendants therefore ask the Court to grant summary judgment on all of the Ecuadorian Plaintiffs' claims as time barred.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs originally filed six different complaints in June 2012, that the Court consolidated in the present action. D.I. 53. The complaints assert claims on behalf of individuals from Ecuador, Costa Rica, Guatemala and Panama, but this Court ordered the parties "to focus their initial

---

[1] Plaintiffs make much of the Dole Defendants' use of the term "repose" versus "limitations." That focus misses the mark and has no bearing on the answers to the questions. Regardless of how phrased, the result is the same: Ecuador sets a strict four-year time limit to bring a claim that runs from the final act of a defendant. To avoid semantical distinctions, this motion refers to Ecuador's statute as a "prescriptive period" or "time limitation."

discovery and trial preparation efforts on the claims of the approximately 57 Plaintiffs who allege they were exposed to DBCP in Ecuador" (the "Ecuadorian Plaintiffs"). D.I. 176 ¶ 1.  Defendants Shell Oil Company ("Shell"); The Dow Chemical Company ("Dow"); Occidental Chemical Corporation ("Occidental Chemical"); AMVAC Chemicals Corporation ("AMVAC"); and Chiquita Brands International, Inc., Chiquita Brands, L.L.C., Chiquita Fresh North America, L.L.C. (collectively, "Chiquita") (collectively for purposes of this motion "Defendants") move for summary judgment as to the Ecuadorian Plaintiffs' claims on the grounds that they are time barred under Ecuadorian law.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2012, hundreds of Central and South American banana farm workers filed six separate complaints that were consolidated into the present action.  *See* D.I. 53.[1]  The Ecuadorian Plaintiffs at issue in this motion[2] are 26 former banana farm workers who claim that they sustained exposure to DBCP manufactured by a number of the Defendants while present on or near banana plantations owned, operated, or otherwise controlled by a number of the named defendants.[3]  They allege that Shell, Dow, Occidental, and AMVAC[4] all manufactured DBCP, and then sold and distributed the product for use on banana plantations.[5]  D.I. 1 ¶¶ 31, 48, 68, 78.  The Ecuadorian

---

[2] The other Ecuadorian Plaintiffs are the subject of a motion that Dole filed and which Shell and AMVAC have joined. D.I. 333, 349.

[3] Although a named defendant in this case, Del Monte is not a participating defendant in the Ecuadorian claims.

[4] Plaintiffs allege that Occidental Chemical "manufactured DBCP under the trade names DBCP 12 and/or Fumazone from 1971 through 1979" for use on banana plantations. D.I. 1 ¶ 68.  Occidental Chemical has denied ever selling or shipping any DBCP products to Ecuador and further responded that it stopped producing such products in August 1977 and never again produced DBCP.  D.I. 234 p. 7 and Exh. 18.  Shell likewise denies that its product was ever sold or shipped to Ecuador. AMVAC did not sell goods directly to anyone in Ecuador although it sold goods to domestic, third parties that, in turn, sold or distributed such goods to their customers in Ecuador.

[5] Ecuadorian Plaintiffs make no allegations in the Complaint concerning specific acts by Chiquita.

Plaintiffs claim that their exposure to DBCP caused a wide range of purported injuries, including "sterility, abnormally low sperm quantity and defective sperm quality." D.I. 1 ¶ 105. While there is substantial reason to doubt the validity of Plaintiffs' injuries, Plaintiffs' allegations may be accepted as true for purposes of this Motion.

It is undisputed that none of the Ecuadorian Plaintiffs claim their exposure to DBCP occurred later than 1990. In their various complaints and discovery responses, each Ecuadorian Plaintiff alleged a date range when he was allegedly exposed to DBCP. These dates range from 1965 at the earliest, to 1990 at the latest. While some plaintiffs do not list any dates at all, in their pleading they allege only that "some workers have reported using DBCP until at least 1985," making any claims of later use suspect. D.I. 1 ¶ 22. Furthermore, in the putative class action that Plaintiffs reference in their Complaint, it was alleged that exposure was between 1965 and 1990. D.I. 1 ¶ 121.

While these alleged exposure dates are not supported by the evidence, they may be accepted as true for purposes of this Motion and they are dispositive here, where the only relevant date is the last "act" by a particular defendant. For the manufacturing defendants, the date of interest is when they sold the product at issue and for the growers, the last date a plaintiff used DBCP on that grower's farm. All of the Plaintiffs individually, and collectively in their pleadings, admit that the absolute latest that any of them used DBCP on a grower's farm was 1990.

