IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARQUÍNEZ *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 12-cv-695-RGA-SRF |
| ) | |
| DOLE FOOD COMPANY INC. *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

At Wilmington this **14th** day of **April, 2023**, the court having considered the parties' submissions regarding Luis Antonio Aguilar Marquínez, *et al.* ("Plaintiffs") Motion to Allocate in Whole or in Part the Court Appointed Expert Witness Costs ("Motion"),[1] (D.I. 419), IT IS HEREBY ORDERED that Plaintiffs' Motion is DENIED for the reasons discussed below:

1. **Background.**[2] This motion concerns the allocation of costs for a court appointed expert witness on Ecuadorian law. In *Chavez* and *Marquínez*, motions for summary judgment were filed in the mass toxic tort case by the participating Defendants[3] concerning the Ecuadorian

---

[1] The briefing for the pending Motion is as follows: Plaintiffs' Motion and opening brief (D.I. 419), Defendants' answering brief (D.I. 426), and Plaintiffs' reply brief (D.I. 429). In addition, the expert witness, Professor Ángel R. Oquendo, submitted a response to Plaintiffs' Motion. (D.I. 427)

[2] This case was consolidated with eight other cases pending in this district and was designated as lead on December 5, 2019. (D.I. 195; *see* No. 12-695-RGA-SRF; No. 12-696-RGA; No. 12-697-RGA-SRF; No. 12-698-RGA; No. 12-699-RGA; No. 12-700-RGA; No. 12-701-RGA; and No. 12-702-RGA) This case and *Chavez et al. v. Dole Food Company, Inc., et al*, No. 12-697-RGA-SRF are relevant to the present Motion as they concern the Ecuadorian Plaintiffs.

[3] Participating Defendants include: (1) Dole Food Co. Inc., Dole Fresh Fruit Co., Standard Fruit Company, and Standard Fruit and Steamship Company, who filed for summary judgment in *Chavez* (D.I. 333); (2) Dow Chemical Company, Occidental Chemical Corp., AMVAC Chemical Corp., and Shell Oil Co., who filed for summary judgment in *Marquínez* (D.I. 354); and (3) Chiquita Brands Int'l Inc., Chiquita Fresh N. Am. LLC, and Chiquita Brands LLC, who joined in the aforementioned summary judgment motions (D.I. 355). Defendant Del Monte Fresh Produce N.A. Inc. is not a participating Defendant for purposes of this Motion. (D.I. 426 at 1 n.1)

Plaintiffs who claim to have been injured as a result of alleged exposure to an agricultural chemical called dibromochloropropane ("DBCP") while working on banana farms. (D.I. 333; D.I. 354; *see* D.I. 1 at ¶¶ 5, 104–05) The Ecuadorian Plaintiffs filed a cross-motion for summary judgment. (D.I. 339) The summary judgment motions contained conflicting expert declarations regarding the application of Ecuadorian law. (D.I. 341; D.I. 356-1, Ex. B; D.I. 360-2, Ex. 2)

       2.     On August 5, 2021, the Honorable Richard G. Andrews ordered the parties to meet and confer and nominate an expert to assist the court in answering whether a protection action under Ecuadorian constitutional law is an appropriate mechanism for Plaintiffs' claims. (D.I. 383) The parties recommended Professor Ángel R. Oquendo. (D.I. 387) The court required a neutral expert to resolve the conflict between both sides' experts on (1) whether a plaintiff could bring a protection action for events that occurred prior to 2008, the date the Ecuadorian Constitution was adopted, and (2) whether Plaintiffs' claims could appropriately be brought as a protection action. (D.I. 388 at 2) The court appointed Professor Oquendo and tasked him "to opine on matters of Ecuadorian law relevant to the applicability of the Delaware Borrowing Statute." (D.I. 389 at ¶ 1)

       3.     The court ordered the parties to compensate Professor Oquendo as follows:

> Professor Oquendo shall be compensated for his services at his usual hourly rate. Others assisting him shall be compensated at their usual hourly rates. Professor Oquendo shall send itemized statements for services and expenses directly to counsel for the parties after the completion of his report, and he shall receive payment directly from counsel for the parties in a timely fashion. *The compensation and expenses of Professor Oquendo shall, unless otherwise ordered, be shared equally by the parties (that is, 50% by Plaintiffs and 50% by the relevant Defendants).* Any objections or disputes as to Professor Oquendo's compensation, costs, and/or expenses shall be presented to the Court in a timely application.

