IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LUIS ANTONIO AGUILAR MARQUÍNEZ, *et al.*,

    Plaintiffs,

v.

DOLE FOOD COMPANY INC., *et al.*,

    Defendants.

Civil Action No. 12-695-RGA (consolidated)

## MEMORANDUM OPINION

Andrew C. Dalton, DALTON & ASSOCIATES P.A., Wilmington, DE; Scott M. Hendler, HENDLER FLORES LAW, Austin, TX,

    Attorneys for Plaintiffs.

Jennifer C. Wasson, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Ryan D. Stottmann, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE; Adam V. Orlacchio, BLANK ROME LLP, Wilmington, DE; Kelly E. Farnan, RICHARDS, LAYTON & FINGER, Wilmington, DE; John C. Phillips, Jr., PHILLIPS GOLDMAN & SPENCE P.A., Wilmington, DE; Andrea E. Neuman, Mary Beth Maloney, GIBSON, DUNN & CRUTCHER LLP, New York, NY; William E. Thomson, GIBSON, DUNN & CRUTCHER LLP, Los Angeles, CA; Michael L. Brem, SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP, Houston, TX,

    Attorneys for Defendants.

January 24, 2024

/s/ Richard G. Andrews

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Defendants' motion for summary judgment as to the Ecuadorian Plaintiffs. (D.I. 430). The parties have fully briefed the motion. (D.I. 431, 433, 436, 437). For the reasons stated below, Defendants' motion is denied.

## I. BACKGROUND

This is a mass tort action in which about sixty-five Ecuadorian Plaintiffs[1] allege that Defendants exposed them to a toxic pesticide called dibromochloropropane ("DBCP") while they were working on banana plantations in Ecuador in the 1960s through 1980s. (D.I. 1 ¶¶ 5–7, 41–42, 117–20). After the parties submitted conflicting expert declarations on the contents of Ecuadorian law (D.I. 341, D.I. 356-1, Ex. B, D.I. 360-2, Ex. 2), I ordered the parties to nominate one or more experts to assist me with answering whether an acción de protección (hereinafter, "protective action") under Ecuadorian constitutional law is an appropriate mechanism for Plaintiffs' claims. (D.I. 383). The parties nominated only one expert, Professor Ángel R. Oquendo. (*See* D.I. 387, 389). I asked Prof. Oquendo "to opine on matters of Ecuadorian law relevant to the applicability of the Delaware Borrowing Statute." (D.I. 389).

## II. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[1] (D.I. 262 at 4). There are also groups of Plaintiffs from two other countries.

323 (1986). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citation omitted). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

### B. Determining Foreign Law

"In determining foreign law," I "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. "The court's determination must be treated as a ruling on a question of law." *Id.*

## III.  DISCUSSION

I previously held that Ecuadorian law governs Plaintiffs' claims, with the exception of their negligence claims. (D.I. 324 at 3–10). I also held that the Delaware Borrowing Statute applies to all of Plaintiffs' claims. (*Id.* at 10–12). The Delaware Borrowing Statute provides:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply.

10 Del. C. § 8121.

To apply the Delaware Borrowing Statute, I asked Prof. Oquendo to opine on two questions: (1) whether someone may bring a protective action concerning events that occurred pre-2008, and (2) whether Plaintiffs' claims could appropriately be brought as a protective action. (*See* D.I. 388). Prof. Oquendo submitted a report. (D.I. 393). He testified at a deposition. (D.I. 432-2, Ex. 2, cited as "Oquendo Tr. at ___.").

Defendants argue they are entitled to summary judgment because the Delaware Borrowing Statute requires me to apply Ecuador's four-year limitations period for negligence claims. Defendants contend that the limitations period for an Ecuadorian protective action is not relevant because Plaintiffs' negligence claim is more analogous to an Ecuadorian negligence

4

claim than to an Ecuadorian protective action. Defendants further argue that Plaintiffs would not be able to pursue a protective action in Ecuador.

Plaintiffs argue that their negligence claim is not time barred because Delaware's limitations period applies. Plaintiffs contend that their Complaint qualifies as an Ecuadorian protective action, which is not subject to a limitations period. (D.I. 393 at 11–13). They therefore argue that Delaware's limitations period is shorter. Alternatively, Plaintiffs argue that even if a negligence claim under Ecuadorian law, rather than a protective action, were a more analogous comparator to the negligence claim in the Complaint, their claim would not be time barred because Delaware's limitations period is still shorter.

### A. Retroactivity

The Ecuadorian constitutional provision that authorizes protective actions dates back to 2008. (*See* D.I. 341 at 3 of 11; D.I. 351-1 at 2 of 175; D.I. 393 at 8). Prof. Oquendo concluded that it is retroactive, and someone may bring a protective action concerning events that occurred pre-2008. (D.I. 393 at 3, 5–11). The parties do not object to this conclusion and the reasoning behind it. I do not see any error in Prof. Oquendo's analysis and find that Plaintiffs may bring a claim concerning events that occurred before 2008.

### B. Analogous Action

Defendants argue that I should only consider the statute of limitations for an Ecuadorian negligence claim, not any other Ecuadorian claims. (D.I. 431 at 8–9). Defendants contend that Plaintiffs' negligence claim is "most analogous" to a negligence claim under Ecuadorian law. (*Id.* at 1–2). Defendants argue that a protective action, which is not subject to a statute of limitations, "bears little resemblance" to negligence claims in Ecuador and Delaware. (*Id.* at 10). Defendants contend that a protective action has different "prerequisites, elements, and remedies"

5

than a negligence claim. (*Id.*). For example, Defendants note that a violation of the standard of care is not an element of a protective action. (*Id.* at 11–12 (citing Oquendo Tr. at 100:12–15); *see also* D.I. 436 at 4). Defendants also argue that compensatory damages are not available in protective actions, citing to case law from the Constitutional Court of Ecuador. (D.I. 431 at 12–13; *see also* D.I. 436 at 5–6).

Defendants argue that Ecuador's four-year statute of limitations controls. They reason that an Ecuadorian negligence action is identical to Plaintiffs' negligence claim, and the applicable four-year statute of limitations is shorter than Delaware's limitations period. (D.I. 431 at 8–10; *see also* D.I. 436 at 2). Defendants note that a putative class action would not toll the time limit in Ecuador. (D.I. 431 at 9). Delaware's limitations period for personal injury actions is two years and may be extended through class action tolling. (*Id.*).[2] Defendants therefore argue that Plaintiffs' negligence claim is time barred. (*Id.* at 10).

Defendants further argue that a protective action will not lie if Plaintiffs have a viable but time-barred negligence action under Ecuadorian law. (D.I. 431 at 15–16 (citing Oquendo Tr. at 38:9–11)). Defendants contend that protective actions "are intended to address violations of constitutional rights for which there are no other remedies." (*Id.* at 16). Defendants rely on their expert, Dr. Santiago Velázquez Coello, to argue that protective actions in Ecuador are generally unavailable for employment cases, and that claims for workplace injuries typically proceed as civil actions. (*Id.* (citing D.I. 432-1 at 14–16); *see also* D.I. 436 at 6 (citing D.I. 432-1 at 16)).

---

[2] In fact, after the Delaware Supreme Court held in this case that "the dismissal of Plaintiffs' claims in 1995 by the U.S. District Court for the Southern District of Texas did not end the tolling of the Delaware statute of limitations on personal injury actions," the Third Circuit vacated a summary judgment order that I had entered in Defendants' favor. *See Marquinez v. Dole Food Co.*, 724 F. App'x 131, 132 (3d Cir. 2018) (citations omitted).

Defendants also question Prof. Oquendo's conclusion that "a negligence action would have been inadequate and inefficacious for purposes of the claims and rights invoked," arguing that his opinion is unsupported by facts or law. (D.I. 431 at 17 (quoting Oquendo Tr. at 11:23–12:1)). Defendants contend that Prof. Oquendo's testimony shows he did not look at what an Ecuadorian civil action entails. (*Id.*). Defendants argue, "Prof. Oquendo ultimately, and contrary to Ecuadorian law, argued that simply because the facts pled in the Complaints could support an invocation of certain Ecuadorian constitutional rights, a Protective Action would lie despite the fact that Plaintiffs had adequately pled a negligence claim and sought only money damages." (*Id.* at 18; *see also* D.I. 436 at 7).

Plaintiffs rely on Prof. Oquendo to argue that their negligence claim is not subject to a limitations period because the Complaint qualifies as a protective action under Ecuadorian law. (D.I. 433 at 7 (citing Oquendo Tr. at 157:6–10)). Plaintiffs therefore contend that Delaware's limitations period applies to their claim. (*Id.* at 6). Plaintiffs contend that their Complaint qualifies as a protective action because their "allegations detail the deprivation of Plaintiffs' rights to health, to a safe working environment, and to bodily integrity, . . . as well as Plaintiffs' vulnerable position and reliance on Defendants to provide health and safety protection such as warnings and protective clothing and equipment." (*Id.* at 10 (citations omitted); *see also* D.I. 437 at 4). Prof. Oquendo opined that Plaintiffs alleged violations that fall under two potential kinds of constitutional claims against non-public entities—acts "causing 'a grave' injury" and acts "impacting them in a position 'of subordination or defenselessness.'" (D.I. 433 at 7 (quoting D.I. 393 at 16)). Plaintiffs also rely on Prof. Oquendo to argue that compensatory damages are available in protective actions. (*Id.* at 12; *see also* D.I. 437 at 7).

Plaintiffs further argue that the Complaint qualifies as a protective action even though they did not expressly plead such an action. (D.I. 433 at 13). Relying on Prof. Oquendo, they contend that labels are not controlling. (*Id.* (citing (Oquendo Tr. at 20:8–11); *see also* D.I. 437 at 5). Plaintiffs argue that "federal pleading rules" did not require them to plead an Ecuadorian constitutional claim. (D.I. 433 at 13–14). Plaintiffs additionally contend that the absence of an on-point decision from the Constitutional Court of Ecuador is "not surprising" because Ecuador's current Constitution only dates back to 2008. (*Id.* at 9).

Plaintiffs also rely on Prof. Oquendo's opinion that their Complaint "does not fall within the structure of a negligence suit" in Ecuador. (*Id.* at 10 (quoting Oquendo Tr. at 13:20–23); *see also* D.I. 437 at 4). Prof. Oquendo based his conclusion on "the claims expressed, the rights sought to be vindicated, [and] the allegations made." (D.I. 433 at 8 (quoting Oquendo Tr. at 11:15–19)). Plaintiffs disagree with Defendants' focus on their negligence claim, arguing that I should consider all allegations in the Complaint for the purpose of this motion. (*Id.* at 11–12; *see also* D.I. 437 at 3).

In response, Defendants argue that Plaintiffs' negligence claim is the only relevant claim for the purpose of this motion. Defendants contend that Plaintiffs have previously stated that negligence is their primary claim. (D.I. 436 at 3). The negligence claim, Defendants argue, is the only one I ruled is subject to Delaware law, so no further analysis is needed for the non-negligence claims, which are subject to the Ecuadorian four-year statute of limitations. (*Id.* at 3–4). Defendants contend that Plaintiffs have previously ignored some of the other claims and called other claims "secondary" and "ancillary." (*Id.* at 3).

8

### 1. "Most Analogous" Claim

I am unpersuaded by Defendants' contention that I must only consider the "most analogous" Ecuadorian claim. (*See, e.g.*, D.I. 431 at 1–2; D.I. 436 at 2). Defendants do not cite to any authority for the proposition that only one analogous claim may be considered. Defendants rely (D.I. 431 at 1–2) on an earlier order in this case, where I stated, "Generally, the Court looks to the statute of limitations applicable to the analogous Ecuadorian claim to answer this question." (D.I. 388). My order cited to *Pallano v. AES Corp.*, 2011 WL 2803365, at *4 n.37 (Del. Super. Ct. July 15, 2011). *Pallano* does not support Defendants' argument. In *Pallano*, a court-appointed expert analyzed various areas of Dominican law, including the civil code, penal code, and an environmental statute. (*Id.* at *4–5). The expert concluded that the penal and environmental limitations periods did not apply to the plaintiffs' claims. The court did not engage in a "most analogous" analysis. (*Id.*). Prof. Oquendo concluded that the limitations period for an Ecuadorian protective action applies to Plaintiffs' claims. (*See, e.g.*, D.I. 393 at 11–13). His report, like the one in *Pallano*, does not engage in a "most analogous" analysis. (*See generally id.*). I therefore reject Defendants' attempt to limit the analysis to the "most analogous" claim only.

For the same reasons, I am unpersuaded by Defendants' contention that Prof. Oquendo failed to compare whether Plaintiffs' claims are more like negligence, or more like a protective action. (D.I. 431 at 11). Prof. Oquendo complied with my order by examining whether Plaintiffs' claims qualify as an Ecuadorian negligence action and whether Plaintiffs' claims qualify as a protective action. (*See* Oquendo Tr. at 11:4–19). I did not order Prof. Oquendo to opine on which Ecuadorian claim is "most analogous" to Plaintiffs' claims.

9

## 2. Claim Elements

I am not persuaded by Defendants' argument that only the negligence claim, rather than the Complaint as a whole, is relevant for the purpose of this motion.[3] Prof. Oquendo opined that Plaintiffs have invoked Ecuadorian constitutional rights in their Complaint. (D.I. 393 at 13–17). He also noted that he was not surprised Plaintiffs' pleadings are not labeled as a protective action. Prof. Oquendo pointed out that Plaintiffs are "fighting the case in the United States," and that labeling the Complaint as a protective action "would have created a fair amount of confusion." (Oquendo Tr. at 112:22–113:5, 154:15–20).[4] Prof. Oquendo additionally explained that even if an Ecuadorian party's "pleadings are defectively formulated, the Court has the power to improve on them in order to open the door for the litigation." (*Id.* at 171:6–10). In other words, an Ecuadorian court may "probe" to determine whether a protective action has been invoked. (*Id.* at 170:18–171:5). I do not see any error in Prof. Oquendo's reasoning about what an Ecuadorian court would do. But I do not have to rely upon that analysis. I note that the Complaint incorporates all its allegations by reference into the negligence claim. (*See* D.I. 1 ¶ 130). I also note that the Federal Rules of Civil Procedure do not require Plaintiffs to explicitly set out an Ecuadorian protective action as their legal theory. *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) ("Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief' . . . they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."). I find that

---

[3] To support this contention, Defendants again rely on a "most analogous" argument (*see* D.I. 436 at 2–4), which I reject.

[4] I too am not surprised, although for different reasons. The complaints in this case were filed in 2012 by American lawyers who probably were not paying close attention to recent developments in Ecuadorian constitutional law.

it is proper to view the Complaint as a whole to determine whether Plaintiffs have sufficiently invoked a protective action.

I accept Prof. Oquendo's conclusion that Plaintiffs' Complaint, whether viewed as a whole or viewed only by reference to the negligence claim, qualifies as an Ecuadorian protective action. (D.I. 393 at 2, 13). Prof. Oquendo testified that the focus of the relevant comparative analysis is the right, not the remedy. (Oquendo Tr. at 58:2–8). To qualify as a protective action, a complaint must invoke constitutional rights, among other elements. (*Id.* at 15:3–25; *see also* D.I. 393 at 14–17). Prof. Oquendo focused much of his reasoning on the structure of Plaintiffs' Complaint and emphasized that it is necessary "to look at the full case" to determine whether constitutional rights have been invoked. (*See* Oquendo Tr. at 54:3–55:7, 157:14–158:5). In his view, Plaintiffs' Complaint—viewed as a whole—qualifies as a protective action. (D.I. 393 at 2–3; *see also* Oquendo Tr. at 167:3–13). He stated that Plaintiffs have invoked several constitutional rights, including the right to work, the right to health, the right to a healthy environment, and the right to welfare. (Oquendo Tr. at 44:23–45:16, 78:21–79:14, 161:2–11; *see also* D.I. 393 at 14–17).[5] These allegations, Prof. Oquendo explained, fall under either of two categories of constitutional claims: (1) actions "causing 'a grave' injury" and (2) actions "impacting [Plaintiffs] in a position 'of subordination or defenselessness.'" (D.I. 393 at 16 (citations omitted)). Defendants do not substantively address Prof. Oquendo's conclusion that a

---

[5] Prof. Oquendo defined these rights during his deposition. The right to work, for example, may include "the right to a government commitment to employment, and dignified employment for the population as a whole." (Oquendo Tr. at 82:9–15). The right to a healthy environment, on the other hand, is "the right to a healthy environment in your own property, your own surroundings; but also, it's a broader right that belongs to the collective." (*Id.* at 85:11–17).

negligence action does not capture these constitutional rights. (*See, e.g.*, D.I. 436 at 6).[6] Defendants contend that a protective action is dissimilar because it does not require a showing of causation or failure to exercise ordinary care (D.I. 436 at 4), but they do not address Prof. Oquendo's opinion on the differences between Plaintiffs' Complaint and an Ecuadorian negligence action. I am not persuaded by Defendants' arguments.

I therefore do not see any error in Prof. Oquendo's opinion that Plaintiffs' Complaint qualifies as a protective action, and I accept that conclusion.

### 3. Remedies

Defendants argue that a protective action is not analogous to Plaintiffs' negligence claim because the two involve different remedies. For two reasons, I reject the argument. First, Prof. Oquendo stated that the remedy sought does not determine whether a plaintiff's claim should proceed as a protective action or as a civil action. (Oquendo Tr. at 77:4–7). Second, Prof. Oquendo testified that compensatory damages are available in protective actions. (*Id.* at 30:9–31:9, 99:8–15, 103:15–24; *see also* D.I. 393 at 18–19).

Defendants dispute Prof. Oquendo's second point by relying on *Clinica La Primavera*, a 2021 decision by the Constitutional Court of Ecuador. Defendants argue that compensatory damages are unavailable in protective actions because the court in *Clinica La Primavera* stated that "the amount and form of reparation requested correspond to processes that are outside constitutional justice, such as civil action for damages." (D.I. 431 at 12–14 (quoting D.I. 432-2, Ex. 3, ¶ 166)). I do not find, however, that the reasoning in *Clinica La Primavera* is inconsistent with Prof. Oquendo's report and testimony.

---

[6] Defendants' reliance on a 2020 Constitutional Court of Ecuador decision in a labor dispute (D.I. 436 at 7–8) is similarly unpersuasive given that Prof. Oquendo testified that Plaintiffs' claims go beyond those of a civil or labor action.

12

First, the Constitutional Court's reasoning in *Clinica La Primavera* suggests that compensatory damages are in fact available in protective actions. The court noted that judges deciding violations of constitutional rights "must declare and order the corresponding comprehensive reparation." (D.I. 432-2, Ex. 3, ¶ 160). Citing to the Organic Law of Jurisdictional Guarantees and Constitutional Control, the court stated that comprehensive reparation may include both "legal restitution" and "financial or monetary compensation." (*Id.* ¶ 161). Second, the plaintiffs in *La Clinica Primavera* alleged violations of several constitutional rights—the right to health, the right to life, and the right to "life project."[7] (*Id.* ¶ 2). The court's finding that "the amount and form of reparation requested correspond to processes that are outside constitutional justice" was limited to a discussion of the life project claim. (*Id.* ¶ 166 ("[T]he Court considers that a reparation cannot be ordered in view of his life project.")). The court noted that "the concept of 'life project' is not an autonomous right." (*Id.* ¶ 99). Based on the Constitutional Court's reasoning, I find that the present case is distinguishable. I am

---

[7] I think "life project" (which is a translation from Spanish) refers to what I would understand to be "life projection." In any event, I think it refers to harm that will occur in the future.

> [T]he life project has to do with everything that [the plaintiffs' child] could have done in his life, if at Clínica La Primavera they had foreseen the need for a cesarean section, if they had had the necessary equipment to address the respiratory distress of [the child] who was a newborn, if the Clinic had provided an ambulance to transfer him, and if they had administered Fentanyl correctly. Today [he] has cerebral palsy and motor difficulty, which has led us to seek medical attention in Chile. This damage could have been foreseen and avoided. [He] could have had a full life, without any limitations. This is the damage to the life project.

D.I. 432-2, Ex. 3, ¶ 57.3.

therefore not persuaded by Defendants' reliance on *Clinica La Primavera*, and I agree with Prof. Oquendo's reasoning on compensatory damages.

### 4. Adequacy of Negligence Action

I am also unpersuaded by Defendants' argument that the limitations period for a protective action is unavailable because Plaintiffs could proceed with a negligence suit in Ecuador. Prof. Oquendo opined that Plaintiffs' claims would be treated as a protective action, and not as a negligence action, in Ecuador. (Oquendo Tr. at 11:4–18, 112:2–10; *see also* D.I. 393 at 19–29). Defendants argue, however, that Prof. Oquendo did not determine whether Plaintiffs have a viable negligence claim. Defendants contend that when asked which elements of a negligence claim are missing in Plaintiffs' Complaint, Prof. Oquendo testified that he did not "think this was part of my task to decide whether a negligence action would lie." (Oquendo Tr. at 123:10–14). Defendants' argument omits the remainder of Prof. Oquendo's response. He testified that he researched a similar, but distinct, question: "whether a civil action generally, an ordinary action, would be adequate and efficacious for the rights sought to be vindicated in this case." (*Id.* at 123:14–19).

Defendants also contend that Prof. Oquendo merely focused on remedies when explaining why a negligence action would be inadequate. Prof. Oquendo's testimony, however, shows that he focused on the rights invoked as well. Prof. Oquendo testified that he analyzed whether Plaintiffs' claims could be treated as a negligence action (*id.* at 114:20–22) and concluded that such an action would not be adequate (D.I. 393 at 3, 19–29) because Plaintiffs' Complaint invokes constitutional rights. As Prof. Oquendo testified, "there is no going back" once an Ecuadorian court determines that constitutional rights have been invoked—if a party can

14

substantiate their allegations, then "[t]he case must proceed as a protection suit." (Oquendo Tr. at 146:15–147:25). I do not see any error in this line of Prof. Oquendo's reasoning.

For these reasons, I find that Plaintiffs' claims are analogous to an Ecuadorian protective action. Because a protective action is not subject to a statute of limitations (D.I. 393 at 11–13), Delaware's limitations period for a negligence claim is shorter. The Delaware Borrowing Statute thus dictates that Delaware's limitations period must govern Plaintiffs' negligence claim. I therefore find that Plaintiffs' negligence claim is not time barred.

### C. Delaware Tolling Principles

Plaintiffs argue that even if an Ecuadorian negligence claim were more analogous to their claims than an Ecuadorian protective action, their negligence claim should not be time barred. (D.I. 433 at 17). Plaintiffs contend that Delaware courts only consider judicial doctrines such as tolling or accrual principles after comparing two limitations periods. (*Id.* at 18). Plaintiffs therefore argue that Delaware's two-year limitations period would apply because it is shorter than Ecuador's four-year limit for negligence claims. (*Id.*).

Defendants argue that I must consider tolling rules when determining whether Ecuador's or Delaware's limitations period is shorter. (D.I. 436 at 8). Defendants contend that "rules governing accrual and tolling are included in limitations periods comparisons under the Borrowing Statute." (*Id.* (citations omitted)).

I find it unnecessary to resolve the parties' dispute over Delaware's tolling rules. I have already found that an Ecuadorian protective action is analogous to Plaintiffs' claims, that Delaware's limitations period is shorter than the limitations period for the protective action, and that Plaintiffs' claims are not time barred under the Delaware Borrowing Statute. A resolution of the tolling issue would not affect this conclusion.

### D. Amendment of Pleadings

Defendants contend that Plaintiffs should be required to move for leave to file an amended complaint if I find that their claims are not time barred. (D.I. 431 at 19–20). This argument is unpersuasive. Although I have found that Plaintiffs' claim is analogous to an Ecuadorian protective action for the purpose of applying the Delaware Borrowing Statute, Plaintiffs are nevertheless pursuing a negligence claim in a Delaware court. They are not pursuing a protective action in Ecuador. I find it unnecessary to require Plaintiffs to move for leave to amend their pleadings at this stage.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is DENIED. An appropriate order will issue.