IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LUIS ANTONIO AGUILAR MARQUINEZ, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 12-695-RGA-SRF |
| v. | ) ) ) | (Consolidated with Civil Action Nos. 12-696, 12-697, 12-698, 12-699, 12-700, 12-701, 12-702) |
| DOLE FOOD COMPANY, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM ORDER**

At Wilmington this **12th** day of **June, 2025**, the court having considered the parties'

submissions on Plaintiffs' motion to compel discovery and the motion for a protective order filed

by Dole Food Company, Inc., Dole Fresh Fruit Co., Standard Fruit Company, and Standard Fruit

and Steamship Company (collectively, "Dole"), (D.I. 627; D.I. 628; D.I. 629; D.I. 639; D.I. 640;

D.I. 641; D.I. 642), IT IS ORDERED that the parties' joint motion for a teleconference to

resolve discovery disputes (D.I. 618) is addressed as follows:

**1. Background.** In the early 1990s, Dole initiated a voluntary settlement program (the

"Settlement Program") for Latin American farm workers in Costa Rica, Nicaragua, and

Honduras who worked on banana plantations and were exposed to the pesticide 1, 2, dibromo 3,

chloropropane ("DBCP") during their employment. (D.I. 629, Ex. 1 at 102:12-22, 109:16-24,

116:14-24) Dole invited past and present employees to apply for the Settlement Program and

verified whether the program participants worked on a Dole-affiliated banana plantation during

the years Dole used DBCP. (*Id.*, Ex. 1 at 112:10-23) Qualified participants with a history of

DBCP exposure were then referred for evaluation by outside medical professionals who assessed

whether the participants suffered DBCP-related adverse health effects. Assessments included

medical questionnaires and lab tests. (*Id.*, Ex. 1 at 111:6-112:8, 134:6-135:25) Program

participants who exhibited evidence of adverse health effects were compensated by Dole in

exchange for a waiver of the right to sue. (D.I. 627 at 1)

2.   Farmworkers claiming they were injured by DBCP exposure later brought suit in

Hawaii state court ("*Patrickson*"). In August of 2019, the plaintiffs in *Patrickson* served

discovery requests on Dole seeking the production of data from the Settlement Program (the

"Settlement Program Data"), among other things. (D.I. 629, Ex. 2) Dole objected to the requests

on several grounds, including because they sought the health information of non-parties that was

protected under the Hawaii constitution, the attorney-client privilege, and the work product

doctrine. (*Id.*)

3.   In late 2019, Plaintiffs served Dole with requests for production of the Settlement

Program Data in the instant case that mirrored the discovery requests served in *Patrickson*. (D.I.

627, Ex. A) Dole objected to the production, reasoning that it had already responded to the same

request in *Patrickson*. (*Id.*, Ex. A at 6) Dole also raised objections based on the attorney-client

privilege and the work product doctrine. (*Id.*)

4.   On February 19, 2020, the *Patrickson* court held a hearing on a motion to compel

Dole to produce the Settlement Program Data. (D.I. 642, Ex. A) The *Patrickson* court

subsequently entered an order on March 24, 2020 granting-in-part the plaintiffs' motion to

compel the production of the Settlement Program Data. (D.I. 629, Ex. 3) Specifically, the

*Patrickson* court ordered Dole to produce "all medical data, demographic data and any

information collected from individual participants pursuant to the settlement program and as to

any criteria used in making settlements." (*Id.*) The March 24, 2020 order specified that

"[a]nyone who is provided access to these documents, including but not limited to Dr. Michael Freeman (Plaintiffs' epidemiologist), must sign the protective order." (*Id.*)

5.   The protective order referenced in the *Patrickson* court's March 24, 2020 order was entered on December 27, 2019. (*Id.*, Ex. 3; Ex. 6) It requires recipients of confidential material to sign an acknowledgement "[b]efore being given access to Confidential Material[.]" (*Id.*, Ex. 6 at ¶ 7) The protective order further provides that confidential material "shall be treated as confidential and used . . . for litigation purposes only" in *Patrickson* and in the instant litigation, among other related cases. (*Id.*, Ex. 6 at ¶ 4)

6.   In response to Dole's motion for reconsideration, the *Patrickson* court issued an amended order on July 2, 2020 requiring the production of the same Settlement Program Data, but imposing additional protections regarding the production of the Data. (*Id.*, Ex. 4) Under the amended order, anyone receiving access was required to sign the protective order and return all Settlement Program Data to Dole upon final disposition of the case. (*Id.*)

7.   Neither Plaintiffs nor Dole timely pursued corresponding relief in this court after Dole was ordered to produce the Settlement Program Data in *Patrickson*. Although Plaintiffs' discovery requests in this case sought the same information, Plaintiffs did not move to compel the production of the Settlement Program Data here until they filed the instant motion five years later. Similarly, Dole did not supplement its responses and objections to the discovery requests in this case under Rule 26(e) following the *Patrickson* court's order. Instead, Dole rested on its prior objection that the requests were "duplicative of the document requests Plaintiffs' counsel propounded on Dole in . . . *Patrickson* . . . and to which Dole has provided responses." (D.I. 627, Ex. A at 6)

3

**8.** On March 28, 2025, Plaintiffs served the expert reports of Dr. Freeman in the instant action. (*See, e.g.*, D.I. 629, Ex. 5) Dr. Freeman's reports discuss the Settlement Program Data, which was never produced in this case. (*Id.*) Not all recipients of Dr. Freeman's reports were signatories to the protective order in *Patrickson*. (*Id.* at ¶¶ 10-15)

**9.** Dole sent a letter to Plaintiffs' counsel on April 1, 2025 advising that Dr. Freeman's reports "impermissibly disclose Dole's confidential settlement program data" and "asking all recipients of Freeman's reports to destroy all copies of the reports and serve amended reports that remove all references to Dole's settlement program data and documents." (*Id.*, Ex. 7) In response, Plaintiffs suggested that non-signatories to the protective order in *Patrickson* should sign the protective order acknowledgement to resolve the issue. (*Id.* at ¶¶ 12, 15)

**10.** Plaintiffs now move to compel the production of the Settlement Program Data in this case, and Dole cross-moves for a protective order to prevent the production of confidential Settlement Program Data and preclude Plaintiffs and their experts from referencing that Data. (D.I. 618)

**11. Legal Standard.** Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information within the scope of Rule 26(b)(1) need not be admissible in evidence to be discoverable. *Id.*

**12.** A motion for a protective order is governed by Federal Rule of Civil Procedure 26(c), which provides that "for good cause," the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c).  Rule 26(c) places the burden of persuasion on the party seeking the protective order, who must show good cause by demonstrating, with specificity, a particular need for protection and that absent the protective order, that the movant will suffer a "clearly defined and serious injury." *See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (internal quotation marks and citations omitted); *see also AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, C.A. No. 17-1065-MSG, 2018 WL 2337133, at *1 (D. Del. May 23, 2018).

**13. *Dole's motion for a protective order against the production of the Settlement Program Data is DENIED without prejudice.*** Dole seeks a protective order to prevent the production of the Settlement Program Data in this case and to preclude Plaintiffs and their experts from referencing the Settlement Program Data.  Motions for a protective order are governed by Rule 26(c), which places the burden of persuasion on the party seeking the protective order to show good cause by demonstrating, with specificity, a particular need for protection and that absent the protective order, that the movant will suffer a "clearly defined and serious injury." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (internal quotation marks and citations omitted).  Dole fails to address Rule 26(c) or the good cause standard in its moving submission. (D.I. 628); *see State Farm Fire & Cas. Co. v. Nokes*, 263 F.R.D. 518, 521 (N.D. Ind. 2009) (denying motion for protective order where the plaintiff failed to carry its burden to show good cause).

**14.** Dole had an opportunity to seek protections against the production of Settlement Program Data in this case after the *Patrickson* court compelled its production. However, Dole failed to supplement its discovery responses under Rule 26(e) after the *Patrickson* court's order to clarify why it would not produce the Settlement Program Data in this case. Instead, Dole maintained its discovery responses and objections that predated the *Patrickson* court's order. In pertinent part, Dole objected to the production of the Settlement Program Data "on the grounds that this request is duplicative of the document requests Plaintiffs' counsel propounded on Dole in the [*Patrickson*] case . . ., and to which Dole has provided responses." (D.I. 627, Ex. A at 6) After Dole produced the Settlement Program Data in *Patrickson*, these discovery responses left the door open to the production of the same discovery in this case.

**15.** Dole argues that a protective order is necessary because the information disclosed in Dr. Freeman's expert report is subject to the attorney-client privilege and work product protection. (D.I. 628 at 3-4) There is no dispute that the Settlement Program Data was already disclosed in *Patrickson* after the court determined that "medical data, demographic data and any information collected from individual participants pursuant to the settlement program" was not privileged. (D.I. 629, Ex. 4; D.I. 642, Ex. A at 57:4-13) Although Dole's disclosure pursuant to the *Patrickson* order does not constitute a privilege waiver, *see Swirlate IP LLC v. Quantela, Inc.*, C.A. No. 22-235-CFC, 2024 WL 3967685, at *8 (D. Del. Aug. 28, 2024), the court's reasoning in *Patrickson* rejecting similar arguments is persuasive. (D.I. 642, Ex. A)

**16.** In *Patrickson*, both the parties and the court drew a distinction between medical or demographic data obtained via the Settlement Program and information related to the settlement itself. (*See, e.g., id.*, Ex. A at 38:2-6, 40:2-12, 42:13-23, 56:15-57:13) The *Patrickson* court granted the motion to compel "the production of data, health data, demographic data, and any

6

information collected pursuant to this settlement program[,]" and the criteria used in making settlements. (*Id.*, Ex. A at 57:10-13) However, the court expressly carved out personal identifying information, offers to settle, or communications regarding settlement offers. (*Id.*, Ex. A at 57:7-9; D.I. 629, Ex. 4)

**17.** The distinction drawn in *Patrickson* between underlying facts and settlement communications is consistent with case authority governing the application of the attorney-client privilege and work product protection. The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts[.]" *Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981). Similarly, "[u]nderlying facts are not protected by the work product doctrine." *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 422 (D.N.J. 2009). On this record, Dole has not met its burden to show that the Settlement Program Data produced in *Patrickson* is protected under either the attorney-client privilege or work product protection.

**18.** Dole's objection to producing the Settlement Program Data under Federal Rule of Evidence 408 is also unpersuasive. (D.I. 628 at 3) Rule 26(b)(1) expressly states that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The *Patrickson* court also stressed that "[d]iscoverability and admissibility are two completely different issues[.]" (D.I. 642, Ex. A at 59:17-22) Dole's concerns about the allegedly biased nature of the Settlement Program Data used in Dr. Freeman's report also exceed the scope of a discovery dispute because they raise questions of reliability and methodology under the Federal Rules of Evidence. (D.I. 628 at 3) It is premature to consider the admissibility of the requested discovery under the Federal Rules of Evidence in the context of a discovery motion.

**19.** Dole contends that aspects of Dr. Freeman's report violate the *Patrickson* court's order.  (D.I. 628 at 4)  There is no evidence on the present record to suggest that Dole has made any effort to enforce that order before the court that issued it.  The *Patrickson* court's order compelling the production of the Settlement Program Data incorporates by reference the protective order governing that case, and the protective order expressly contemplates the use of the information in these consolidated cases.  (D.I. 629, Ex. 4; Ex. 6 at ¶ 4)

**20.** ***Plaintiffs' motion to compel the production of Dole's DBCP Settlement Program Data is GRANTED.***  Plaintiffs argue that Dole should have supplemented its discovery responses by producing the Settlement Program Data after the *Patrickson* court ordered its production, maintaining that this discovery is relevant and proportional under Rule 26(b)(1). (D.I. 627 at 1-2)  Dole responds that it had no obligation to supplement its discovery responses or seek a protective order, and its objections to Plaintiffs' discovery requests should be sustained. (D.I. 639)

**21.** For the reasons set forth at ¶¶ 14-19, *supra*, the court finds that Dole should have clarified its discovery responses and objections after the *Patrickson* court ordered the production of the Settlement Program Data in that case, and Dole's privilege and admissibility objections are not persuasive.  As the *Patrickson* court explained, the Settlement Program Data is epidemiological evidence which is relevant to causation.  (D.I. 642, Ex. A at 56:22-57:13)  Dole's arguments about methodology and reliability are premature at this stage of the proceedings and are more appropriately addressed in the context of a *Daubert* motion.  (D.I. 639 at 4)  Accordingly, Dole shall produce Settlement Program Data identical in scope to the production that was made in *Patrickson*: "all medical data, demographic data and any

information collected from individual participants pursuant to the settlement program and as to any criteria used in making settlements." (D.I. 629, Ex. 4)

22. Dole's production shall be held in abeyance until the entry of a protective order governing the production of the Settlement Program Data in this case.  On or before June 23, 2025, the parties shall submit a joint proposed protective order for the court's signature.  If any disputes arise in connection with the provisions of the proposed protective order, the parties shall include their competing proposals in the joint order for consideration by the court, along with a joint cover letter limited to no more than four (4) pages.  The court will resolve any disputes on the written submissions.

23. **Conclusion.**  For the foregoing reasons, IT IS ORDERED that Dole's motion for a protective order is DENIED without prejudice, and Plaintiffs' motion to compel is GRANTED. On or before **June 23, 2025**, the parties shall submit a joint proposed protective order for the court's signature in accordance with the procedures outlined herein.  IT IS FURTHER ORDERED that the discovery dispute teleconference set for June 17, 2025 at 2:00 p.m. is CANCELLED.

24. Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties.  In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **June 20, 2025**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting

*Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)).  If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

**25.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2).  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order.  Fed. R. Civ. P. 72(a).  The objections and responses to the objections are limited to four (4) pages each.

**26.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge