IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LUIS ANTONIO AGUILAR MARQUINEZ,
*et al.,*

Plaintiffs,

v.

DOLE FOOD COMPANY INC., *et al.,*

Defendants.

Civil Action No. 12-695-RGA
(consolidated)

MEMORANDUM ORDER

Plaintiffs have filed a *Daubert* motion in regard to Defendants' expert, Dr. Arlene

Morales. (D.I. 776). There is no dispute about her qualifications as a doctor whose expertise is in

reproductive medicine and infertility.

There are four Plaintiffs in "Ecuador Trial Group One." For three of the four, Dr. Morales

offers opinions about women who were (and are) their partners. They are: W1, partner to

Plaintiff Maza Vivanco; W2, partner to Plaintiff Loja Alvarado; and W3, partner to Plaintiff

Rosario Avelino.[1] Dr. Morales primarily offers two opinions. One, each of the three partners

had "risk factor(s) that could have contributed to the couple's reproductive dysfunction." Two,

for each couple, "even assuming the existence of a severe male infertility factor, it is not

medically reasonable to attribute the couple's reproductive dysfunction solely to a male factor."

Dr. Morales identifies the risk factors as follows. For W1, an "incomplete infertility evaluation in

2015," three Caesarean sections, uterine fibroids/menorrhagia/anemia, and age-related. (D.I.

776-1 at 7-9). For W2, it is less clear (to me) which risk factors Dr. Morales is identifying, but it

---

[1] I see no reason to identify the women by name.

1

appears to be serious illness, spinal injury, and consequent abstinence. (*Id.* at 10-12). For W3, there is one identified risk factor: age-related. (*Id.* at 15).

There are essentially two disputes.

First, Plaintiffs argue that Dr. Morales is not applying proper medical methodology to reach her opinions. Plaintiffs cite an article by the "Practice Committee of the American Society for Reproductive Medicine."[2] (D.I. 776-2). The article sets forth a methodology for determining infertility. The women at the time of the evaluations in 2025 were ages 47, 63, and 58. Determining their current fertility or infertility is not relevant to the case and not something Dr. Morales has done. Rather, Dr. Morales opines on historical risk factors for "reproductive dysfunction." Dr. Morales addresses the time period of 2010 to present for W1, 1994 to 2002 for W2, and 2004 to 2022 for W3. Thus, W1 was being evaluated starting at age 33; W2 was being evaluated starting at age 32; and W3 was being evaluated starting at age 37. (D.I. 833 at 3). The dates and ages correspond to when the women became the partners of the three Plaintiffs. Dr. Morales is not actually offering any opinions that they were unable to conceive during the recited time frames.[3] Rather, Dr. Morales is opining on "risk factors" for infertility, that is, factors that make it less likely the woman could conceive a child than a similarly-situated woman without the risk factors.

Dr. Morales reached her conclusions by conducting remote video interviews of the three women and by reviewing all their available medical records. The medical records are all from

---

[2] "Fertility evaluation of infertile women: a committee opinion," Fertility and Sterility, Vol. 116, No. 5, p. 1255 (Nov. 2021).

[3] Dr. Morales does state that W1 was infertile with an earlier partner "A" when she had three pregnancies with him in five years. (D.I. 776-1 at 5). I do not need to decide now whether I would permit Dr. Morales to testify on that point; it is something that can be addressed later.

Ecuador, they do not appear to be extensive, and most of the information in them is irrelevant to the infertility risk factors. Dr. Morales did not perform any physical exams herself.

Plaintiffs argue that Dr. Morales did not follow the guidelines of the Practice Committee and that she is essentially just regurgitating what the three women told her. (D.I. 908 at 4).

Medical doctors take histories from patients as a part of diagnosis and treatment. That's not what is going on here. Dr. Morales offers no opinion on either diagnosis or treatment. I think for the limited purpose for which the testimony is offered—that the women have "risk factors" for infertility—an interview that approximates a clinical interview can be the basis for rendering those opinions. The easiest example involves age, which is an identified risk factor for W1 and W3. I do not think that there is any dispute that age is actually a risk factor.[4] W1 and W2 have other risk factors. The existence of those risk factors is generally uncorroborated by medical records. Plaintiffs do not argue that the identified risk factors are not risk factors.

I think based on the record before me that Dr. Morales has a more than sufficient basis to provide the very limited opinions that she is providing. I am convinced that she is offering opinions within her expertise and using the methodology of the medical profession to come to those opinions.

Second, Plaintiffs argue about the relevance (or "fit") of the testimony. Defendants say it goes to proximate cause. (D.I. 832 at 5-7). Plaintiffs say at most it goes to damages. (D.I. 908 at 1, 6). I think Plaintiffs are likely right. The proximate cause issue is whether Plaintiffs suffered harm to their reproductive systems and DBCP was a proximate cause of that harm. If DBCP was

---

[4] "Female fertility declines with increasing age, and female age is the single most important predictor of fecundity." Fertility evaluation of infertile women: a committee opinion, p. 1262. (D.I. 776-2 at 1262).

the cause of the harm, Plaintiffs suffered an injury.[5] That injury is a compensable injury by itself. Plaintiffs' harm is being determined by an array of evidence in which Dr. Morales plays no part.[6] If the claimed injury or damages involves, "and I did not have children," that claim would implicate not only Plaintiffs' reproductive capacity but also their partners' reproductive capacity.

Plaintiffs, in a reply brief, suggest that the failure to have children when Plaintiff and his partner wanted to have children is not itself a compensable injury. *See Villa v. Marciano*, 167 A.D.2d 828, 561 N.Y.S.2d 928 (App. Div. 1990).[7] I think the theory behind such a rule is that the claimed injury is too remote and speculative to be compensable. It is unclear to me exactly what damages, if any, Plaintiffs might be seeking other than for the physical injury to their reproductive capacity and related emotional damages. It seems to me that there is a reasonable

---

[5] The harms from exposure to DBCP could include azoospermia, oligospermia, "testicular atrophy, hormonal disruption, or loss of reproductive potential." (D.I. 908 at 2).

[6] I expect Plaintiffs to argue that their lack of children is evidence of their infertility. The definition of "infertility" is "the inability to initiate a pregnancy with the same partner after one year of unprotected intercourse." (D.I. 835-1 at 2; *see* D.I. 833 at 2).

[7]     [P]laintiff's complaint alleges . . . negligently rendered medical treatment. . . . Plaintiff's verified bills of particulars identify numerous injuries, including sterility and attendant emotional and mental distress, that she claims she suffered as a result of defendants' alleged malpractice.
        It is well settled that there may be no recovery "for the loss of offspring, as such." Thus, plaintiff may not recover for the effect of her alleged sterility in depriving her of children or of their companionship. Recovery may be had, however, for physical and mental injuries, including emotional distress, suffered by plaintiff as a consequence of defendants' breach of duty. Consequently, if plaintiff's alleged sterile condition resulted from injuries that she suffered as a consequence of defendants' malpractice, she may recover not only for the physical injuries inflicted but also for the mental and emotional distress attending those injuries.

*Villa v. Marciano*, 167 A.D.2d at 829 (citations omitted).

chance that Plaintiffs will say not having children has impacted them emotionally.[8]  If so, I will need to consider the admissibility of Dr. Morales' testimony in light of the theories that Plaintiffs are advancing at trial.

Plaintiffs separately argue that the opinions should be excluded under Rule 403. I think that is clearly an issue for another day. It may advisable for me to decide the relevancy (or fit) and Rule 403 issues when I have a better understanding of Plaintiffs' case. It may be worth discussing these issues at the Daubert hearings, although I may not be able to rule on them until trial.  In any event, I do not need Dr. Morales to testify at the Daubert hearings.

The motion to exclude Dr. Morales' testimony (D.I. 776) is DENIED without prejudice to any renewed objections based on relevance, fit, or Rule 403.

IT IS SO ORDERED this 24th day of April 2026.

_____
United States District Judge

---

[8] It certainly appears to be the case that Plaintiffs' expert Dr. Mercado will offer opinions to that effect.