Importantly, Ecuador does not have an injury discovery rule. At issue under Ecuadorian law is the date of the Defendants' last act. Because there is no discovery rule under Ecuador's four-year prescriptive period, the date that the alleged injuries manifested or were discovered is irrelevant for the purpose of calculating the time limit for Plaintiffs' claims. Even if Ecuador had such a rule, or if one were manufactured just for this case, Plaintiffs have still failed to show any

evidence that any farm worker was unaware of his alleged injury by 2008—which is what they would need to prove in order to avoid summary judgment.  In fact, Plaintiffs have failed to show that any plaintiff (except perhaps one) did not know about his claimed injuries by 2005 at the very latest, with the majority admitting to having knowledge in the 1990's.[6] *See*, Ex. A.

**Plaintiff Exposure and Injury Discovery Chart**

| Plaintiff Name | Claimed Date of Exposure | Date of First Injury Discovery |
|---|---|---|
| Barreto Chizaca, Pedro Gonzalo | 1970-1979 | 2000 |
| Cepeda Mendoza, Brigido Fidel | 1972-1981 | 1988 |
| Cherrez Carrion, Jorge Enrique | N/A | 1998 |
| Coronel Alvarado, Francisco Antonio | N/A | N/A |
| Correa Torres, Segundo Edison | 1974, 1980 | 1995 |
| Criollo Dumagual, Manuel Jesus | 1972-1982 | 1983 |
| Garcia Villon, Jacinto Alexandro | 1980-1983 | 1996 |
| Guzman Castro, Epifanio | 1972-1980 | 2000 |
| Jadan Jadan, Carlos Francisco | 1973-1983 | 2000 |
| Leon Velez, Jose Erasmo | N/A | N/A |
| Lopez Malla, Heris Geovanny | 1974-1975 | 2007 |
| Lucero Chucino, Luis Antonio | 1979-1981 | 1995 |

---

[6] On December 23, 2020, the Dole Defendants filed a substantively identical motion for summary judgment in the *Chavez* case. (C.A. No. 12-697-RGA), which Defendants joined. D.I. 333, 334, 349.  Because of the unique procedural history of *Chavez,* a large number of affidavits were filed by the plaintiffs in a Louisiana federal court describing their injuries and the times when they were discovered that were not filed in *Marquinez*.  Nevertheless, the plaintiffs in both cases are similarly situated insofar as they worked on banana farms in Ecuador for the same grower defendants and therefore the *Marquinez* Plaintiffs' use would not differ from the *Chavez* Plaintiffs'.  As such the Plaintiffs' lack of proof here in *Marquinez* can be supplemented by the plaintiffs' self-defeating proof presented in *Chavez*.  In its motion, Dole notes that: "[O]f the 55 Ecuadorian Plaintiffs, 43 filed declarations in federal court in Louisiana showing that they had actual knowledge of their alleged injuries between 1995 and 2000.  These declarations were all prepared using a common template, and state: "I became aware of being sterile on [Date], when I submitted to a sperm test to determine my sperm count, after I found out about the relationship between DBCP contact and sterility, and I was informed that my sperm count test result was below the normal level."  The test results and verified questionnaire responses of each of the 12 remaining Ecuadorian Plaintiffs confirm that each of these Plaintiffs had knowledge of his alleged injuries by no later than 2005. D.I. 334 at 6 (internal citations omitted).  Regardless of the differences in evidence available between the consolidated cases, the point is that Plaintiffs bear the burden of proving they discovered their injuries at a time which would allow them to take advantage of a non-existent Ecuadorian discovery rule—and they have failed to do so.

| Luicin Ovidio, Jaime Urbina | 1979-1982 | 2000 |
| Macias Tomala, Pedro Marcelino | N/A | 1998 |
| Morales Ciro, Eugenio | N/A | 1998 |
| Navarrete Aquino, Nilo Giovanny | N/A | 1995 |
| Pena Campana, Sergio | N/A | 1995 |
| Pesantez Redrovan, Luis Alberto | 1978-1982 | 1998 |
| Pita Pozo, Juan Cirilio | N/A | N/A |
| Ramirez Barzola, Segundo Lorenzo | 15 years | N/A |
| Reyes Moreno, Marlon | N/A | N/A |
| Rezabala Moreira, Diocles Leovigildo | 1990 | 1997 |
| Ruiz Giron, Julio Cesar | 1979-1981 | 1998 |
| Sanchez Hidalgo, Gilmer Santos | N/A | N/A |
| Sanchez Sumba, Carlos Miguel | N/A | N/A |
| Varela Guillermo, Rodrigo | 1970-1979 | 2000 |

Pursuant to this Court's November 21, 2019 Order, Defendants moved to apply Ecuadorian law to the Ecuadorian Plaintiffs' claims, and also addressed "whether the Delaware borrowing statute applies." D.I. 190. The Court granted Defendants' motion and ruled that "Ecuador has the 'most significant relationship' to the facts and parties of this case." D.I. 324 at 10. The Court also "decide[d in its order] that the Borrowing Statute applies to this case because Plaintiffs' cause of action arises outside of this State.'" *Id.* at 11. But the Court held that "further analysis of Delaware's Borrowing Statute would be more appropriate in the context of summary judgment." *Id.* Defendants now bring this motion for summary judgment based on the borrowing statute.

## IV.     STANDARD OF REVIEW

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial responsibility of informing the district court of the basis for its motion." *El v. SEPTA*, 479 F.3d 232, 237 (3d Cir. 2007) (internal quotation marks omitted). If that standard is met, the non-moving party "must make a showing sufficient to establish the existence of a genuine issue for trial." *Witco Corp. v. Beekhuis*, 38 F.3d 682, 686 (3d Cir. 1994). The non-moving party must point to specific facts; "[u]nsupported assertions [or]

conclusory allegations . . . are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

"In determining foreign law," such as another country's prescription period, "the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Rule 44.1 does not require "the court to take 'judicial notice' of foreign law," and instead "provides flexible procedures for presenting and utilizing material on issues of foreign law." Fed. R. Civ. P. 44.1 Advisory Committee's notes. "[E]xpert testimony is the most common method of determining foreign law." *Wheelings v. Seatrade Groningen, BV*, 516 F. Supp. 2d 488, 499 (E.D. Pa. 2007). However, "a litigant may [also] present any other information concerning foreign law that is believed to further his cause, including secondary sources such as texts and learned journals." 9 Wright & Miller, Federal Practice & Procedure § 2444; *see also* Fed. R. Civ. P. 44.1 ("the court may consider any relevant material or source").

The Court's determination of the applicability and content of foreign law is "treated as a ruling on a question of law." Fed. R. Civ. P. 44.1 (emphasis added). Accordingly, "[d]ifferences of opinion . . . on the content, applicability, or *interpretation of foreign law do not create a genuine issue as to any material fact*," and, as a result, do not preclude summary judgment. *Nat'l Grp. for Commc'ns & Comps., Ltd. v. Lucent Techs. Int'l, Inc.*, 331 F. Supp. 2d 290, 294 (D.N.J. 2004) (quoting *Banco de Credito Indus., S.A. v. Tesoreria Gen.*, 990 F.2d 827, 838 (5th Cir.1993)) (emphasis added, internal quotation marks omitted).

## V.   ARGUMENT

The Ecuadorian Plaintiffs' claims are time barred. Delaware's borrowing statute bars an action "after the expiration of whichever is shorter, the time limited by the law of [Delaware], or

the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action." 10 Del. C. § 8121. Because this cause of action arose in Ecuador, this Court rightly ruled that "the Borrowing Statute applies to this case because Plaintiffs' cause of action arises outside of this State.'" D.I. 324 at 11; *see also Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 896 (Del. 2009).

Under Ecuadorian law, Plaintiffs are subject to a four-year prescriptive period that runs from the commission of the Defendant's "act." This Ecuadorian prescriptive period is shorter than Delaware's two-year limitations period because it is not tolled for any reason, including due to the discovery rule or cross jurisdictional class action tolling as is the case under Delaware's statute. Because the manufacturers' last alleged "act" occurred when each last sold the DBCP that Plaintiffs allegedly used—necessarily prior to the last use of any alleged DBCP product in this case in 1990—under Ecuadorian law, the Ecuadorian Plaintiffs' claims had all expired long before Plaintiffs filed this suit in 2012.[7] The Ecuadorian Plaintiffs' claims are therefore barred under the borrowing statute.

**A.** **Ecuador's Time Limit is "Shorter" Than Delaware's**

**1.** **Delaware Compares its Limitation Period to a Foreign Jurisdiction's After Applying all Applicable Variables Including Tolling, Accrual, and Discovery**

"Delaware has adopted a borrowing statute in an effort to prevent nonresident plaintiffs from forum-shopping for a statute of limitations that is longer than the one imposed by the [jurisdiction] in which the action arose." *Youell v. Maddox*, 692 F. Supp. 343, 355 (D. Del. 1988) (internal quotation marks omitted). When another jurisdiction's time limitation applies, "the

---

[7] Even though Plaintiffs make no allegations in their Complaint regarding Chiquita, they have since sought discovery from Chiquita concerning events that occurred in 1985 at the latest (*see*, *e.g.*, D.I. 308-1); so, Plaintiffs' claims, to the extent any exist (and Chiquita does not concede they do), would have expired long before this suit as well.

borrowed statute is accepted **with all its accoutrements**," including rules governing accrual and tolling.  *Plumb v. Cottle*, 492 F. Supp. 1330, 1336 (D. Del. 1980) (emphasis added).

The law is clear that in deciding which time limitation is "shorter" the Court does not simply compare the raw number of years in each jurisdiction's law, as Plaintiffs have argued. *See* D.I. 317 at 14.  When comparing Delaware's time limits to that of another jurisdiction, the borrowing statute is clear and instructive - it calls for a complete calculation of "the limitations periods and **their respective 'accoutrements,' such as claim accrual and tolling doctrines, and the shorter limitations period is accepted with its accoutrements**."  *De Adler v. Upper New York Inv. Co*. LLC, 2013 WL 5874645, at *13 & n.149 (Del. Ch. Oct. 31, 2013) (emphasis added). A plaintiff cannot "bring a foreign law claim in Delaware if it would be time-barred from bringing that claim in the foreign jurisdiction."  *Id*.  Indeed, accounting for all tolling doctrines and claim accrual rules is essential in comparing one limitations period to another.

For example, in *May v. Remington Arms Co*., the Delaware Superior Court considered whether Delaware's two-year statute of limitations or North Carolina's six-year statute of repose[8] was "shorter" under the borrowing statute in a product defect suit.  2005 WL 2155229, at *1 (Del. Super. Ct. Aug. 31, 2005).  In *May*, the plaintiff alleged that he was injured in North Carolina by a defectively designed rifle.  *Id*.  In framing the question, the court stated that "if [North Carolina's] six-year-after manufacture limit expires before Delaware's two-year-after-injury time limit

---

[8] Plaintiffs contend that calling Ecuador's statute one of limitations or repose is significant.  Not so.  Ecuador simply refers to the period as one of "prescription."  Whether styled as a statute of limitations or repose, the result is the same:  Ecuador starts the clock on the defendant's act and it does not stop until the four years have run.  That framework fits the definition of one of repose, but the result of this motion does not depend on whether the Court calls the "prescription" period one of "prescription," "limitations" or "repose."  As the *May* decision noted, "[f]or borrowing purposes, there is no helpful distinction between statutes of repose and limitation."  2005 WL 2155229, at *2.

expires, then the court must apply North Carolina's statute and Plaintiff cannot bring suit here." *Id*. The court held that a "statute of repose is a time limit on suit" and "[f]or borrowing purposes, there is no helpful distinction between statutes of repose and limitation." *Id*. at *2. The court also held that "it is not against Delaware's public policy to borrow North Carolina's statute of repose here," simply because "Delaware's General Assembly struck a different balance between injured people's and manufacturers' rights compared to North Carolina's legislature's approach." *Id*. And as such, even though the plaintiff's suit was timely under Delaware's statute of limitations, the court applied North Carolina's statute of repose and granted the defendant's motion for summary judgment because "[b]y the time the rifle injured Plaintiff, it was too late to sue" in North Carolina. *Id*. at 3.

Considering tolling and accrual rules only after deciding which jurisdiction's law to apply would defeat the entire purpose of the borrowing statute—namely, a "party should not be able to bring a foreign law claim in Delaware if it would be time-barred from bringing that claim in the foreign jurisdiction." *De Adler, supra* (citing *Pallano v. AES Corp*., 2011 WL 2803365, at *3 (Del. Super. July 15, 2011). The court in *De Adler* held that the comparison under the borrowing statute must be made after considering each jurisdiction's accrual and tolling doctrines:   "This comparison is of the limitations periods and their respective 'accoutrements,' such as claim accrual and tolling doctrines, and the shorter limitations period is accepted with its accoutrements." 2013 WL 5874645, at *13 & n.149 (citing *Frombach*, 236 A.2d at 366).  Indeed the Delaware Supreme Court has opined that, "we do not understand how we can determine the 'time limited by the law' of the foreign state without including any exception which exists to the limitation rule of that state." *Frombach,* 236 A.2d at 366 (Del. 1967).  Comparing the two limits without considering all

applicable rules, would result in Delaware becoming a warm, inviting destination for time barred claims the world over.

By contrast, Plaintiffs wrongly insist that this Court should simply look at the two prescriptive periods on their faces and compare them in a vacuum. They would have this Court put blinders on and hold that Delaware's two-year limit is shorter than Ecuador's four-year limit, and then end the analysis there. But that is clearly wrong, counter to Delaware's established law and policy, and counter to basic logic. As cited above, Delaware courts have shunned the type of tunnel vision the Plaintiffs request and instead looked at the full picture of how the statutes operate before they picked which one is actually shorter. And in this action, after taking into consideration the prescriptive periods along with their "accoutrements," it is clear that Ecuador's time limit is shorter by decades.

### 2.   Delaware's Statute of Limitations Includes a Discovery Rule and Can Be Extended by Class Action Tolling

Delaware law imposes a two-year statute of limitations on personal injury actions. 10 Del. C. § 8119. The time to bring a claim begins running "when a legal injury is sustained," rather than from the date of the commission of harm, and thus Delaware law will not "time-bar[] the claims of the blamelessly ignorant plaintiffs." *Brown v. E.I. duPont de Nemours & Co.*, 820 A.2d 362, 368–70 (Del. 2003). Delaware's two-year statute of limitations may also be extended through cross jurisdictional class action tolling. *Marquinez*, 183 A.3d at 711. Plaintiffs have relied on the filing of a 1993 Texas class action to toll their otherwise untimely claims under Delaware law, alleging that tolling ended in 2010 when the Texas court denied the motion for class certification. *Marquinez*, 183 A.3d at 711.

3.    **Ecuadorian Law Imposes a Four-Year Prescriptive Period That Does Not Include a Discovery Rule and Does Not Recognize Class Action Tolling**

Ecuador's applicable prescriptive period does not include a discovery rule and does not recognize cross jurisdictional class action tolling.  Ecuador's four-year prescriptive period is therefore "shorter" than Delaware's two-year statute of limitations.  Ecuador's time limitation for civil tort claims is found in Ecuador Civil Code section 2235: "the actions allowed by this document for damages or wrongdoing lapse in four years, starting from the commission of the act."  Velazquez Decl. at 7; *see also* D.I. 234-1, Ex. 22 ("Parraguez Decl.") at 7.  Former Ecuadorian Supreme Court Justice Dr. Santiago Velazquez emphasized that the "specific rule for this case clearly states the statute of limitations begins at the time the harmful event took place." Velazquez Decl. at 7.  That is, the four-year period begins at the time the allegedly tortious conduct occurred, without any discovery rule.  *Id.*

Notably, Plaintiffs' purported foreign law expert, Professor Garro, agrees with Defendants. He admits that under "Article 2235 CC, the period to bring an action for tort is of four years, running from the '***perpetration of the act***.'" D.I. 318, Garro Declaration ¶ 22 (emphasis in original).  He further agrees that "Unlike other legal systems, Ecuadorian law does not provide for a 'rule of discovery.'"  *Id.* (emphasis omitted).  Professor Garro also admits that he did not find any Ecuadorian authorities that started "the commencement of the prescriptive period with [the] date of the injury."  *Id.*  Nonetheless, Professor Garro goes on to claim that "[a]s a matter of policy, however, this provision should be interpreted taking into account that the plaintiff should not be barred to bring an action before it had a genuine possibility to learn that he has suffered an injury and had therefore a real possibility to pursue its rights."  *Id.* It is of course not for Professor Garro to invent new law for Ecuador and this Court should reject his brazen attempt to amend Ecuador's statute singlehandedly.

The plain text of Ecuador Civil Code section 2235 is clear that Ecuador's four-year time limit starts running upon commission of the defendant's "act" and not upon discovery of the injury. Velazquez Decl. at 7; Parraguez Decl. at 7.  It is thus shorter than Delaware's statute of limitations.

### 4.       Plaintiffs' Theory of Class Action Tolling Fails Under Ecuadorian Law

Plaintiffs' theory that the 1993 putative class action in Texas tolled the prescriptive period for their claims is "not valid" under Ecuadorian law for numerous reasons.  Velazquez Decl. at 8.

*First*, a "class action" is not a valid type of claim in Ecuador—it "does not exist nor has it ever existed in Ecuadorian legislation"—so a putative class action could not toll the time limit for Plaintiffs' claims.  *Id*.  Thus, under Ecuadorian law, no class action could have been filed at all in 1993, much less extend Plaintiffs' four-year period to file suit.

*Second*, Dr. Velazquez explained that Plaintiffs' theory of class tolling fails under Ecuadorian law because Plaintiffs "do not certify having been parties to it, nor have they demonstrated that the class action would have been allowed in some court."  *Id*.  Plaintiffs were never named parties in the Texas class action, and in fact, class certification was denied.  D.I. 1 ¶ 123 ("the Texas Court denied Plaintiffs' motion for class certification"); D.I. 1-2 (June 3, 2010 Order Denying Class Certification, *Carcamo v. Shell Oil Co.*).  No United States court has ever allowed the class action that Plaintiffs allege salvaged their claims, which defeats Plaintiffs' theory under Ecuadorian law.

*Third*, the Texas class action was "ineffective" and did not "interrupt[] the statute of limitations" under Ecuadorian law because it was dismissed and never resolved on the merits.  D.I. 1-2; Velazquez Decl. at 8.  Dr. Velazquez explained that when a case is not resolved on the merits, it could potentially be refiled again, but "[t]he summons issued in the first [case], because it was part of a [case] that was ineffective in its aims, also becomes ineffective and does not have the effect of interrupting the statute of limitations."  *Id*.

Professor Garro claims that "[a]s a matter of policy, it is my opinion that whether the defendant has been duly summoned by the proper plaintiff [for purposes of tolling] are questions to be determined by the law of procedure of the court where the proceedings have been instituted." D.I. 318 ¶ 24.  This is simply an argument that the Court should apply Delaware tolling rules instead of Ecuador's, and ignores precedent requiring that when "another jurisdiction's statute of limitations" applies, "the borrowed statute is accepted *with all its accoutrements*," including rules governing accrual and tolling.  *Plumb*, 492 F. Supp. at 1336 (emphasis added); *see also Frombach*, *supra*.  Professor Garro cannot on his say-so change Delaware law just as he cannot change Ecuador law to fit his and the Plaintiffs' policy preferences.  As such, Plaintiffs' theory of class action tolling is not valid under Ecuadorian law and cannot salvage their time-barred claims. Velazquez Decl. at 8.

\*   \*   \*

Because the Ecuadorian time limit for filing these claims is "shorter" than Delaware's, under the borrowing statute, the Court should apply Ecuador's four-year prescriptive period. *De Adler*, 2013 WL 5874645, at \*13 & n.149.

## B.     Plaintiffs' Claims Fail as a Matter of Law Under Ecuador's Four-Year Prescriptive Period

Ecuador's prescriptive period runs from the date of the defendant's "act."  Plaintiffs allege that Shell's wrongful "act" consisted of placing "Nemagon DBCP into the stream of commerce including selling it to local distributors in Plaintiffs' countries, Shell knew, or should have known, that the DBCP would find its way into the geographic locations where Plaintiffs lived and worked and would result in the sustained exposure to Shell Nemagon DBCP[.]"  D.I. 1 ¶ 45; *see also* ¶60 (making similar allegation as to Dow's Fumazone).  Defendants dispute Plaintiffs' allegations, though it is undisputed is that if these actions occurred, they must have occurred no later than

1990—the last date, for which any evidence or allegation has been presented at all, when any of the Ecuadorian Plaintiffs were exposed to DBCP.

For Shell, Plaintiffs allege that they "sustained exposure to Shell's Nemagon DBCP between 1965-1977, inclusive," making the determination as to Shell even easier.  D.I. 1 ¶ 44, 45. Similarly, Plaintiffs' claim they were exposed to AMVAC's DBCP from 1978-1985, Occidental's DBCP between 1971-1979, and exposed to Dow's DBCP "through 1979."  D.I. 1 ¶¶ 64, 68, 78, 79.  And as for Chiquita, Ecuadorian Plaintiffs have not alleged in their complaint that Chiquita has done *anything* in Ecuador.  They have, however, sought discovery from Chiquita concerning the years 1965 through 1985, conceding that if Chiquita committed any "act" at all, it did not occur beyond 1985.  At every turn Plaintiffs have confirmed that no Defendant committed any "act" whatsoever after 1990.

Plaintiffs did not file this action until 2012, nearly 20 years after the last of their claims had expired under Ecuadorian law as to any defendant and as to the manufacturers, approximately 30 years after they expired. Their claims are therefore time barred under governing Ecuadorian law and should be dismissed.  Defendants need not prove the accrual date of each Plaintiff's injuries to prevail on this motion, because Ecuador's prescriptive period runs from the date of the defendant's "act," not from the date of injury or discovery of the injury.

Because Plaintiffs did not file their Complaint within four years of Defendants' last alleged wrongful "act," the Ecuadorian Plaintiffs' claims are barred by Ecuador's four-year prescriptive period.  Velazquez Decl. at 7.  When they filed suit, the Ecuadorian Plaintiffs' claims were already barred by Ecuadorian law—where their claims arose—and the "action cannot be brought in a court of [Delaware] to enforce such cause of action."  10 Del. C. § 8121.  Defendants are therefore

entitled to summary judgment as to each of the Ecuadorian Plaintiffs' claims.  *See May*, 2005 WL 2155229, at *3.

### C.    Plaintiffs' Ecuadorian Constitutional Law Theory Should be Rejected

In Plaintiffs' Opposition to Dole's Motion for Summary Judgment in *Chavez*, Plaintiffs rely on an abstract argument about what they could have done (but did not) under a novel concept of Ecuadorian constitutional law.  In short, Plaintiffs argue that *if* they had brought this lawsuit in Ecuador, they "*could* and most likely [would]" have sought relief through an "acción de protección" ("AP") which is a constitutional claim under Ecuadorian law that would be subject to no statute of limitations at all.  D.I. 341 ¶ 5 (emphasis added), *See also* Mino Decl. Para. 16. Plaintiffs then argue that if they had brought such a claim (which they did not), in Ecuador (where they have not), no prescriptive period would apply, and thus Delaware's statute of limitation would be the "shorter" of the two time limitations by virtue of existing at all.  This argument fails for multiple, independent reasons.

*First*, Plaintiffs have never pleaded an "acción de protección" and at this point it is too late to seek to amend to add such a claim after well over a decade of litigation in this Court.  Plaintiffs have had years to fashion their case and never asserted this claim.  In fact, it should be determinative that the term "acción de protección" appeared for the first time in a response to a motion for summary judgment.  It cannot be that an unpled theory of Ecuadorian constitutional law can now retroactively save clearly time-barred claims.  Plaintiffs' request to apply the limitations period for an unpled claim to the pleaded claims makes no sense and should be rejected out of hand.

*Second*, if Professor Mino's interpretation of the "acción de protección" is correct, then it is contrary to public policy in Delaware and should be rejected for that reason. If she is correct,

then Plaintiffs can seek redress under an "acción de protección" for a literally unlimited period of time, at any point in pending litigation—even retroactively.  This would be contrary to Delaware's "well recognized and legitimate public purpose" of barring "ancient claims."  *Cheswold*, 489 A.2d at 417.  Delaware courts have consistently held that judicial policy disfavors giving statutes, and implicitly, foreign constitutions, retroactive effect when this will impair vested rights.  *See*, *e.g.*, *Husband B. v. Wife B*., 396 A.2d 169, 171 (Del. Super. Ct. 1978).  Moreover, Delaware's rationale underlying its enactment of a statute of limitation is that "it is unjust to fail to put an adversary on notice to defend within a specified period of time, and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."  *State ex rel. Brady v. Pettinaro Enters*., 870 A.2d 513, 530 (Del. Ch. 2005).  Defendants have a settled expectation as to the Plaintiffs' claims as time barred and retroactively recognizing this "acción de protección" would fly in the face of Delaware's public policy.  *See* Restatement (SECOND) Conflict of Laws §90 ("No action will be entertained on a foreign cause of action the enforcement of which is contrary to the strong public policy of the forum.").

   *Third*, in paragraph 9 of her declaration, Professor Mino argues that Article 88 of the Ecuador constitution gives every citizen a private right of action (the "acción de protección") to enforce "all the rights recognized under the [Ecuador] Constitution and in international human rights instruments."  She proceeds to declare that the acción de protección can be asserted "[a]gainst the acts or omissions of natural or legal persons of the private sector, when [that action]…. Causes serious harm." Mino Decl. Para. 9.  She continues, "the fact that a private actor caused a serious harm may also entitle a plaintiff to present an 'AP'.  Therefore, the fact that the negligent conduct of the defendants caused harm to the plaintiffs' health, gives them grounds to successfully present an "acción de protección."  Mino Decl. Para. 10.  Professor Mino posits that

Article 88 of the Ecuadorian Constitution could abolish all statutes of limitations for any personal injury action as long as the harm is "serious."  If Plaintiffs are also correct, then this blanket abolition of time limitations, which these Plaintiff's did not even assert, would be the grounds for Delaware to hear the claims that they actually did assert.  This Court should reject this proposition. As Dr. Velazquez explains, the argument that Plaintiffs and Professor Mino puts forward is simply wrong.  *See,* Ex. B, Velazquez Dec.

Ultimately it is irrelevant whether this private right of action actually exists under Ecuadorian law as Dr. Mino describes because private rights of action under international human rights instruments are not cognizable here, and this constitutional provision is no different.  *See*, *e.g.*, *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 442 (1989) (declining to recognize private right of action under international bodies of law absent United States legislative action); *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 800, 816 (D.C. Cir. 1984) (Bork, J., concurring) (declining to infer a private right of action under international human rights instruments where none is expressly given in domestic statute); *Handel v. Artukovic*, 601 F. Supp. 1421, 1427 (C.D. Cal. 1985) (declining to find private right of action under both international treaties and customary law of nations); *see also United States v. Fort*, 921 F. Supp. 523, 526 (N.D. Ill. 1996); *Smith v. Socialist People's Libyan Arab Jamahiriya*, 886 F. Supp. 306, 311–12 (E.D.N.Y. 1995), aff'd, 101 F.3d 239 (2d Cir. 1996); and *Pallano v. AES Corp.*, No. CIV.A.N09C-11-021JRJ, 2011 WL 2803365 at **10-14 (Del. Super. Ct. July 15, 2011).

Plaintiffs' attempted reliance on an unpled theory, which is incorrectly stated, and which cannot be enforced in the United States should be rejected.  It cannot save their time-barred pleaded claims.

**D.    Plaintiff's Cross-Motion for Summary Judgment Should be Denied**

At the end of their Opposition to Dole's Motion, Plaintiffs include a few cursory paragraphs as an affirmative cross motion for partial summary judgment against all Defendants on the question of whether the Ecuadorian Plaintiffs' claims are time barred.  That motion should be denied for the same reason that this motion should be granted.

Moreover, even if Plaintiffs were correct that Delaware's statute of limitations applies, they still could not prevail on summary judgment.  As noted above, they claim that they used the products at issue mostly in the 1960s, 70s, and 80s.  Even if Plaintiffs' claims were tolled for some period of time, many if not all of them were still untimely when the class action was filed and Plaintiffs have not established that they are entitled to summary judgment when depositions are far from concluded and the veracity of their alleged discovery has not been examined.  As such, this Court should deny Plaintiffs' cross-motion and should instead grant summary judgment to all Defendants as to all the Ecuadorian Plaintiffs.

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant this motion for summary judgment and deny Plaintiffs' motion.

Respectfully submitted,

Craig Stanfield
KING & SPALDING LLP
Admitted Pro Hac Vice
1100 Louisiana Street, Suite 4100
Houston, Texas  77002
Tel:  713.276.7335
E-mail:  cstanfield@kslaw.com

*/s/ Kelly E. Farnan*
Kelly E. Farnan (ID No. 4395)
RICHARDS, LAYTON & FINGER
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:   302.651.7705
E-mail:  farnan@rlf.com

*Counsel for Defendant*
*Shell Oil Company*

Stephen C. Lewis
*Admitted Pro Hac Vice*
BARG COFFIN LEWIS & TRAPP, LLP
600 Montgomery Street, Suite 525
San Francisco, California 94111
Telephone:     415.228.5480
E-mail:  slewis@bargcoffin.com

*/s/ Timothy Jay Houseal*
Timothy Jay Houseal (ID No. 2880)
YOUNG CONWAY STARGATT & TAYLOR LLP
1000 N. King St.
Wilmington, Delaware  19801
Telephone:   302.571.6682
E-mail:  thouseal@ycst.com

*Counsel for Defendant*
*Occidental Chemical Corporation*

Michael L. Brem
*Admitted Pro Hac Vice*
SCHIRRMEISTER DIAZ-ARRASTIA
BREM LLP
Pennzoil Place, South Tower
711 Louisiana St., Suite 1750
Houston, Texas  77002
Telephone:     713.221.2500
E-mail:  mbrem@sdablaw.com

*/s/ Ryan D. Stottmann*
Ryan D. Stottmann (ID No. 5237)
Barnaby Grzaslewicz (ID No. 6037)
MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 North Market Street, 16th Floor
Wilmington, Delaware  19801
Telephone:   302.351.9219
E-mail:  rstottmann@mnat.com

*Counsel for Defendant*
*The Dow Chemical Company*

*/s/ John C. Phillips, Jr.*
John C. Phillips, Jr. (ID No. 110)
PHILLIPS GOLDMAN & SPENCE P.A.
1200 North Broom Street
Wilmington, Delaware  19806
Telephone:    302.655.4200
E-mail:  jcp@pgslaw.com

*Counsel for Defendant*
*AMVAC Chemical Corp.*

*/s/ Adam v. Orlacchio*
Adam V. Orlacchio (ID No. 5520)
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, Delaware  19801-4226
Telephone:   302.425.6431
E-mail:  orlacchio@blankrome.com

*Counsel for Defendants*
*Chiquita Brands International, Inc.; Chiquita*
*Brands, L.L.C.; Chiquita Fresh North*
*America, L.L.C.*