(*Id.* at ¶ 5 (emphasis added))

4.     On December 14, 2021, Professor Oquendo submitted his report. (D.I. 393) Defendants then desired to depose Professor Oquendo. (D.I. 396) On January 21, 2022, the court ordered that Defendants should bear one hundred percent of the cost for the deposition unless Plaintiffs questioned Professor Oquendo "more than a de minimis amount," in which Defendants could move to seek a proportionate contribution from the Plaintiffs.[4] (D.I. 398)

5.     More than eight months after issuing his expert report, Professor Oquendo was still owed Plaintiffs' half of his expert witness fees. Therefore, on August 19, 2022, the court issued a Show Cause Order requiring the Plaintiffs to demonstrate why they should not be sanctioned for withholding their fifty percent share. (D.I. 411) Plaintiffs' counsel responded that they had good cause to withhold payment because they intended to challenge Professor Oquendo's fees but did not want to do so until after his expert deposition so as not to risk biasing Professor Oquendo against Plaintiffs in offering his opinion on highly contested legal questions. (D.I. 414)

6.     Professor Oquendo's deposition took place on September 19, 2022. (D.I. 426, Ex. A) On September 30, 2022, the court held the Show Cause Hearing, and the Plaintiffs deposited their fifty percent share, which totaled $168,898.00, with the court. (D.I. 416; *see also* docket entry dated October 13, 2022) On October 14, 2022, the Plaintiffs filed the present Motion and the court discharged the Show Cause Order. (D.I. 418; D.I. 419)

---

[4] Defendants say the Plaintiffs spent more than a de minimus amount of time questioning the expert, about 18% of the deposition time, but Defendants have not moved for contribution from Plaintiffs towards the deposition fees charged by Professor Oquendo. (D.I. 426 at 5 n.7; *see* D.I. 398)

3

7.      **Legal Standard.** Pursuant to the Federal Rule of Evidence 706(c)(2), a court appointed expert witness "is entitled to a reasonable compensation, as set by the court. This compensation is payable . . . by the parties in the proportion and at the time that the court directs—and the compensation is then charged like other costs."

8.      Plaintiffs now move to shift the entire expense of the court appointed expert's report to the Defendants. Plaintiffs' rationale is that the Defendants were the "prime movers" creating the need for the expert's opinion because Defendants disputed whether Plaintiffs could bring a protection action. (D.I. 419 at 2–6) Plaintiffs contend that the expert supports their position, therefore, it was a needless expense for resolving an issue that should not have been challenged. (*Id.*) In addition, the Plaintiffs claim they are indigent, and the Defendants have greater resources, so it is not unreasonable for the Defendants to bear the full expense for the expert's report. (*Id.* at 4–5) Alternatively, Plaintiffs ask the court to reduce the fees charged by the expert. (*Id.* at 6–7) The court rejects Plaintiffs' arguments on all grounds as discussed, *infra*.

9.      **The Expert's Opinions Were Necessary to Assist the Court.** The Plaintiffs argue that the Defendants should bear the entire cost of Professor Oquendo's fees because the Defendants' litigation position, that the Plaintiffs' claims were time barred, *inter alia*, caused the need for the expert's report. (D.I. 419 at 2–6) Moreover, the ultimate opinions offered by the expert favored Plaintiffs' position on the disputed issues of Ecuadorian law. (*Id.*) Plaintiffs argue that shifting the cost is appropriate and tracks the rationale for the court's order that Defendants pay the full cost of the expert's deposition. (*Id.* at 3)

10.     The court is not persuaded by the Plaintiffs' argument that the Defendants should bear the entire cost because they unreasonably took a position that necessitated the court's retention of the expert. The case on which Plaintiffs rely does not support their position for cost-

4

shifting based on unfavorable outcome and instead supports the court's original equal apportionment. (*See* D.I. 419 at 5) *See Leesona Corp. v. Varta Batteries, Inc.*, 522 F. Supp. 1304, 1312 n.21 (S.D.N.Y. 1981) (noting that the court appointed expert was "paid in equal shares by plaintiff and defendant").

11. Plaintiffs' argument that Defendants caused the parties to incur an unnecessary expense for the expert fails to acknowledge that Plaintiffs moved for summary judgment in both the *Marquínez* and *Chavez* cases, thus, a conflict in application of Ecuadorian law was presented for which the court required an expert. The court needed to identify the applicable statute of limitations for Plaintiffs' claims under Ecuadorian law in order to apply the Delaware Borrowing Statute. Due to both sides' conflicting interpretation of Ecuadorian law, the court acted within its discretion under Rule 706 to appoint a neutral expert and apportion the expense between the parties.

12. Defendants complied with the court's Order assessing them with the total cost of the expert's deposition because Defendants noticed the deposition. (D.I. 410) Defendants' payment has no bearing on Plaintiffs' compliance with their obligations under the court's original order apportioning expenses for the expert's report.

13. Furthermore, Plaintiffs' argument that expert witness fees should be assessed against the side the opinion allegedly disfavors is unpersuasive and lacks any authority employing such a calculation based on hindsight. Professor Oquendo provided his expert opinion, and it remains for the court to determine how it affects the viability of the Ecuadorian Plaintiffs' claims.

14. **Plaintiffs Failed to Demonstrate that Payment of their Share of Fees for the Expert Would Pose an Undue Burden.** The Plaintiffs argue that they are "impecunious," so justice requires shifting costs to the Defendant corporations which "have far more resources to bear this expense." (D.I. 419 at 4–5) Plaintiffs briefly argue that the cost "plac[es] a substantial burden on Plaintiffs' counsel's resources to prosecute this litigation." (*Id.* at 6 n.3; *see also* D.I. 429 at 4) The court will not entertain arguments placed in a footnote nor will it infer that a financial hardship is present without supporting evidence. Plaintiffs have already deposited their fifty percent share of Professor Oquendo's fees with the court, so they have demonstrated their ability to pay their allocated share.

15. When the court entered an Order allocating the costs of the expert to be "shared equally by the parties," it left open the opportunity to raise "[a]ny objections or disputes as to Professor Oquendo's compensation . . . in a timely application." (D.I. 389 at ¶ 5) Plaintiffs did not voice concern that allocating them with an equal share of the expense would be unduly burdensome or constrain their ability to litigate their case. Further, Plaintiffs did not object to the allocation, nor did they ask to defer allocation until the expert issued his opinion. The Plaintiffs have long been on notice of the court's allocation of the fees. They chose to avoid paying their share until the court resorted to a Show Cause Order and finally ordered them to deposit their share with the court. Therefore, Plaintiffs' Motion to re-allocate the cost based on financial burden is unpersuasive.

16. The court also finds that Plaintiffs have failed to support their cost-shifting argument with binding authority from the Third Circuit. The cases cited by Plaintiffs are from courts outside of this circuit and do not address re-apportionment of costs for the court appointed expert once the court has ordered an equal allocation. (*See* D.I. 419 at 3–5) The cases that

Plaintiffs cite are distinguishable in that they involve court appointed medical experts to render opinions on injuries alleged by prisoners in civil rights actions. *See e.g., Claiborne v. Blauser*, 934 F.3d 885, 889 (9th Cir. 2019) (discussing Rule 706 in the context of a court appointed medical expert in a prisoner's civil rights action); *Ledford v. Sullivan*, 105 F.3d 354, 359–60 (7th Cir. 1997) (affirming the district court's decision denying the plaintiff's request to appoint a court expert to opine on the plaintiff's medical condition in a civil rights action); *McKinney v. Anderson*, 924 F.2d 1500, 1510–11 (9th Cir. 1991), *cert. granted, judgment vacated on other grounds*, 502 U.S. 903 (1991), *on remand, judgment reinstated*, 959 F.2d 853, 854 (9th Cir. 1992) (recommending that the district court appoint an expert witness to opine on the health effects and concentration levels of secondary cigarette smoke in the prisoner's civil rights action). These cases are inapplicable to the present situation because, in prisoner civil rights cases, medical experts are necessary for the indigent plaintiffs to satisfy their burden of proof on damages. Such is not the case here regarding Professor Oquendo's expert opinion on Ecuadorian law.

17. **The Court Finds the Expert Witness Fees are Reasonable.** Alternatively, the Plaintiffs move for a reduction of the fees billed by Professor Oquendo and his assistant, Claudia Schubert, because the hours billed for preparing the report are excessive and unreasonable. (D.I. 419 at 6–7) Additionally, Plaintiffs argue that the court should evaluate the expert's fees by the same standard it applies to the fees charged by a Special Master. (*Id.* at 7)

18. Fees billed by Special Masters bear no relationship to fees billed by a court appointed expert because Special Masters are not subject to Rule 706. It remains within the court's discretion to allocate costs for a court appointed expert. Moreover, the role of a Special Master is akin to that of a judicial officer not an expert witness. Plaintiffs' argument ignores the

distinction and lacks any supporting authority.

19.     Professor Oquendo and Schubert billed the parties $337,796 for approximately 432 hours of work during the months of October of 2021 through December of 2021, resulting in completion of a 30-page report. (D.I. 419, Ex. A; D.I. 393) The court asked Professor Oquendo to respond to Plaintiffs' Motion challenging his expert witness fees. (D.I. 424) In his response, Professor Oquendo explains that his report "delves deeper" than the report of Plaintiffs' expert in opining on the issues in the pending case. (D.I. 427 at 1) Professor Oquendo did not pull up the cases on both sides of the issue and decide between them. Rather, "[i]n pursuit of reliability for [the] assessment, [he and his assistant] stud[ied] the totality of [the issues] and develop[ed] an analytic scheme." (*Id.* at 2) In fact, Professor Oquendo could find no direct authority on point addressing the disputed issues for which he was retained. (D.I. 426, Ex. A at 133:21–134:17; 195:23–196:14 (discussing that the Constitutional Court has not spoken on whether a protection action could be retroactively applied to conduct that occurred before the adoption of the Ecuadorian Constitution)) Professor Oquendo states in his declaration that he worked on seven prior cases researching similar issues of Ecuadorian law, and in six of them he expended more hours than he did here. (D.I. 427 at 1)

20.     Plaintiffs questioned Professor Oquendo about the charges on his bill in a videoconference specifically for that purpose and, later, at his deposition. (*Id.* at 4–5; D.I. 426, Ex. A at 211:11–24) In their Motion, Plaintiffs fail to mention their questioning of Professor Oquendo on either occasion. Plaintiffs fail to substantively respond to Professor Oquendo's explanation in defense of his fees. Plaintiffs argue generally that the hours expended on the expert report were unreasonable, but they provide no facts to support their position. Plaintiffs do not suggest any analytic framework for auditing the reasonableness of the number of hours billed

nor have they provided a declaration attesting to the hours reasonably necessary to provide the expert report ordered by the court. Plaintiffs simply provide a comparison of the hours billed by Professor Oquendo's team with the number of hours billed by the Plaintiffs' expert, Dr. Maria Miño. (D.I. 419 at 6) Dr. Miño billed a total of $7,500 for 25 hours of work to complete a 10-page report. (*Id.*) A superficial comparison of Plaintiffs' expert's bill to the court appointed expert's bill is a thin basis on which to avoid payment of their allocated share which the court appropriately ordered in the exercise of its discretion.

21. Plaintiffs complain that Professor Oquendo addressed more issues than were necessary compared to the issues addressed by Plaintiffs' expert Dr. Miño. (*Id.*) The argument misses the point that Professor Oquendo was appointed by the court and his report conforms to the scope of duties set by the court. Therefore, the court finds that the Plaintiffs have failed to demonstrate that the number of hours billed by Professor Oquendo and Schubert were unreasonable, and therefore, denies Plaintiffs' Motion to reduce Professor Oquendo's bill for expert witness fees.

22. **Conclusion.** For the foregoing reasons, Plaintiffs' Motion is DENIED. (D.I. 419) An Order consistent with this Memorandum Opinion shall issue. Upon the expiration of the deadline for objections, if any, or upon further Order of the court, the amount of $168,898.00 shall be released by the court from the funds on deposit in full and final satisfaction of Plaintiffs' share of Professor Oquendo's fees.

23. This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum

Opinion. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

24. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE